UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2005 FEB -3 P 3: 28
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| DUXBURY TRUCKING, INC., <br><br> Plaintiff, <br><br> v. <br><br> MASSACHUSETTS HIGHWAY DEPARTMENT; MASSACHUSETTS TURNPIKE AUTHORITY; EDWARD W. MORRIS, JR., FEDERAL HIGHWAY ADMINISTRATION, (FORMER) ASSOCIATE ADMINSTRATOR FOR CIVIL RIGHTS; BRENDA ARMSTEAD, FEDERAL HIGHWAY ADMINISTRATION, EQUAL OPPORTUNITY SPECIALIST; ARTHUR "GENE" ARMSTEAD, FEDERAL HIGHWAY ADMINISTRATION, EASTERN RESOURCE CENTER, CIVIL RIGHTS TEAM; STANLEY GEE, FEDERAL HIGHWAY ADMINISTRATION, DISTRICT ADMINISTRATOR, <br><br> Defendants. | CIVIL ACTION NO. 04-12118NG |

## MEMORANDUM OF DEFENDANT THE MASSACHUSETTS TURNPIKE AUTHORITY IN SUPPORT OF ITS MOTION TO DISMISS

Plaintiff Duxbury Trucking, Inc. ("Duxbury") is a trucking company that secured and at least partially performed several trucking contracts on the Central Artery/Tunnel Project (the "CA/T Project") in Boston from 1996 to 1998. Those contracts, between Duxbury and other private companies working as higher-tier contractors on the CA/T Project, failed to bring Duxbury the profits it had expected. Rather than sue the higher-tier contractors with whom it had a contractual relationship, Duxbury seeks to place the blame for its financial failure on defendants the Massachusetts Turnpike Authority (the "Authority"), the Massachusetts Highway Department ("MHD"), and several federal officials, none of whom were signatories to any of the

-1-

trucking contracts to which Duxbury was a party. Duxbury presents two legal theories on which it attempts to hold the Authority liable. First, the Complaint alleges that the Authority discriminated against Duxbury based on Duxbury's eventual status as a woman-owned business. Second, Duxbury contends that various alleged regulatory failings by the Authority amounted to a violation of the plaintiff's rights to procedural due process. Neither of these theories states a claim on which relief can be granted against the Authority. Furthermore, each claim is time-barred by the applicable statutes of limitations. Accordingly, the Complaint should be dismissed as to the Authority.

Duxbury's gender discrimination claim (Count I of the Complaint) alleges that the Authority discriminated against Duxbury based on the fact that its purported owner, Susan Martinsen ("Martinsen"), is a woman, in violation of 23 U.S.C. § 324. This claim fails as a matter of law because only intentional discrimination can give rise to a violation of 23 U.S.C. §324, and Duxbury's allegations concerning what it contends are the Authority's regulatory failings as manager of the CA/T Project do not set forth a claim of intentional discrimination. Therefore, Count I of the Complaint must be dismissed.

Duxbury also fails to allege a cognizable violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution by the Authority (Count II of the Complaint). The Complaint sets out allegations that Duxbury claims led to its inability to make a satisfactory profit on the trucking contracts that it had entered into with prime contractors, and alleges that its financial failure caused it to lose out on future contracts. Duxbury blames the Authority and the other public defendants for these purported "losses." However, the Due Process Clause does not guarantee that subcontractors working on government-managed projects will profit from the contracts they enter into with other private contractors, nor does it protect

Duxbury's unilateral expectation of lucrative future contracts. Thus, Count II of the Complaint must be dismissed as well.

Finally, the Court should dismiss both claims against the Authority for a separate, independent reason: the statute of limitations that applies to both claims has long since run.

## PLAINTIFF'S FACTUAL ALLEGATIONS[1]

The Authority is a public instrumentality created by Chapter 81A of the Massachusetts General Laws. Complaint ¶ 9. Since July 1, 1997, the Authority has had primary responsibility for managing CA/T Project. Id. ¶ 21. Because the CA/T Project receives federal funding, certain federal statutes and regulations apply to the Authority's selection of contractors for the project, and to the administration of project contracts. Id. One such statute prohibits gender discrimination on highway projects receiving federal financial assistance. Id.; see 23 U.S.C. § 324.

