UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Duxbury Trucking, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 04-12118-NG |
| v. ) | |
| ) | |
| Massachusetts Highway Department, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO FEDERAL DEFENDANTS'
MOTION TO DISMISS**

NOW COMES Duxbury Trucking, Inc. ("Plaintiff"), by and through counsel, Shaheen & Gordon, P.A, and opposes the Federal Defendants', Edward W. Morris, Jr., Brenda Armstead, Arthur Armstead, and Stanley Gee ("Defendants"), Motion to Dismiss. In support thereof, Plaintiff states the following:

I.   FACTS

Plaintiff filed a pro se complaint with the Federal Highway Administration ("FHA") on September 27, 2000. Pl's Cmplt. at ¶ 42. The FHA's initial review of the complaint found that gender discrimination had occurred at the Central Artery/Tunnel Project in Boston, Massachusetts (hereafter "the CA/T Project"), that the Plaintiff was the victim of that discrimination, and estimated the damages that the Plaintiff had suffered as a consequence of that discrimination. Pl's Cmplt. at ¶ 43. However, despite frequent communication with the Defendants over the course of the next several years with assurances that a finding of

discrimination and an award of damages would be forthcoming, the Defendants' dilatory practices unreasonably delayed the issuance of an official report memorializing these findings. Pl's Cmplt. at ¶¶ 44-47.

The administrative rules governing the complaint within the FHA call for a "prompt" response from the office of the Secretary of Transportation when investigating a complaint alleging gender discrimination. 49 C.F.R. § 21.11(c). The same code part also calls for a comprehensive enforcement procedure. 49 C.F.R. §§ 21.13-19.

Despite the federal Defendants' initial memorandum finding that Plaintiff had suffered discrimination, Plaintiff received Defendant Morris's first written response, finding that gender discrimination had not occurred at the CA/T Project, on March 3, 2003, approximately 30 months after Plaintiff filed its complaint with the FHA. Pl's Cmplt. at ¶ 76. Plaintiff did not receive a denial of its request for reconsideration until June 19, 2003. Id. Upon that denial, Plaintiff filed a request, pursuant to 5 U.S.C. § 552 et seq. ("The Freedom of Information Act" of "FOIA") on June 23, 2003 for the investigative materials that the FHA generated while purportedly addressing Plaintiff's complaint. Pl's Cmplt. at ¶¶ 50, 77.

Again, the administrative rules governing the release of public information from FHA require that the requested records be made available "as promptly as possible." 49 C.F.R. § 7.31. The same rules require that when the FHA cannot respond to a request in the time required, a representative of the agency must notify the requestor, explaining the reasons for the extension and a date by which the requestor can expect to receive the documents. 49 C.F.R. § 7.33. Plaintiff, despite repeated requests, did not receive any such communication from the FHA. Pl's Cmplt. at ¶ 51.

Instead, the FHA sent the requested investigatory materials in April 2004, approximately 8 months after the FHA said it would make the documents available, and 42 months after the filing of Plaintiff's complaint. <u>Id.</u> at ¶¶ 51-52. Significantly, however, the requested materials yielded information crucial to Plaintiff's pursuit of its gender discrimination claims before this Court. <u>Id.</u> at ¶ 52. The failure of the federal Defendants to follow and timely implement applicable federal laws and regulations denied Plaintiff its federally protected right to due process of law, causing Plaintiff injury redressable by a court of law.

## II.   ARGUMENT

### A. <u>Applicable Standard for a Motion to Dismiss</u>

Defendants have moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). The issue when considering a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support his claims. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002). Dismissal is only appropriate when the plaintiff is not entitled to any relief on any set of facts that he could prove. See <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). Therefore, in making such a determination, the court accepts the well-pleaded facts of the plaintiff's complaint as true and draws every reasonable inference in the plaintiff's favor. See <u>Berezin v. Regency Sav. Bank</u>, 234 F.3d 68, 70 (1st Cir. 2000).

The Defendants have stated, however, that procedural due process claims in civil rights litigation such as Plaintiff's claims, are subject to a heightened pleading standard.[1] This argument is without legal foundation as the United States Supreme Court has reversed the Fifth Circuit's heightened pleading standard for so-called civil rights claims. See <u>Leatherman v.</u>

3

Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165 (1993).  "We are unable to square the 'heightened pleading standard' applied by the Fifth Circuit in this case with the liberal system of 'notice pleading' set up by [Fed. R. Civ. P. 8(a)(2)]," reasoned the Court.  See id. at 168.

