UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C. A. No. 04-CV12118 NG

| | |
|---|---|
| DUXBURY TRUCKING INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MASSACHUSETTS HIGHWAY DEPARTMENT; MASSACHUSETTS TURNPIKE AUTHORITY; EDWARD W. MORRIS, JR., FEDERAL HIGHWAY ADMINISTRATION, (FORMER) ASSOCIATE ADMINISTRATOR FOR CIVIL RIGHTS; BRENDA ARMSTEAD, FEDERAL HIGHWAY ADMINISTRATION, EQUAL OPPORTUNITY SPECIALIST; ARTHUR "GENE" ARMSTEAD, FEDERAL HIGHWAY ADMINISTRATION, EASTERN RESOURCE CENTER, CIVIL RIGHTS TEAM; STANLEY GEE, FEDERAL HIGHWAY ADMINISTRATION, DISTRICT ADMINISTRATOR, | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW OF DEFENDANT MASSACHUSETTS HIGHWAY DEPARTMENT IN SUPPORT OF ITS MOTION TO DISMISS COUNTS I AND II OF PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6)**

Defendant Massachusetts Highway Department ("MHD") submits this memorandum of law in support of its motion to dismiss Counts I and II of Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). As grounds for its motion, MHD states that (1) Plaintiff's claim under Title VI of the Civil Rights Act of 1964 (Count I) alleging sex discrimination by MHD

fails to state a claim upon which relief can be granted; (2) Count I is barred by the Eleventh Amendment; (3) Count I is barred because Plaintiff fails to allege sufficient facts to support a claim of intentional discrimination by MHD based on gender; (4) Plaintiff's procedural due process claim under 42 U.S.C. § 1983 (Count II) is barred because MHD is not a "person" subject to suit under § 1983; and (5) Count II is also barred because Plaintiff fails to allege facts sufficient to support a procedural due process claim under the Fourteenth Amendment.

## FACTUAL BACKGROUND

As against MHD[1] and the Massachusetts Turnpike Authority ("MTA"), Plaintiff Duxbury Trucking, Inc., ("Duxbury"), brings this suit alleging (1) discrimination on the basis of sex in violation of 23 U.S.C. § 324, "enforceable through Title VI of the Civil Rights Act of 1964"; and (2) violation of procedural due process "contrary to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution." Complaint, ¶¶ 4, 53-71. As against the individual named federal defendants, Duxbury alleges counts of violations of procedural due process contrary to the Due Process Clause of the Fifth Amendment and conspiracy to deprive Duxbury of its due process rights under the Fifth Amendment. Id. at ¶¶ 72-83.

As alleged in the Complaint, Duxbury, a Massachusetts corporation formed in the Spring of 1996 by Susan Martinsen, is a certified Woman Owned Business Enterprise ("WBE/DBE"). Complaint, ¶¶ 1, 7, 28. Duxbury was only certified as a WBE/DBE on April 1, 1998. Id. at ¶ 28. MHD receives federal aid in connection with the Central Artery/Tunnel Project ("CA/T Project"), a construction project involving connections and improvements to Interstate 93 and the

---

[1] MHD is an agency of the Commonwealth of Massachusetts (the "Commonwealth"). See G. L. c. 16, § 1.

eastern leg of Interstate 90 in Boston, Massachusetts.  Id. at ¶¶ 19, 21.  Between June and November, 1996, Duxbury entered into four subcontracts to haul sand and gravel in connection with the CA/T Project,  Id. at 29-32.  At an unspecified time in 1996, Duxbury "parked [its] trucks," apparently withdrawing from its subcontracts on the CA/T Project.  Id. at ¶ 37.  Under an "Uplift Agreement"[2] between MHD, Bechtel/Parsons-Brinkeroff, the Department of Labor, the Teamsters Local Union and representatives of the Trucking Industry, MHD agreed to monitor compliance with the Massachusetts Prevailing Wage Law, G. L. c. 149, §§ 26-27 (the "prevailing wage law").  Id. at 38-40.  Subsequently, Duxbury entered into several contracts with Modern Continental dated September 16, 1997, September 19, 1997, January, 17, 1998 and June 15, 1998 respectively, for unspecified work.[3]  Id. at ¶ 41.  Duxbury "ran out of capital and lost [its] trucks in 1999 because [it] could not meet prevailing wage rates."  Id. at ¶ 41.  Neither MHD nor MTA were parties to any of the subcontracts entered into by Duxbury.

