## Morris, Ed

**From:** Pales, David
**Sent:** Monday, June 23, 2003 11:24 PM
**To:** Morris, Ed
**Subject:** RE: Durod Trucking Success

Ed,

Bureaucracy and formality won't work here! Yes, I know the law & regulation. The problem is that no one followed the contract or called MCC to task. No one! It's that simple! This is a case of willful violation and gross and possibly willful neglect on the part of the MTA and MHD. My tact has been to expose and "support" the MTA action in areas it should have been monitoring for several years. The truth is that no one wants to be bothered unless they get caught. Clearly, absolutely no one wants to think about systemic consequences. My tactic thus far as been to read the contract and ask the obvious questions in a neo-socratic manner: "I could be misreading this Division 1 provision, but what does 'Prompt Payment' mean to you, MTA?" In fact this is Duxbury II without a formal complaint or a Roy Martinson and his ~~guts~~ to litigate! I expect to find both the MTA and MHD in willful non-compliance for their failure to uncover and correct these problems; and, I expect to refer specific managers in MCC to the OIG for criminal prosecution. I just need a bit more time to assure that Durod gets enough to survive before pulling the noose. This is a very agregious matter with a lot of players that really could care less. You know them all from Duxbury! I'm happy that Durod did not go out of business; but, they are hanging by their fingernails. My first priority is to attend to the needs of the DBE by giving them advice and counsel on basic contract provisions and empowering them to act. To date, however, it has become clear that no one has ever read the basic Division 1 contract provisions which is a rope that is more effective than civil rights at this point. Fortunately, Carl and Stan support this approach and I have been able to offer Durod an alternative that makes a formal, written complaint unnecessary at this point. I hope you know that this is really a provocative approach for which there are no written guidelines. Yes, I do know the 23 & 49 CFR grants of authority. I will use them when and if necessary. I hope I can count on your support. I'll keep you informed. This is not an easy task for anyone, especially the Division. I'm thankful that Carl and Stan support this approach. However, I suspect that their support will weaken as we get closer to drawing a line in the sand. The saga continues!
dp

> -----Original Message-----
> From: Morris, Ed
> Sent: Mon 6/23/2003 2:37 PM
> To: Pales, David
> Cc: Silva, Edward; Gottschall, Carl; 'jjwright@bigdig.com'; Klemstine, Charles
> Subject: RE: Durod Trucking Success
>
> David;
>
> Great News about getting Modern Continental to cough up funds owed. The contract with MC should have contained a prompt payment provision and their lateness in paying for work completed and accepted by the State is a violation of the contract and MC was in and appears to remain in non-compliance. Whether the State's or MTA's programs are sufficient to determine and, where appropriate, obtain compliance with Civil Rights provisions in contracts should be determined by your review. Both HD and MTA have sufficient authority under their contract administration procedures to obtain compliance by Modern Continental. If neither entity is willing to assert itself when and where the situation warrants, FHWA has sufficient authority to move them in that direction. Our referral of matters to OIG reflect failures of the State's and our monitoring and oversight functions.

11/5/03

## Morris, Ed

**From:** Robinson, JoAnne
**Sent:** Thursday, August 14, 2003 9:49 AM
**To:** Morris, Ed
**Cc:** Kussy, Edward; Aikens, Harold
**Subject:** Duxbury Trucking

Ed,

Yesterday I received from Ms. Martinsen's attorney a courtesy copy of a letter sent to the attention of J. Michael Wiggins, Assistant Attorney General, at DOJ asking for the appointment of a Compliance Master "to address the failure of the Massachusetts Turnpike Authority (MTA) and the Massachusetts Highway Department (MHD), both agencies recipients of federal funds, to enforce the provisions of Title VI resulting in discrimination against Duxbury Trucking Company, Inc. and other certified minority business enterprises." The letter goes on to say that "FHWA has . . . become part of the problem by its apparent complicity with state agencies to refuse to be bound by and enforce Title VI. . . . The denial of fairness by FHWA and the apparent conflict of interest between the FHWA Civil Rights Office and Administrators within FHWA and their obligations to enforce Title VI mandates that a Compliance Master be appointed to ensure that all parties in this matter are treated fairly, and that there is no actual or appearance of a conflict of interest with regard to the enforcement of Title VI on the CA/T project."