According to the Complaint, plaintiff Duxbury Trucking, Inc. is a Massachusetts corporation formed in 1996. Id. ¶ 28. That year, Duxbury entered into four different CA/T Project subcontracts to haul sand and gravel. Id. ¶¶ 29-32. In each instance, Duxbury's contract was with higher-tier contractors – private companies engaged to work on the CA/T Project. Id. Duxbury was not a prime contractor hired by the Authority. Id. In each of the contracts that Duxbury signed, it agreed to haul material for the higher-tier contractor at an agreed-upon hourly trucking rate, which ranged from $44 to $50. Id. ¶¶ 29-31. At least two of the contracts also confirmed Duxbury's statutory obligation to comply with the Commonwealth's prevailing wage law, Mass. Gen. Laws c. 149, § 27 (the "Prevailing Wage Law"), by paying its employees at least $20.17 cents per hour, plus $8 per hour for benefits. That wage, which applied to all

---

[1] Because the Court must treat the allegations in the Complaint as true in evaluating this motion under Fed. R. Civ. P. 12(b)(6), the Authority does not set forth here its response to the many inaccurate and incomplete factual allegations contained in Duxbury's Complaint.

-3-

truckers hauling gravel and fill on public construction projects, had been set by the Commonwealth's Department of Labor and Workforce Development pursuant to the Prevailing Wage Law. See M.G.L. c. 149, § 27; Complaint ¶ 24.

Sometime in 1996, Duxbury determined that it could not perform the four trucking contracts profitably at the contract prices to which it had agreed with the higher-tier contractors. Id. ¶¶ 33, 37. Duxbury alleges that the compensation it contracted to receive from the four private companies under its contracts was not sufficient to allow Duxbury to cover operating expenses while also paying its employees the prevailing wage. Id. ¶ 33. Duxbury also alleges that none of the four private companies with which it contracted complied with the regulatory requirements of the Prevailing Wage Law, and that one contractor asked Duxbury to submit a blank wage certification form. Id. ¶¶ 32, 35. Because Duxbury contends that it was not able to meet operating expenses, including payment of the prevailing wage, the Complaint alleges that Duxbury "parked" its trucks in 1996, id. ¶ 37, apparently walking away from the contracts at issue.

On April 27, 1997, months after securing the four initial trucking contracts and after Duxbury had decided to "park" its trucks, Martinsen applied to the Commonwealth of Massachusetts on behalf of Duxbury for recognition as a woman-owned business enterprise ("WBE"). Id. ¶ 28. On April 1, 1998, the Commonwealth certified Duxbury as a WBE. Id.

In May 1997, Duxbury participated in a demonstration by truck drivers to protest the low trucking rates that the higher-tier contractors on the CA/T Project were paying the truckers pursuant to their trucking contracts. Id. ¶ 38. In response to the demonstration, and to avert a prolonged work stoppage, MHD, the Department of Labor and Workforce Development, certain

labor organizations, and several contractors entered into the so-called "Uplift Agreement." Id.[2] Among other things, the Uplift Agreement provided that MHD and the contractors would fund an adjustment of the trucking rates on existing contracts that would increase the rate paid by the higher-tier contractors to the truckers to between $60 and $65 per hour. Id.

Duxbury entered into the first of four trucking contracts with Modern Continental, a CA/T Project contractor, on September 16, 1997. Id. ¶ 41. The trucking rate in that contract was $65 per hour. Id. Under the terms of Duxbury's first contract with Modern Continental, Modern Continental also agreed to make a loan to Duxbury, with loan payments to be deducted by Modern Continental from the payments that it owed Duxbury for trucking services. Id. Again, Duxbury was unable to perform the contract profitably, and Duxbury contends that it once again was unable to pay prevailing wages. Id. The Complaint alleges that Martinsen "lost her trucks" in 1999. Id.