Rather than a "heightened pleading standard," in cases such as this one, Federal Rule 8 only requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Id. quoting Fed. R. Civ. P. 8(a)(2).  Therefore, to the extent that the Defendants have requested that this Court view Plaintiff's complaint under any sort of heightened pleading standard, that request should be disregarded.

      B.  This Court has Personal Jurisdiction Over the Defendants in Their Individual Capacities.

It defies reason for the Defendants to argue that they can receive a complaint alleging discrimination on a federally financed Massachusetts construction project from a woman-owned business in Massachusetts, investigate that complaint in a manner that included telephone calls, correspondence, and official visits to interview witnesses and receive documents in Massachusetts, without establishing sufficient contacts with Massachusetts for purposes of personal jurisdiction.  Pl's Cmplt. ¶¶ 44-45.  To the contrary, this Court should reject the federal Defendants' request to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(2) because the federal Defendants' contacts with both the United States and Massachusetts establish that this Court may exercise personal jurisdiction over them.

---

[1]   Defendants rely on Nieto v. San Perlita Independent School District, 894 F.2d 174, 177-78 (5th Cir. 1990), Nuclear Transport & Storage, Inc. v. United States, 890 F.2d. 1348, 1355 (6th Cir. 1989) and Elliot v. Perez, 751 F.2d 1472, 1482 (5th Cir. 1985) to argue that a heightened pleading standard applies to civil rights claims.  Defs' Memo. at 7-8.  As stated herein, these holdings are antiquated in light of recent cases clearly holding that only a notice pleading standard applies to civil rights claims.

In a federal question case such as this one, the Fifth Amendment to the Constitution, not the Fourteenth, defines the boundaries of personal jurisdiction. United States v. Swiss American Bank, Ltd., 274 F. 3d 610, 618 (2001) (quotation omitted). "This distinction matters because under the Fifth Amendment, a plaintiff need only show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state." Id. Without question, as residents of the United States, and as employees of the United States government, the Defendants have sufficient contacts with the United States.

The inquiry into personal jurisdiction does not stop with the Fifth Amendment, however. Federal Rule of Civil Procedure 4(k)(1)(A) states that when a plaintiff serves process upon a defendant outside the territorial limits of the state in which the District Court sits, such as in the case at bar, the District Court has personal jurisdiction over the defendant only if a court of general jurisdiction sitting in that state could exercise personal jurisdiction over the defendant. See Fed. R. Civ. P. 4(k)(1)(A). Therefore, the defendants are subject to the Massachusetts long-arm statute, Mass. Gen. L. ch. 223A § 3, as well as an analysis of the defendants' minimum contacts with Massachusetts. See Nahigian v. Leonard, 233 F. Supp. 2d 151, 158 (D. Mass. 2002). The long-arm statute states in relevant part, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth…." Mass. Gen. L. ch. 223A § 3.

In this case, the Defendants not only transacted business in Massachusetts on a regular basis, but their business-related activities also clearly and consistently related to the Plaintiff's

discrimination complaint that gave rise to the instant suit.[2]  The Defendants not only conducted an on-going investigation of discriminatory trucking practices during the CA/T Project, but also made and received numerous telephone calls with Plaintiff, wrote and received at least 18 letters concerning the events leading up to the filing of this case, and Defendant Morris, as well as an unnamed investigator working on Morris's behalf, traveled to Boston to investigate the claims underlying this litigation.  Pl's Cmplt. ¶¶ 45-52.  See also United Elec, Radio & Mach. Workers v. 163 Pleasant St. Corp., 987 F.2d 39, 45 (1st Cir. 1993) (Personal jurisdiction over Scottish defendants was proper when defendants' agent negotiated contract in Massachusetts and made phone calls to Scotland to get authorization from defendants for contract proposals); compare Massachusetts School of Law at Andover, Inc. v. American Bar Association, 142 F.3d 26, 34 (1st Cir. 1998) (Court declined to find personal jurisdiction over out-of-state defendants when they met in Massachusetts on only two occasions and only transacted one small matter of business related to the plaintiff on one of those visits).