There is "a concentration of WBE/DBEs working as subcontractors on the CA/T."  Id. at ¶ 27.  As of 1997, 17.6% of all contractors working as A, B and C Material Haulers, the category that includes Duxbury, were "businesses owned by women."  Id. at ¶ 27.  The percentage of contractors working as A, B and C Material Haulers that are businesses owned by women is higher than in any other trucking classification on the CA/T Project.  Id.

---

[2] Duxbury does not allege when the Uplift Agreement was entered into although apparently it was before September 24, 1997.  Complaint, ¶ 40.

[3] Duxbury does not allege that Modern Continental was a prime contractor on the CA/T Project or indeed what work it contracted to do for Modern Continental under these contracts.  It does, however, allege that under one of these contracts entered into "[a]t roughly the same time" as the September 16, 1997 contract, Duxbury agreed with Modern Continental that it could pay back three loans set up by MHD, in order to pay back lease payments on its "parked trucks."  Complaint, ¶ 41.

On September 27, 2000, Duxbury filed a complaint with the Federal Highway Administration ("FHA"), alleging that Duxbury was discriminated against as a WBE/DBE. Id. at ¶ 42. The FHA found that "there was insufficient evidence to support a finding of discrimination against the plaintiff based on her gender or by virtue of her business' WBE/DBE status." Id. at ¶ 48.

In essence, Duxbury alleges under Count I that MHD discriminated against it on the basis of sex by failing to ensure that CA/T prime contractors complied with CA/T contract provisions, the CA/T Labor Agreement, the Teamsters Union Agreement, and the prevailing wage law, in their dealings with A, B, and C Material Haulers, the trucking classification that covers Duxbury. Id. at ¶ 1. As a result of these failures, Duxbury alleges it was unable to continue working on the CA/T without failing to comply with the prevailing wage law and was forced to "park [its] trucks" and stop working on several contracts in 1996. Id. at ¶¶ 1-2, 37. In addition, it was forced out of competition for available CA/T contracts. Id. at ¶ 3.

Under Count II, Duxbury also alleges that MHD violated the Due Process Clause of the Fourteenth Amendment because its alleged failure "to oversee the WBE/DBE program to ensure the effectiveness of the WBE/DBE program and to promote the growth of WBE/DBE firms" resulted in Duxbury being forced out of contracts it had secured as a WBE/DBE and being unable to compete for additional contracts. Id. at ¶ 68.

## ARGUMENT

### I. Standard Of Review.

In assessing a plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the plaintiff's allegations as true and view the evidence in the light most

4

favorable to the plaintiff. See Kiely v. Raytheon Co., 105 F.3d 734, 735 (1st Cir. 1997). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 335 U.S. 41, 45-46 (1957).

    **II.**    **Count I Of Duxbury's Complaint Against MHD Alleging Discrimination On The Basis Of Sex Under Title VI, 42 U.S.C. § 2000d, Fails To State A Claim Upon Which Relief Can Be Granted.**

Under Count I, Duxbury alleges discrimination on the basis of sex by MHD in violation of 23 U.S.C. § 324, "as enforceable through Title VI of the Civil Rights Act of 1964."

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by Title VI. See 42 U.S.C. § 2000d. Thus, Title VI prohibits discrimination on the basis of race, color and national origin, not discrimination on the basis of sex. See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998); Frazier v. Fairhaven Sch. Comm'n, 122 F.Supp. 104, 114 (D.Mass. 2000)(complaint alleging discrimination on the basis of sex does not state a claim under 42 U.S.C § 2000d). For this reason alone, Count I against MHD, titled "discrimination on the basis of sex in violation of 23 U.S.C. § 324 as enforceable through Title VI of the Civil Rights Act [42 U.S.C. § 2000d] " is subject to dismissal for failure to state a claim upon which relief can be granted.