This is a reminder that the issues of concern you indicated in your February 27, 2003, letter of finding were being referred to appropriate authorities should be referred without further delay.—Jo Anne

1

## III. EXECUTIVE SUMMARY

**Duxbury Trucking, Inc.** formed their business and became a "Certified WBE Contractor" on the Massachusetts Highway Department (MHD), Massachusetts Turnpike Authority's Central Artery/Tunnel Project (CA/T Project) in the spring of 1996. They were immediately successful in obtained four (4) CA/T Project Service Agreements to Haul Sand and Gravel but failed to complete any of these Federal Aid Sub-Contractor Service Agreements. Duxbury Trucking stated that they "*Parked Their Trucks*" in 1996 after repeated attempts failed to get CA/T Prime Contractors to honor specific the Provisions of their Prime Contract. They alleged that CA/T Prime Contractors refused to comply with those parts of their Prime Contract related particularly to Labor Provisions involving to Small Trucking Company Employees (Truck Drivers). They alleged that the Prime Contractors disregarded Massachusetts General Law regarding "covered" Small Trucking Company Employees (Truck Drivers). Duxbury Trucking also alleged that the MHD and the Massachusetts Turnpike Authority's CA/T Project became a major part of the problem based on their election not to execute required policies, practices and operating procedures to insure Contractor Compliance with their CA/T Contract Provisions; CA/T Labor Agreement; Teamsters Union Agreement; and Massachusetts Prevailing Rate Law.

In a Formal United States Department of Transportation Complaint dated September 27, 2000 and in follow-up conversations, Duxbury Trucking alleged that MHD election not to insure CA/T Project Contractor Compliance was a key component in permitting CA/T Prime Contractors to implement and then institutionalize systemic discrimination in a focused manner against Small Trucking Company Sub-Contractors. Duxbury Trucking further alleged that this discrimination was intentionally focused on a concentration of Certified DBE and WBE Contractors that included Duxbury Trucking, Inc.

These alleged adverse policies, practices and operating procedures forced CA/T Project Small Trucking Companies to discriminate against their own Employees by not paying and/or requiring false "Certifications" that their Truck Drivers Employees received their Prevailing Hourly Pay Rate; Health Insurance Hourly Account Payments; and Pension Hourly Account Payments. There is also reason to believe that other Small Trucking Companies will be joining the Complaint with additional allegations that MHD continues to systemically discrimination against Small Trucking Companies and their Employees (Truck Drivers).

The inquiry found that MHD did take action in 1997 to address most of the above allegations. Further that those Corrective Actions were prompted by and therefore responded directly to issues raised during a CA/T Project Truck Driver's Demonstration that took place on May 28-29, 1997. This inquiry determined that the MHD 1997 Corrective Action Plan failed to fully consider retroactively each Truck Driver's **Lost Benefits (Health and Pension) and Actual lost Wages**. Further that a limited review of current Project Certified Payrolls (Route 3 Project) determined that the State continues to refuse to effectively tackle the "Trucking Problem". That limited inquiry determined that current Contractors continue to violation Prevailing Hourly Rate Law and in some cases specifically advised of their elect not to pay required Hourly Benefits. In each clearly reported violations, MHD elected not to take corrective action and simply accepted and filed each Certified Payroll Report.

14

The FHWA Eastern Resource Center conducted this inquiry and recommended that MHD takes those actions necessary to bring their Program into immediate Compliance with their Federal Highway Administration Assurances and Title VI of the 1964 Civil Rights Act.