On September 27, 2000, the plaintiff filed a complaint with the Federal Highway Administration (the "FHA") alleging that Duxbury was discriminated against as a WBE. Id. ¶ 42. On March 3, 2003, after a thorough investigation, the FHA found that there was insufficient evidence to support a finding of discrimination against the Authority, MHD, or any other party. Id. ¶ 48. After several other regulatory gambits failed, the plaintiff commenced this action. Id. ¶¶ 49-52.

The Complaint alleges that the Authority failed to comply with its regulatory responsibilities under the Commonwealth's Prevailing Wage Law and 23 U.S.C. § 324, the gender discrimination counterpart to Title VI, 42 U.S.C. § 2000d. Specifically, the Complaint alleges that the Authority's regulatory failings amounted to gender discrimination against

---

[2] The Authority was not a signatory to the Uplift Agreement.

Duxbury and its purported owner, Martinsen, as well as a deprivation of the plaintiff's rights to procedural due process in violation of the Fourteenth Amendment of the Constitution. Id.

## ARGUMENT

This Court should dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 66 (1st Cir. 2004). Although this Court must take the factual allegations in the Complaint as true for the purposes of evaluating a motion to dismiss, see id. at 62, even "generous interpretation of a civil rights complaint may *not* supply an essential element of a claim not appearing in the complaint." Harris v. White, 479 F. Supp. 996, 1001 (D. Mass. 1979) (emphasis added).

Duxbury's discrimination claim against the Authority fails because the Complaint does not, and under the circumstances as alleged, Duxbury cannot, set forth a claim of intentional gender discrimination by the Authority, which is a necessary element of a claim under 23 U.S.C. § 324, the statute on which Duxbury relies for its cause of action. Although Duxbury alleges facts that might be sufficient to state a disparate impact claim, that legal theory is not cognizable under 23 U.S.C. § 324. The statute only provides a remedy for intentional gender discrimination.

Duxbury likewise fails to allege facts sufficient to set forth a procedural due process claim, because the Complaint fails to identify a property right that is protected by the Due Process Clause of the United States Constitution, which is an essential element of such a claim. Moreover, Duxbury fails to set forth any facts demonstrating a direct causal link between the Authority's actions or omissions and the alleged loss of any such property right, which is similarly fatal to its claim.

Finally, because Duxbury commenced this action more than six years from the latest possible date that it could have suffered any type of injury, each of its claims is time-barred by the applicable statutes of limitations.

## I.  The Complaint Fails to Allege Intentional Gender Discrimination.

Duxbury brings its gender discrimination claim under 23 U.S.C. § 324, which provides that "[n]o person shall on the ground of sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance under this title or carried on under this title." The language of the statute mirrors the language of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which prohibits discrimination in federal programs on the basis of race, color, or national origin. Section 324 adopts "agency provisions and rules similar to those already established" under Title VI, thereby extending Title VI's discrimination prohibitions to outlaw gender discrimination on federal highway projects. 23 U.S.C. § 324.

Duxbury's theory of gender discrimination appears to be that the Authority failed to enforce the Massachusetts Prevailing Wage Law against higher-tier contractors that sub-contracted with truckers such as Duxbury for the performance of trucking services. Complaint ¶ 56. Specifically, the Complaint alleges that the Authority did not consistently "maintain and review certified weekly payroll forms submitted by prime contractors to ensure compliance" – by truckers such as Duxbury – "with the prevailing wage law... ." Id. This alleged failure by the Authority permitted the higher-tier contractors to set trucking rates (to which Duxbury contractually agreed) that were lower than the rates that the higher-tier contractors would have paid had the Authority more rigorously enforced the contractors' obligations to collect payroll records under the Prevailing Wage Law. Id. ¶ 57. In the absence of this more rigorous oversight by the Authority, the plaintiff apparently contends, the trucking rates that the higher-tier

contractors paid to Duxbury were too low to allow Duxbury to work profitably, which forced the company – a WBE – to go out of business and to cease to be able to compete for CA/T Project contracts. Id. ¶ 59. This alleged conduct by the Authority amounted to discrimination, the Complaint apparently contends, because it "had a disproportionate effect on women owned businesses, including the plaintiff's business" because "more WBE/DBE contractors worked" in trucking than in other areas of the CA/T Project. Id. ¶ 60.