These facts clearly established that the federal Defendants had repeated, prolonged and meaningful contacts in general, and specifically with Plaintiff, such that this Court's jurisdiction over them does "not offend traditional notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quotations omitted).  These contacts form the basis for this Court to exercise specific jurisdiction.  Indeed, there is no way that the federal defendants could perform their job functions -- investigating claims of discrimination at the CA/T Project -- without establishing at least minimum contacts with the Commonwealth of

---

[2]  The Defendants attempt to convince this Court that it does not have personal jurisdiction over them by citing to cases that address whether a co-conspirator's actions alone in the forum state could grant a court personal jurisdiction over a non- resident defendant under a state's long arm statute for tortious actions in that state.  See Grove Press, Inc. v. Angleton, 649 F.2d 121 (2nd Cir. 1981); Glaros v. Perse, 628 F.2d 679 (1st Cir. 1980).  The Defendants' cases are clearly inapposite to the case at bar.  In this case, the Defendants violated Plaintiff's constitutional rights by transacting business in Massachusetts.  The state's long-arm statute, therefore, applies to the Defendants' actions.

6

Massachusetts. "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citations omitted). Dismissal of Plaintiff's claims on personal jurisdiction grounds would, therefore, be in error.

    C. Plaintiff has Suffered Injury Due to Deprivation of a Property Right Guaranteed by the Fifth Amendment.

  Plaintiff, due to the Defendants' delay in investigating and reporting on Plaintiff's underlying claims of gender discrimination, has suffered injury because the Defendants violated its Fifth Amendment right of procedural due process. Stated simply, Plaintiff maintains a legally recognized property right in the legal claims that it had and could have had against the state actors and CA/T prime and subcontractors that discriminated against it. Plaintiff, under applicable federal laws and regulations, turned to the federal Defendants for assistance in investigating those claims. Despite applicable regulations that required their speedy response, the federal Defendants dragged their feet for so long in responding to the Plaintiff's request, that Plaintiff was unable to bring certain claims against the state actors and prime and sub contractors on the CA/T project. For instance, it has to forgo asserting minimum wage complaints under state law against the sub contractors on the CA/T Project. See Pl's Cmplt. ¶ 52. For those claims that it did assert, the state actors have filed a motion to dismiss, claiming that the statute of limitations has run.

  In addition to the delay in responding to the complaint of discrimination, the federal Defendants took an enormous amount of time to respond to the Plaintiff's FOIA requests relating to its purported investigation of the Plaintiff's FHA discrimination complaint. When FHA did

7

finally respond to the FOIA request, the information provided proved critical to the Plaintiff's ability to establish the factual allegations in this lawsuit. For all of these reasons, the failure of the federal defendants to respond to Plaintiff's FHA discrimination complaint and to the FOIA request in a timely manner deprived Plaintiff of a property right without due process of law, namely its property right in the causes of action that it could have asserted against certain state actors and CA/T prime and sub-contractors.

To be sure, Plaintiff's legal claims stemming from discriminatory practices during Boston's CA/T Project are a recognized property right. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950); Logan v. Zimmerman Brush Co., 455 U.S. 422, 428-29 (1982). Plaintiff, therefore, has a right to procedural due process as guaranteed by the Fifth Amendment. Mathews v. Eldridge, 424 U.S. 319, 332 (1976). As it is clear from a reading of the complaint filed with this Court, Plaintiff brings this action against the named federal officials in their individual capacities for the violation of its Fifth Amendment rights. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971); Davis v. Passman, 442 U.S. 228 (1979).

Contrary to the Defendants' assertions, Plaintiff's complaint states a claim for which relief can be granted. Plaintiff was deprived of that right to procedural due process when the Defendants' dilatory practices in formulating a response to Plaintiff's discrimination claims delayed, and ultimately frustrated, Plaintiff's ability to pursue certain legal claims, and frustrated its ability to bring the claims that it did assert against the state actors in this case. See e.g. United States v. Eight Thousand and Eight Hundred and Fifty Dollars, 461 U.S. 555, 569 (1983) (prejudice resulting from delay when loss of witnesses occurs, for example, could be weighty factor indicating delay is unreasonable); Wade v. Bowen, 677 F. Supp. 29 (D. Me. 1988)

8

(finding that when administrative agency did not perform any significant action regarding plaintiff's complaint but agency guidelines required 180-day resolution, delay of only one year was unreasonable and unjustifiable). Plaintiff has, therefore, properly alleged a violation of its Fifth Amendment right to procedural due process.