    **III.**    **Count I Against MHD Is Barred By The Eleventh Amendment.**

Count I, alleging a violation of 23 U.S.C. § 324 against MHD, is also barred under the Eleventh Amendment. The Supreme Court "has consistently held that an unconsenting State is

immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662-663 (1974). See also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)(emphasizing that "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"); Irwin v. Comm'r of Dep't of Youth Servs., 388 Mass. 810, 811-812, 448 N.E.2d 721, 723 (1983).

The Supreme Court has, however, recognized two circumstances in which an individual may sue a State in federal court. See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999). First, Congress may abrogate a State's Eleventh Amendment sovereign immunity by authorizing such a suit "in the exercise of its power to enforce the Fourteenth Amendment."[4] Id. at 670, citing Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976). Any such Congressional intent must be "unmistakably clear in the language of the statute." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 56 (1996). Second, a State may waive its Eleventh Amendment immunity from suit in federal court. See College Sav. Bank, 527 U.S. at 675; Edelman, 415 U.S. at 671-673. A State may waive its Eleventh Amendment immunity either by "voluntarily invok[ing]" the jurisdiction of the federal courts or by a "clear declaration" in a state statute that it intends to submit to federal court jurisdiction. See College Sav. Bank, 527 U.S. at 675-676. The test for determining whether a State has waived its immunity from federal court jurisdiction is a stringent one See id. at 675; Irwin, 388 Mass. at 812, 448 N.E.2d

---

[4] It should be noted that this Court has held that "Congress has no authority to abrogate sovereign immunity under the Commerce Clause because 'Congress may not . . . base its abrogation of the States' Eleventh Amendment immunity upon the powers enumerated in Article I.'" Nextel Communications of Mid-Atlantic, Inc. v. Town of Hanson, 311 F.Supp.2d 142, 162 (D.Mass. 2004), quoting Bd. of Trustees v. Garrett, 531 U.S. 356, 364 (2001).

at 723 (a waiver "will not readily be inferred").

Duxbury alleges that MHD and MTA's failure to enforce the prevailing wage law and various contractual provisions "violated 23 U.S.C. § 324 . . . and various agency regulations, violations that are enforceable through Title VI of the Civil Rights Act." Complaint ¶ 4. As an agency of the Commonwealth, however, MHD is immune from Duxbury's claim in Count I under the Eleventh Amendment.

Section 324 of Title 23 of the United States Code provides that "[n]o person shall on the ground of sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance under this title or carried on under this title." The statute further provides that "[t]his provision will be enforced through agency provisions and rules similar to those already established, with respect to racial and other discrimination, under title VI of the Civil Rights Act of 1964." 23 U.S.C. § 324 (emphasis added). Thus, notwithstanding Duxbury's characterization, although 23 U.S.C. § 324 establishes a mechanism of enforcement of its ban on sex discrimination, via agency regulations "similar" to those used with regard to other forms of discrimination under Title VI, it is not "enforceable through Title VI." Complaint, ¶ 4.

Title 23 itself contains no express abrogation of the States' sovereign immunity.[5] Certainly, Congressional intent to abrogate the States' Eleventh Amendment immunity is not "unmistakably clear in the language of [Title 23]." Seminole, 517 U.S. at 56. Thus, the Ninth Circuit has held that "Congress has not expressed in Title 23, an intent to abrogate state

---

[5] Unlike Title VI, for example. Congress has expressly abrogated the States' sovereign immunity against suits brought in federal court to enforce Title VI of the Civil Rights Act. See Alexander v. Sandoval, 532 U.S. 275, 280 (2001).

sovereign immunity." Clallam County v. Dep't of Transp. of State of Washington, 849 F.2d 424, 427 n.3 (9th Cir. 1988), cert. denied, 488 U.S. 1008 (1989).[6] Further, 23 U.S.C. § 324 contains no language indicating that it is enforceable through Title VI. Rather, it merely provides that its ban on sex discrimination "shall be enforced through agency provisions and rules similar to those [in effect under title VI]." 23 U.S.C. § 324. Nor does Duxbury allege that the Commonwealth has waived its Eleventh Amendment immunity to suit in federal court.