The inquiry also took into consideration each of MHD past responses as well as what was determined after MHD completed their Contractor Compliance Reviews and Complaint Investigations. To insure that we understood each of the past examination, action was taken to include interviews and the review of key documents. That primary evidence was obtained in a timely manner with the full cooperation of the Massachusetts FHWA Division Office, the Massachusetts Highway Department, and the Massachusetts Turnpike Authority's Central Artery/Tunnel Project. Each of these Offices along the CA/T Project's Attorney and the Federal Highway Administration's Regional Counsel were very much aware of the allegations of Duxbury Trucking. Further that after due consideration, each of these Offices took the position that the Duxbury Complaint was either without basis; that legal questions such as "Owner/Operators" clouded the issues; or that corrective actions were put in place in 1997 that resolve all issue(s).

This inquiry after taking into consideration all of the above assessment, made following determinations:

1. The Massachusetts Highway Department failed to comply with their FHWA Contract Assurances, Disadvantage Business Enterprise Program, Participation by Disadvantaged Business Enterprises in Department of Transportation Programs and Title VI of the 1964 Civil Rights Act by not taking those actions necessary from 1991 to 1997 to back up their FHWA Contract Assurance with the investments required to guarantee CA/T Contractor Compliance.

2. The Massachusetts Highway Department failed to comply with their Federal Funds Recipient Responsibility from 1991 to 1997 by not taking those actions necessary to make every reasonable "good faith effort" to eliminate past and present discrimination in their Federal Assisted Programs, and to ensure future non-discriminatory practices by their failure to enforce their CA/T Contract; CA/T Project Labor Agreement; Massachusetts Heavy Construction Agreement; Massachusetts Department of Labor Requirements; and Massachusetts General (Prevailing Rates) Law.

3. CA/T Prime Contractors were found to have engaged "traditional" policies, practices and operating procedures that exploited the Trucking Industry in ways that violated their CA/T Non-discrimination Contract Provisions and CA/T Labor Agreement. These discriminatory policies, practices and operating procedures were found to be specifically focused against A, B, C Material Hauling Contractors and their Workers.

4. The CA/T Project was found to have systemically discriminated against WBE/MBE/DME Contractors who had entered into "good-faith" contractual partnership with CA/T Prime Contractors.

5. The Massachusetts Highway Department was found to have taken corrective action in 1997 to remedy the "Trucking Problem" but that those steps did not resolve the following issues:

    a.) Individual Truck Driver Employee Losses -

        1.) The difference between the Hourly Minimum Rate of Pay and their Actual Hourly Rate of Pay from 1991 to 1997.

        2.) The loss of Pension Account Hourly Payments from 1991 and 1997.

        3.) The loss of Health and Welfare Hourly Payments from 1991 to 1997.

        4.) The loss of Duxbury Truck Driver Wages and Benefits from 1996-2001.

    b.) The failure to address the damage done to Small Trucking Companies who had the interests, desire, resources and demonstrated circumstance to perform on the CA/T Project but because of "unchecked requirement to violated to contract agreements and the law", elected not to take advantage of this Federally Funded Opportunity.

    c.) The Massachusetts Highway Department continues to discriminate against the "covered and protected rights" of Small Business Truck Drivers by not taking those reasonable and required actions necessary to enforce contracted contractor commitments to pay required Minimum Hourly Wage Rates; Hourly Payment to Health/Welfare Accounts; and Hourly Payments to Pension Accounts.

    6.) The Massachusetts Highway Department continues in non-compliance with their Federal Funds Recipient Responsibilities because of their failure to ensuring non-discrimination against A, B, C Material Hauling Companies and their employees. Further that Prime Contractors are not complying with their "responsibilities" as stated in their MHD Contract; CA/T Project Labor Agreements; Massachusetts Department of Labor Requirements; and Massachusetts General Law on "Prevailing Rates" as these provisions relate to A, B, C Material Hauling Companies and their employee.