The chain of events alleged in the Complaint that Duxbury contends give rise to liability starts with alleged regulatory failures by the Authority and ends several stages down the line with a purported disparate impact on Duxbury and other WBEs and DBEs. There are several significant holes in the plaintiff's theory. First, the Attorney General, not the contracting authority, is obligated to enforce the Prevailing Wage Law pursuant to M.G.L. c. 149, § 27. Second, Duxbury's theory fails to acknowledge that it presumably could have decided that the contract rates it accepted from the prime contractors were too low, and it could have refused to enter into the contracts at issue.

However, this Court need not address either of these weaknesses or probe the strength of each causal link in Duxbury's serpentine theory, because the Supreme Court has held unequivocally that Title VI (and thus Section 324)[3] does not reach disparate impact claims: "Title VI itself directly reach[es] only instances of intentional discrimination." Alexander v. Choate, 469 U.S. 287, 293 (1985). See also Alexander v. Sandoval, 532 U.S. 275, 280 (2001). Nowhere in the Complaint does the plaintiff allege that the Authority intentionally discriminated against Duxbury or Martinsen on the basis of Martinsen's gender, or that the Authority adopted or failed to enforce policies "because of" the detrimental impact that those actions would have on

---

[3] Given the explicit link between Section 324, the statute in issue in this case, and Title VI, this Court should look to the Title VI regulations and the judicial interpretations thereof in determining the Authority's responsibilities to promote gender equity.

women, WBEs, or DBEs. See Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979) (to prove intentional discrimination, plaintiff must show that government adopted the policy at issue "because of, not merely in spite of, its adverse effects upon an identifiable group"); Harris, 479 F. Supp. at 1005 (dismissing Title VI complaint where plaintiff did not allege purposeful discrimination by state defendant). None of the facts contained in the Complaint support a finding of intentional discrimination by the Authority. The fact that Duxbury was certified as a WBE for a time (though that certification only came after it had stopped working on all but one or two of the contracts at issue here) has absolutely no relevance within the factual allegations contained in the Complaint. The economic failure of a WBE, without facts indicating bias, is simply insufficient to make out a claim of intentional gender discrimination as required by the statute.

Neither Duxbury's disparate impact theory (Complaint ¶ 60) nor the allegation that the Authority failed to discharge certain regulatory obligations, such as conducting reviews "to determine effectiveness of Title VI program areas" (Complaint ¶ 58), support a claim under Section 324. Both of those regulatory obligations, even if they apply to the Authority, arise not from Section 324, which prohibits only intentional discrimination, but from the regulations promulgated pursuant to Title VI. In Sandoval, the Supreme Court held that Title VI does not provide a private right of action to enforce the disparate impact regulations or any other regulations promulgated under that title. See 532 U.S. at 285-86. As the Sandoval Court held: "Neither as originally enacted nor as later amended does Title VI display an intent to create a freestanding private right of action to enforce regulations promulgated under [Title VI]. We therefore hold that no such right of action exists." Id.

Because Duxbury has not alleged intentional discrimination or facts that might support that claim, and because Section 324 does not permit Duxbury to pursue an action to enforce the regulations on which it relies, this Court should dismiss the gender discrimination claim. See Phillips v. Sage Colleges, 2003 WL 22513580 (2nd Cir. 2003) (Title VI claim properly dismissed where complaint failed to describe any events indicating bias).

## II.   Duxbury Has Not Alleged a Cognizable Due Process Violation.

The other claim that Duxbury levels against the Authority, an alleged violation of the plaintiff's rights to procedural due process under the Fourteenth Amendment to the United States Constitution, also fails to state a claim upon which relief may be granted. In assessing due process claims, courts determine whether a government defendant deprived the plaintiff of a constitutionally protected property interest, and if so, whether that deprivation occurred without due process of law. See Lujan v. G&G Fire Sprinklers, Inc., 532 U.S. 189, 195 (2001); PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). Duxbury's Complaint fails to state a due process claim because it cannot satisfy either prong of the test. The Complaint does not identify a protected property right, and the causal connection between the Authority's alleged acts and omissions is far too tenuous to amount to a "deprivation" for Due Process Clause purposes.