Defendants, however, cite to <u>Coyne v. United States</u>, 233 F. Supp. 2d 135 (D. Mass. 2002) for the proposition that negligent conduct by a federal official does not constitute a violation of the Fifth Amendment. <u>Coyne</u> is distinguishable from the case at bar. Plaintiff asserts that it is **not** the Defendants' conduct alone that is the violation of their Fifth Amendment rights. Rather, the Defendants' dilatory conduct caused prejudice to Plaintiff because materials supporting its gender discrimination claims were inaccessible to Plaintiff for so long that its ability to pursue those claims has been compromised.

Defendants also misguidedly suggest that Plaintiff's claims concern violations of substantive due process and must therefore "substantively shock the conscience." Defs' Memo. at 8 <u>citing</u> <u>Morales v. Ramirez</u>, 906 F.2d 784, 788 (1st Cir. 1990). As explained above, and as is clearly pleaded in the complaint filed with this Court, Plaintiff's procedural due process rights were violated. It is under no burden to allege any conscience-shocking events that would meet the standard of a substantive due process violation.

The Defendants, on the other hand, would like this Court to believe that Plaintiff's complaint is frivolous and contains only conclusory allegations. Defs' Memo. at 3. However, the cases on which the Defendants rely to support that proposition do not aid their argument. The Defendants point this Court to <u>Wyatt v. City of Boston</u>, 35 F.3d 13, 15 n. 1 (1st Cir. 1994)

which lists two cases with "self-evident" defects.³ The parenthetical notes following the two case citations describe cases where the plaintiff failed to identify a violation of a right, and failed to allege injury as a result of the defendants' actions. See Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991) and McKinney v. State of Oklahoma Department of Human Services, 925 F.2d 363, 365-66 (10th Cir. 1991). These cases are clearly inapplicable to the case at bar since Plaintiff has properly alleged a violation of its Fifth Amendment right to procedural due process, and further alleged the injury that resulted from the violation of that right.⁴

Defendants also misread Fabiano v. Hopkins, 352 F.3d 447 (1st Cir. 2003) as support for their motion to dismiss. In Fabiano, the First Circuit declined to find that the plaintiff was terminated from his job in violation of the First Amendment. Id. at 450. The court found that while the plaintiff had stated an actionable First Amendment claim, the court would not find a violation of that right because the plaintiff's First Amendment right was subject to a fact-intensive balancing test under Pickering v. Board of Education, 391 U.S. 563 (1968), and, therefore, the right was not clearly established. Id. at 457-58. This case is distinguishable from the case at bar because the Fifth Amendment right in question here is not subject to such a First Amendment balancing test and, moreover, is clearly established. Ultimately, Plaintiff has properly alleged a violation of its Fifth Amendment right to procedural due process.

### D. The Defendants are Not Entitled to the Affirmative Defense of Qualified Immunity.

The Defendants may not effectively plead the affirmative defense of qualified immunity. Government officials are only entitled to qualified immunity from civil damages when their

---

³     Wyatt also fails to support the Defendants' case because the appellate court found that despite the district court's decision to dismiss the plaintiff's case for failure to state a claim upon which relief can be granted, the plaintiff had in fact made a prima facie case for employment discrimination under Title VII. Wyatt, 35 F.3d at 16.

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A plaintiff successfully defeats a government official's affirmative defense of qualified immunity when 1) plaintiff's allegations, if true, establish a constitutional violation; 2) the constitutional right was clearly established when the alleged violation occurred; and 3) a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue.  See Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004) (Court found that former Massachusetts governor Jane Swift was not entitled to qualified immunity when she violated plaintiff's First Amendment rights in a retaliatory termination).

In this case, Plaintiff has unquestionably alleged a violation of its Fifth Amendment right to procedural due process and that right was clearly established when the violation occurred.[5] Furthermore, in an objective test, a reasonable official would understand that such delay and obfuscation by the Defendants would violate the Fifth Amendment.  The administrative rules governing the process for handling complaints clearly state that a report on the allegations of discrimination must be made "promptly."  See 49 C.F.R. § 21.11(c).  That the federal government intended for officials to follow the complaint process is evident from the comprehensive enforcement scheme for claims of gender discrimination detailed in the administrative rules.  See 49 C.F.R. §§ 21.13-19.  Furthermore, FHA had an obligation under the administrative rules governing FOIA requests to respond "promptly."  See 49 C.F.R. § 7.31.