As 23 U.S.C. § 324 contains no express abrogation of the States' sovereign immunity and the Commonwealth has not waived its Eleventh Amendment immunity, Duxbury's sex discrimination count against MHD, an agency of the Commonwealth, is barred under the Eleventh Amendment.

**IV.   Even Assuming *Arguendo* That Violations Of 23 U.S.C § 324 Are Enforceable Under Title VI Of The Civil Rights Act, Count I Is Barred Because Duxbury Fails To Allege Sufficient Facts Supporting A Claim Of Intentional Discrimination Against MHD.**

Even assuming *arguendo* that violations of 23 U.S.C. § 324 are enforceable through Title VI, Count I against MHD is subject to dismissal because it fails to allege sufficient facts to support a claim of intentional discrimination. It is well-settled that "'Title VI itself directly reach[es] only instances of intentional discrimination.'" Alexander v. Sandoval, 532 U.S. at 281, quoting Alexander v. Choate, 469 U.S. 287, 293 (1985)). "The element of discriminatory purpose or intent in civil rights claims 'implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable

---

[6] In Clallam County, 849 F.2d at 427, the Ninth Circuit also stated that "Title 23 does not condition receipt of highway funds on a state's waiver [of sovereign immunity]."

group.'" Goodman v. President and Trustees of Bowdoin College, 135 F.Supp.2d 40, 49 (D.Me. 2001), quoting Coyne v. City of Somerville, 972 F.2d 440, 445 (1st Cir. 1992). See also McGrath v. Dep't of Housing and Urban Dev., 722 F.Supp.2d 902, 907 (D.Mass. 1989)(proof of invidious intent required for statutory relief under Title VI).

Duxbury's sex discrimination claim appears to be based on certain alleged regulatory violations occurring between June of 1996 and June of 1998 that "had a disproportionate effect on women owned businesses, including [Duxbury's] business." Complaint, ¶ 60. Duxbury alleges that MHD violated federal regulatory law by failing to conduct reviews to determine the effectiveness of Title VI program areas, and that it failed to execute policies and practices to ensure contractor compliance with CA/T contractual provisions, labor agreements and the prevailing wage law. Complaint, ¶ 55. Thus, as to the subcontracts entered into by Duxbury between June, 1996 and November, 1996, Duxbury alleges that MHD failed to maintain and review certified weekly payroll forms submitted by prime contractors on the CA/T Project. Id. at ¶ 56. As a result of these failures, Duxbury alleges it could not legally continue to work on the C/AT Project and "parked [its] trucks in 1996." Id. at ¶ 57. Similarly, Duxbury alleges that MHD's failure to ensure compliance by prime contractors on the CA/T Project with the prevailing hourly wage rate permitted Modern Continental to pay Duxbury an "effective hourly trucking rate of $55 per hour, a rate substantially below the $65 required hourly trucking rate for A, B, C Material Hauling truckers. Id. at ¶ 59. As a consequence, Duxbury was unable to pay its employees the prevailing wage rates as required by Massachusetts law and it ran out of capital and was "forced out of competition for CA/T projects." Id.

Duxbury's complaint fails to allege facts sufficient to support a claim of intentional

9

discrimination under Title VI against MHD. First, at best, Duxbury alleges a disparate impact claim. Duxbury merely alleges that MHD's alleged regulatory violations had "a disproportionate effect on women owned businesses, including the plaintiff's business." Id. at ¶ 60.

Second, responsibility for the enforcement of the prevailing wage law lies with the Attorney General, not MHD. See G. L. c. 149, § 27; Felix A. Marino Co., Inc. v. Comm'r of Labor and Indus., 426 Mass. 458, 460, 689 N.E.2d 495, 496 (1998). Consequently, to the extent that Duxbury's claim of discrimination on the basis of sex is based on MHD's failure to enforce applicable wage statutes and regulations, it is subject to dismissal because MHD has no statutory power to enforce any such provisions. Manifestly also, MHD had no power to interfere with Duxbury's subcontracts to which it was not a party. Further, under the Uplift Agreement, MHD agreed only to monitor compliance with the prevailing wage law.