### A.   Duxbury Has Not Identified a Constitutionally Protected Property Interest.

The Due Process Clause protects only certain concrete property interests. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Not all government actions that affect private parties give rise to due process claims. "[A] cognizable property interest 'is what is securely and durably yours under state [or federal]

law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain.'" Barrington Cove Limited Partnership v. Rhode Island Housing and Mortgage Finance Corp., 246 F.3d 1, 5 (1st Cir. 2001), quoting Reed v. Village of Shorewood, 704 F.2d 943, 948 (7th Cir. 1983). In determining whether a property interest exists for due process purposes, courts look not to the Constitution, but to other sources of law, such as state law. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985).

Duxbury's due process claim does not identify a concrete, constitutionally protected property interest. Instead, the Complaint refers to the plaintiff's property interest in the trucking contracts that it actually secured and Duxbury's ability to compete for future contracts. Complaint ¶ 66. However, the Due Process Clause does not protect either type of property right.

Courts have recognized, in certain narrow instances, a plaintiff's property interest in a contract between the plaintiff and the government or in a benefit that the government has guaranteed. See Slochower v. Board of Educ., 350 U.S. 551 (1956) (tenured professor has right of continued employment); Goldberg v. Kelly, 397 U.S. 254 (1970) (welfare recipient has right to benefits that is safeguarded by due process). "[P]rocedural protection is sought in connection with a state's revocation of a *status*, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits." S&D Maintenance Co., Inc. v. Goldin, 844 F.2d 962, 966 (2nd Cir. 1988) (no property interest in the continuation of a contract).

Here, the plaintiff's trucking contracts were not with the Authority, but with private contractors. For Due Process Clause purposes, Duxbury had no reason to expect that the Authority would protect Duxbury's contractual right to perform the trucking contracts that it managed to secure with private parties, or that the Authority would guarantee the profitability of

those contracts. See S&D Maintenance, 844 F.2d at 966. Because Duxbury's claim derives from contracts between itself and other private parties, it does not even implicate the extensive case law that limits the instances in which due process protection attaches to contracts between private parties and government entities. See, e.g., Boston Environmental Sanitation Inspectors Assoc. v. City of Boston, 794 F.2d 12, 13 (1st Cir. 1986) (per curiam); Jimenez v. Almodovar, 650 F.2d 363, 370 (1st Cir. 1981) ("A mere breach of contractual right is not a deprivation of property without constitutional due process of law."); Yatvin v. Madison Metropolitan Sch. Dist., 840 F.2d 412, 417 (7th Cir. 1988); San Bernardino Physicians' Services Group, Inc. v. County of San Bernardino, 825 F.2d 1404, 1408-09 (9th Cir. 1987); Wehran-Puerto Rico, Inc. v. Municipality of Arecibo, 106 F. Supp. 2d 276, 287 (D. P.R. 2000).

As for future contracts, Duxbury possessed nothing more concrete than a "unilateral expectation" of future contracts on the CA/T Project, which cannot form the basis of a due process claim. See Roth, 408 U.S. at 577; Med Corp., Inc. v. City of Lima, 296 F.3d 404, 409 (6th Cir. 2002) (ambulance company has no property right in receiving 911 calls, because distribution of those calls is discretionary); Southern Disposal, Inc. v. Texas Waste Management, 161 F.3d 1259, 1265 (10th Cir. 1998) (bidder for government contract has no property interest until it is awarded contract). Moreover, the fact that the Commonwealth of Massachusetts ultimately certified Duxbury as a WBE does not provide the plaintiff with the type of concrete entitlement that can give rise to a due process claim. See Yatvin, 840 F.2d at 417 (right conferred by affirmative action plan was "too contingent to count as property" in constitutional setting).

**B.     The Complaint Does Not Allege Facts Indicating That the Authority Caused Any Deprivation of Duxbury's "Property" Interests.**

Duxbury's due process claim fails for the additional reason that the Complaint does not allege facts indicating that the Authority's actions or omissions caused Duxbury to lose the contractual rights that it identifies. To prove a due process claim under 42 U.S.C. § 1983, a plaintiff must demonstrate "a direct causal connection" between the government's conduct and the constitutional deprivation. D.T. v. Independent Sch. Dist. No. 16 of Pawnee County, Okla., 894 F.2d 1176, 1192 (10th Cir. 1990), citing Oklahoma v. Tuttle, 471 U.S. 808, 824 n.7 (1985). See also Guittierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989). The Complaint contains no facts that could support such an allegation.