---

[4]   Defendants' citations to Richards v. Harper, 864 F.2d 85, 88 (9th Cir. 1988) and Kadar Corp. v. Milbury, 549 F.2d 230, 233 (1st Cir. 1977) also lack authority for the same reason.  As stated in this memorandum, Plaintiff has made specific allegations about Defendants' violation of its Fifth Amendment right.

[5] Defendants' reliance on Castro-Aponte v. Ligia-Rubero, 953 F.2d 1429 (1st Cir. 1992) to support their contention that Plaintiff's Fifth Amendment right to procedural due process was not clearly established at the time of the violation is misplaced.  Castro-Aponte holds that politically motivated personnel actions not rising to the level of discharge were not clearly established constitutional violations under the facts of that case.  Id. at 1430.  The case is therefore inapposite to the case at bar.

The Defendants did not follow those regulations as they provided the requested investigatory materials eight months after they informed Plaintiff that such materials were available, without any explanation concerning the delay, as required by the administrative rules. Under an objective standard, any reasonable official would know that a report-and not the final report- produced 30 months after the complaint was filed, with numerous assurances that a finding was forthcoming and without explanation for the delay, does not meet the requirements as set out in the administrative rule for "prompt" production of such a report. Furthermore, a reasonable official would also know that a violation of rights would occur when there was an eight month delay in producing FOIA materials, despite the rules' call for production to occur "as promptly as possible," and again, without explanation of the delay or notification that the request must be modified, as required by the rules.

The constitutional violation occasioned by this delay is particularly shocking in this case in light of the interim FHA report specifically finding that discrimination had occurred, that plaintiff was the victim of discrimination and estimating the damages suffered by Plaintiff as a consequence of that discrimination. Therefore, the Defendants' conduct concerning Plaintiff's complaint clearly violated its Fifth Amendment right to procedural due process when the Defendants' dilatory practices, in contravention of the administrative rules, prevented them from pursuing certain of those claims of gender discrimination in a different forum.

    E. <u>Plaintiff Brings Suit Against the Defendants in Their Individual Capacities Only.</u>

Plaintiff is pursuing a claim against the Defendants for a violation of its Fifth Amendment right to procedural due process in their individual capacities only. When a complaint does not specify the capacity in which a public official has been named as a defendant, the court must look at the course of the proceedings and the nature of the relief sought to

12

determine whether the suit against a public official has been brought against him in his individual or official capacity.  See Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985).  In this case, since Plaintiff seeks monetary damages from the Defendants, it wishes to pursue its claims against the Defendants in their individual capacities only.  See Futura Development of Puerto Rico v. Estado Libre Asociado de Puerto Rico, 2002 U.S. Dist. LEXIS 26618 at *35-36.  For this reason, this Court should not construe Plaintiff's claims against the Defendants to be in their official capacities.

### III.  CONCLUSION

In conclusion, the Defendants' motion to dismiss Plaintiff's claims should be denied.  This Court has personal jurisdiction over the named federal Defendants in light of their enormous contacts with the forum state.  Plaintiff has properly alleged a violation of its Fifth Amendment right to procedural due process because the Defendants' dilatory practices and procedures prevented Plaintiff from discovering significant evidence to support its underlying claims of gender discrimination in a timely fashion.  As a result of that violation, Plaintiff suffered injury as it is now time-barred from pursuing those underlying claims.  Because a reasonable official would have known that such violations were in violation of a constitutional right, the Defendants are not entitled to the defense of qualified immunity.

WHEREFORE Plaintiff Duxbury Trucking respectfully requests that this Honorable Court:

    a) Deny the federal Defendants' Motion to Dismiss, and

    b) Grant any other relief that this Court deems just and proper.

                                        Respectfully submitted,

                                        Duxbury Trucking, Inc.
                                        By Its Attorneys:
                                        SHAHEEN & GORDON, P.A.


DATED:  February 16, 2005            /s/ Arpiar G. Saunders, Jr._____
                                        Arpiar G. Saunders, Jr.
                                        Bar No. 442860
                                        107 Storrs Street
                                        P.O. Box 2703
                                        Concord, NH 03302-2703
                                        (603) 225-7262
                                        asaunders@shaheengordon.com