Third, Duxbury was only certified as a WBE/DBE on April 1, 1998. Complaint, ¶ 28. Duxbury fails to allege any facts that would support a claim of intentional discrimination on the basis of sex prior to that point. Indeed, Duxbury had withdrawn from four subcontracts as early as 1996, well before it was certified as a WBE/DBE. Id. at ¶ 37. And, of the four contracts Duxbury entered into with Modern Continental, even assuming those contracts related to the CA/T Project, three were entered into prior to April 1, 1998.

Finally, Duxbury's own independent obligations under relevant contractual provisions, labor agreements and the prevailing wage law applied irrespective of any alleged breaches of such obligations on the part of the prime contractors. Clearly, Duxbury could have elected not to enter the subcontracts had it felt unable to meet its obligations. This is particularly so as to the contracts Duxbury entered into with Modern Continental given Duxbury's alleged earlier

10

experiences in 1996.

As Duxbury fails to allege sufficient facts to support a claim of intentional discrimination on the basis of sex, its Title VI claim against MHD in Count I is subject to dismissal.

> **V.    Duxbury's § 1983 Claim Against MHD (Count II) Is Barred Because MHD, An Agency Of The Commonwealth, Is Not A "Person" Subject To Suit Under § 1983 And The Eleventh Amendment Bars A Suit Against A State Agency For Money Damages Under § 1983.**

It is well-settled that a state and its agencies are not "persons" subject to suit for monetary damages under 42 U.S.C. § 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002); Johnson v. Rodriguez, 943 F.2d 104, 108-109 (1st Cir. 1991).  Further, 42 U.S.C. § 1983 does not override the States' sovereign immunity under the Eleventh Amendment.  See Pennhurst, 465 U.S. at 99, citing Quern v. Jordan, 440 U.S. 332, 342 (1979).  See also Comfort v. Lynn Sch. Comm'n, 131 F.Supp. 2d 253, 255 (D.Mass. 2001)(cause of action under § 1983 barred because Congress did not by explicit and clear language indicate an intent to abrogate Eleventh Amendment immunity of the States); Converse Constr. Co. v. Massachusetts Bay Transp. Auth., 899 F.Supp. 753, 762 (D.Mass. 1995)(plaintiff had no adequate remedy at law against MHD because "the Eleventh Amendment bars a suit in federal court against a state agency for money damages under § 1983").

Duxbury's suit against MHD, an agency of the Commonwealth, is an "action for damages."  Complaint ¶ 1.  Consequently, under Will, 491 U.S. at 71, Duxbury's § 1983 claim (Count II) against MHD, alleging "violation of procedural due process contrary to 42 U.S.C. § 1983[7] and the Fourteenth Amendment" is subject to dismissal because MHD is not a "person"

---

[7] To the extent Count II alleges a violation of § 1983 it is also barred because "§ 1983 merely provides a mechanism enforcing individual rights 'secured' elsewhere, i.e., rights

subject to suit under § 1983.  Duxbury's § 1983 claim is further barred under Pennhurst, 465 U.S. at 99, because § 1983 does not override the Commonwealth's Eleventh Amendment immunity.

### VI. Count II Is Also Barred Because Duxbury Fails To Allege Facts Sufficient To Support A Due Process Claim Under The Fourteenth Amendment.

In order to establish a procedural due process claim under § 1983, Duxbury must allege "first that it has a property interest as defined by state law and, second, that [MHD], acting under color of state law, deprived it of that property interest without constitutionally adequate process." PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991).