Though the Complaint accuses the Authority of "depriving the plaintiff of work under existing contracts," Duxbury does not allege facts indicating that the Authority, or any other government entity, prevented Duxbury from receiving the trucking payments it was entitled to receive under the several trucking contracts. Rather, the Complaint alleges that the trucking rates that Duxbury received under the trucking contracts, rates to which it had agreed with the higher-tier contractors, were too low to allow Duxbury to operate profitably. Complaint ¶ 33. Duxbury's due process claim essentially alleges that the Authority deprived Duxbury of hypothetical contracts that it might have received had the Authority somehow generated a different trucking market in which Duxbury could operate. The causal connection between the Authority's alleged failure to enforce the Prevailing Wage Law and/or the Title VI regulations, and Duxbury's failure to secure profitable trucking contracts, is far too tenuous to support a due process claim.

### III. The Court Should Dismiss Both Claims Against the Authority Because the Statutes of Limitations for Each Claim Has Run.

The Court should dismiss each claim against the Authority for another independent reason: the applicable statutes of limitations have run.

Neither Section 324, Title VI, or Section 1983 contains a statute of limitations for claims brought under those statutes. In determining the applicable statute of limitations for a Title VI claim, courts look to the statute of limitations for the state claim that is most analogous to the Title VI claim.[4] Most courts have applied the statute of limitations for personal injury tort actions, which under Massachusetts law is three years pursuant to M.G.L. c. 260, § 2.[5] See Govan v. Trustees of Boston University, 66 F. Supp. 2d 74, 80 (D. Mass. 1999); Legoff v. Trustees of Boston University, 23 F. Supp. 2d 120, 127 (D. Mass. 1998) (Gertner, J.) (noting, in a Title IX case, that most courts have applied personal injury statutes of limitations in Title VI cases). See also Ivani Contracting v. City of New York, 103 F.3d 257, 260 (2nd Cir. 1997), cert. denied, 520 U.S. 1211 (1997); Egerdahl v. Hibbing Community College, 72 F.3d 615, 618 (8th Cir. 1995).

Section 1983 also does not include its own statute of limitations, but the Supreme Court has held that the limitations period for claims under that statute should be governed by the state statute of limitations for personal injury claims. See Wilson v. Garcia, 471 U.S. 261, 276-80

---

[4] In 1990, Congress passed 28 U.S.C. § 1658, which provided a catch-all four-year statute of limitations for federal causes of action *enacted after the date enactment* of Section 1658. Since all of the statutes that create the plaintiff's causes of action in this case were enacted well before 1990, and have not been amended in any material ways since 1990, Section 1658 does not apply. See Jones v. R.R. Donnelley & Sons Co., 124 S.Ct. 1836, 1844-46 (2004).

[5] Some courts have indicated that state anti-discrimination statutes are more analogous to federal civil rights statutes than are personal injury statutes, and that statutes of limitations applying to discrimination claims should govern. See McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 129-32 (4th Cir. 1994). See also Skidmore v. American Airlines, Inc., 198 F. Supp. 2d 131, 135 (D. P.R. 2002) (declining to decide the question because Puerto Rico statutes of limitations for discrimination claims and personal injury claims are the same). If the Court were to hold that the statute of limitations for state law gender discrimination claims applies, the 300-day limitations period established by M.G.L. c. 151B, § 5 would apply.

(1985). Therefore, Duxbury's due process claim, like its gender discrimination claim, has a limitations period of three years. See Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991).

The question of when causes of action arise in federal civil rights cases is governed by federal law. See id. at 40. "Under federal law, the limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis for his claim." Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96-97 (1st Cir. 2004) (internal quotations omitted).