Here, Duxbury's complaint fails to identify a property interest of which it has been deprived by MHD, acting under color of state law.  Duxbury's complaint refers to its interest in the trucking contracts actually secured and its ability to compete for future contracts as a WBE/DBE.  Complaint, ¶¶ 66-67.  Any such contracts, however, were not with MHD but rather were private contracts with prime contractors on the C/AT Project.  Complaint, ¶¶ 29-32. Duxbury had no reasonable expectation that MHD would protect Duxbury's rights secured under contracts with private parties or guarantee the profitability of any such contracts.  Certainly, Duxbury's mere anticipation of future contracts relating to the CA/T Project cannot form the basis of a due process claim as against MHD.  See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

Further, even assuming that Duxbury had an identifiable property interest in the trucking

---

independently 'secured by the Constitution and laws' of the United States.  'One cannot go into court and claim a violation of § 1983 – for § 1983 by itself does not protect anyone against anything.'" Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002), quoting Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979).

contracts, Duxbury fails to allege sufficient facts to support a claim against MHD that it "<u>deprived</u> it of that property interest without constitutionally adequate process." <u>PFZ Properties, Inc.</u>, 928 F.2d at 30 (emphasis added). Thus, "not all actions of state officials that result in a loss of life, liberty, or property are 'deprivations' within the meaning of the Fourteenth Amendment." <u>Germany v. Vance</u>, 868 F.2d 9, 17 (1st Cir. 1989).

Here, Duxbury alleges that MHD failed "to oversee the WBE/DBE program to ensure the effectiveness of the WBE/DBE program and to promote the growth of WBE/DBE firms [and that MHD] failed to ensure that <u>contractors</u> were paying [Duxbury] sufficient funds such that it could meet its legal obligations to pay employees' prevailing wages. Due to this failure, [Duxbury] was forced out of contracts it secured as a WBE/DBE and could not compete for additional contracts as a WBE/DBE." Complaint, ¶ 67 (emphasis added).

Even assuming the truth of these allegations, however, they do not amount to a deprivation of property for the purposes of the Fourteenth Amendment. Simply put, MHD has no authority to enforce the prevailing wage law. Responsibility for the enforcement of the prevailing wage law lies solely with the Attorney General. <u>See</u> G. L. c. 149, § 27; <u>Felix A. Marino Co., Inc.</u>, 426 Mass. at 460, 689 N.E.2d at 496. Further, MHD could not ensure that prime contractors met their own independent contractual or statutory obligations relating to wage rates vis a vis their own employees.

At best, Duxbury's allegations may, conceivably, support a claim of negligence against MHD. It is well-settled, however, that for the purposes of the Due Process Clause, deprivation of life, liberty, or property denotes more than negligence on the part of government or government officials. <u>See</u> <u>e.g.</u>, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344

(1986). And, in the First Circuit, cases suggest that liability for deprivation of life, liberty, or property requires conduct amounting to reckless or callous indifference on the part of government officials. See Germany v. Vance, 868 F.2d at 18-19. Here, Duxbury's allegations that MHD failed to enforce the prevailing wage law and failed to ensure that prime contractors met their contractual and statutory obligations relating to wage rates are manifestly insufficient to support a claim that MHD deprived it of property in violation of the Fourteenth Amendment.

As Duxbury fails to plead allegations sufficient to support a procedural due process claim under the Fourteenth Amendment, Count II against MHD is subject to dismissal.

## CONCLUSION

For the foregoing reasons, Duxbury's claims against MHD should be dismissed in their entirety pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

Respectfully Submitted,

COMMONWEALTH OF MASSACHUSETTS,
MASSACHUSETTS HIGHWAY DEPARTMENT


By its Attorneys

THOMAS F. REILLY
ATTORNEY GENERAL


/s/ David B. Stanhill
David B. Stanhill, BBO # 654187
Assistant Attorney General
Government Bureau/Trial Division
One Ashburton Place, Rm. 1813
Boston, MA 02108
(617) 727-2200, Ext. 3319

Date: March 2, 2005

## **CERTIFICATE OF SERVICE**

 I, David B. Stanhill, Assistant Attorney General, hereby certify that I have this day, March 2, 2005, served the foregoing **document**, upon all parties, by mailing a copy, first class, postage prepaid, to Arpiar G. Saunders, Jr., Esq., Shaheen & Gordon, P.A., 107 Storrs Street, Concord, NH 03302-2703 and to all other counsel of record.


             /s/ David B. Stanhill
             David B. Stanhill