Here, Duxbury's circuitous legal theories make the time at which the plaintiff knew or had reason to know of its alleged injuries difficult to pinpoint. Duxbury has not alleged that the Authority engaged in an act or acts of intentional discrimination, or identified a time at which the Authority deprived it of constitutionally protected property interests. The Complaint seems to indicate, however, that Duxbury identifies its injury as the failure to complete the contracts that it secured. Complaint ¶ 37. Of the four contracts that the plaintiff secured prior to the execution of the Uplift Agreement, the last contract, with Great Northern Site Development, began in November 1996 and "lasted only one week." Id. ¶ 32. Duxbury was aware of "injuries" relating to those contracts by December 1996. Furthermore, by its own admission, Duxbury participated in the trucker's demonstration related to the administration of the Prevailing Wage Law in May 1997, so it was certainly aware of its supposed injury by then. Id. ¶ 38. On September 25, 2004, approximately seven years and four months after Duxbury suffered its alleged injuries relating to its first four contracts, Duxbury filed suit with this Court.

As for Duxbury's final contracts, with Modern Continental, Duxbury alleges that the Authority's failures to enforce the Prevailing Wage Law lasted until June 1998. Id. ¶ 60. Duxbury filed its Complaint six years and three months later.

Nor did the filing of Duxbury's complaint with the FHA (the "FHA Complaint") on or about September 27, 2000 save Duxbury's claims against the Authority from the expiration of the limitations period. As noted above, all alleged injuries relating to the contracts that Duxbury secured prior to the signing of the Uplift Agreement occurred on or before December 1996, which is more than three years before September 27, 2000. All alleged injuries relating to the Modern Continental contracts occurred on or before June 1998. Even if the filing of the FHA Complaint tolled the statute of limitations as of September 27, 2000, which the Authority disputes,[6] the statute would have started to run again, at the latest, on June 13, 2003, when the FHA notified Duxbury of its denial of Duxbury's request that the FHA reconsider the dismissal of Duxbury's complaint. Adding the approximately fifteen months from the denial of the request for reconsideration until the filing of this lawsuit to the approximately twenty-six months that expired between June 1998 and the filing of the FHA Complaint reveals that the three-year statute of limitations would still have run, even under a tolling theory.

Even taking all of Duxbury's factual allegations as true, the limitations period that is applicable to both claims against the Authority has expired.

---

[6] In Massachusetts courts, "equitable tolling is used only sparingly." See Shafnacker v. Raymond James & Associates, Inc. 425 Mass. 724, 728 (1997) (arbitration does not toll statute of limitations). If a tolling theory applies at all, the question of whether the FHA Complaint tolled the statute of limitations turns on, among other things, whether the claim asserted in that extra-judicial forum is identical to the Complaint filed in this Court. See International Union of Elec. Workers v. Robbins & Myers, Inc., 429 U.S. 229, 238 and n.11 (1979). The Complaint makes clear that the FHA Complaint alleged only discrimination claims (Complaint ¶ 42); therefore, the filing of the FHA Complaint would not have tolled the statute of limitations for the due process claims. Because Duxbury's FHA Complaint is not before this Court at this stage of the litigation, the Authority will defer for now its argument that the FHA Complaint also fails to toll the limitations period for the discrimination claims.

## CONCLUSION

For the reasons set forth above, the Court should dismiss with prejudice each of the plaintiff's claims against the Authority (Counts I and II of the Complaint) pursuant to Fed. R. Civ. P. 12(b)(6).

> THE MASSACHUSETTS TURNPIKE
> AUTHORITY
>
> By its attorneys,
>
> /s/ Peter N. Kochansky
> Neil V. McKittrick, BBO #551386
> Peter N. Kochansky, BBO #647008
> GOULSTON & STORRS,
>  A Professional Corporation
> 400 Atlantic Avenue
> Boston, Massachusetts 02110
> (617) 482-1776

Dated: February 3, 2005

Certification of Service

I hereby certify that a true copy of the above document was served on February 3, 2005 by overnight mail sent to Arpiar G. Saunders, Jr., Esq., Shaheen & Gordon, P.A., 107 Storrs Street, Concord, NH 03302-2703, and by courier to all other counsel of record.

/s/ Peter N. Kochansky
Peter N. Kochansky

GSDOCS-1444733-5