## Ten-Year Check-Up: Have Federal Agencies Responded to Civil Rights Recommendations?

### *Volume II: An Evaluation of the Departments of Justice, Labor, and Transportation*

### Executive Summary

In the 1950s, landmark cases such as *Brown v. Board of Education* convinced the nation that the government indeed had a responsibility to ensure that equal protection of the law was afforded to all citizens. The turbulent decade of the 1960s brought the realization that segments of our society needed the support of the federal government in ensuring their civil rights. During this decade, the sweeping Civil Rights Act of 1964 was passed, covering equal opportunity in many areas. Presidential executive orders and congressional actions in the 1970s and 1980s resulted in an array of government programs designed to enforce civil rights laws. For examples, the Voting Rights Act Amendments of 1975 and the Civil Rights Restoration Act of 1987 were enacted. In the 1990s, despite calls proclaiming that equality had been achieved on all fronts, the nation continued to struggle to ensure equal participation for all its citizens. However, legislative action was necessary to protect the civil rights of people with disabilities. Thus, the Americans with Disabilities Act of 1990 was passed into law.

Over the years, the U.S. Commission on Civil Rights strived to ensure equal rights by issuing reports examining and suggesting ways to improve the civil rights enforcement efforts of federal agencies. The Commission has seen the civil rights focus shift from passing laws to enforcing them and has documented the development of civil rights enforcement of various departments and agencies. It has identified good practices as well as inadequacies and made recommendations for improvement. Commission reports established where federal agencies succeeded or failed at their civil rights obligations. The Commission found that some improvements have been tenuous and limited in scope. Many federal agencies continue to fail, leaving citizens to seek recourse where none should be needed and, often, where it is difficult to attain.

This report is part of a series that reviews recommendations the Commission made to federal agencies between 1992 and 2000. Volume I of this series of reports establishes elements fundamental to effective civil rights enforcement, without which the federal government's duty cannot be fulfilled. This, the second volume, evaluates the Departments of Justice, Labor, and Transportation (DOJ, DOL, and DOT) specifically against those elements to determine how effectively they have implemented the Commission's recommendations. Major findings of this report include:

#### Department of Justice

The Department has improved in civil rights enforcement, particularly in coordination, planning, and technical assistance. However, this report concludes that civil rights enforcement at the Office of Justice Programs is inadequate, primarily because of uncertainty about the future role of the office. The Commission was concerned about the lack of civil rights authority and priority at the Office of Justice Programs in 1996, and that concern remains. The Commission is alarmed that the FBI's implementation of the Hate Crimes Statistics Act has not changed since a 1992 review. There is serious underreporting of such crimes due to numerous factors, including that the reporting is voluntary and that FBI guidance to law enforcement officials minimizes the importance of the civil rights function.

**Department of Labor**

The Commission finds that many of the recommendations it made to the Civil Rights Center in 1996 have not been addressed. For example, the Center has conducted very few pre- or post-award reviews and also lacks an appropriate annual compliance review schedule. The lack of resources is the primary reason the Commission's recommendations were not implemented. In 1993 OFCCP needed improvements in planning, compliance reviews, and community development. Although the Commission finds that many of its recommendations have not been implemented, OFCCP is now able to enforce civil rights compliance better since it no longer uses localized affirmative action agreements to determine compliance.

**Department of Transportation**

The Department of Transportation's record of implementing Commission recommendations is mixed. While the Commission is heartened by progress, much work remains to improve civil rights enforcement in some operating administrations. Staff and resource limitations remain a bane for several operating administrations. An example is the Federal Highway Administration's Office of Civil Rights (FHWA/OCR). Because of inadequate resources, FHWA has not sufficiently increased the number of civil rights staff members. On the other hand, the National Highway Traffic Safety Administration Office of Civil Rights' budget increased 52 percent over the previous year.

**Model Programs**

The Departments of Justice, Labor, and Transportation have made some improvements in response to previous Commission recommendations. In fact, each department has practices worthy of being emulated by other agencies. The exemplary elements include data collection and analysis, policy guidance, complaint processing, technical assistance, education and outreach, coordination, staff civil rights training, and community involvement. For example, the Department of Labor's data collection and analysis system for its job-training program (previously the Job Training Partnership Act, which was replaced with the Workforce Investment Act of 1998) was an excellent model of a recipient compliance evaluation system that facilitated Title VI enforcement. Today, DOL's grant office has management information systems for all of its programs. In 1998, the Department of Justice's Disability Rights Section (DRS) showed strengths in providing technical assistance to its stakeholders and using mediation (or alternative dispute resolution) in its civil rights enforcement program. Today, DRS' technical assistance program and the use of mediation for the enforcement of the Americans with Disabilities Act serve as models for other components in the Department. Finally, the Department of Transportation's National Highway Traffic Safety Administration has a particularly strong education and outreach program. The agency's commitment to reach persons with limited English proficiency extends to its state recipients. This is an improvement since the Commission previously found that education and outreach were not available.

Overall, recommendations made to the three federal agencies were implemented. Model programs as well as deficiencies are identifiable across the departments. It is not the purpose of this report to measure the vigor with which the departments have advanced civil rights. Other reports of the Commission have done that. Its purpose is to review the effectiveness of the three agencies in implementing recommendations made earlier. It is only through constant review and monitoring by the Commission and careful consideration of the recommendations by the current administration, Congress, and agency staffs that the full promise of the civil rights laws will be realized.

***Conclusion:***

- Most Commission recommendations were implemented.
- The Department of Justice has improved in civil rights enforcement; however (1) the Office of Justice Programs' civil rights enforcement continues to be inadequate and (2) the FBI's weak implementation of the Hate Crimes Statistics Act, which causes serious underreporting of such crimes, has not changed.
- The Department of Labor's Civil Rights Center still has not addressed many of the Commission's 1996 recommendations, primarily because of a lack of resources.
- The Department of Transportation has a mixed record of implementing Commission recommendations. Much work remains to improve civil rights enforcement in some operating administrations. Staff and resource limitations remain a bane for several operating administrations.

## Ten-Year Check-Up: Have Federal Agencies Responded to Civil Rights Recommendations?

***Volume II: An Evaluation of the Departments of Justice, Labor, and Transportation***

# Chapter 1

# Introduction

> *"A weakening economy and compelling national security interests should not provide an excuse to fail to support either the congressional appropriations or the high-quality executive branch leadership needed to carry out the various federal agencies' civil rights enforcement obligations."*[1]
>
> —The Citizens' Commission on Civil Rights

During the 1990s, the U.S. Commission on Civil Rights issued numerous civil rights enforcement reports evaluating the operations of many federal agencies. These reports contain recommendations to improve federal civil rights enforcement. This report, volume II in a series, discusses the Commission's recommendations directed to the Departments of Justice, Labor, and Transportation between 1992 and 2000. This report sets out to discover answers to important questions: Have the departments implemented recommendations directed to them by the Commission? If not, why not? If so, have their civil rights programs improved?

The Department of Justice is the largest and, considered by some, the major federal civil rights enforcement agency. It is responsible for enforcing every major civil rights statute, covering such areas as the administration of justice, education, employment, housing, disability, and voting. In addition to its enforcement role, the Department is also responsible for the coordination and oversight of other federal agencies' civil rights enforcement activities. By examining the Department of Justice, the study sets the stage for evaluating the civil rights efforts of the other agencies. Many of the other agencies seek guidance and assistance in their civil rights program from the Department.

In past Commission reports, the Departments of Labor and Transportation emerged as having exemplary elements of civil rights enforcement in segments of the agency but not widespread across the Departments' programs. The Department of Labor, for example, had superior Title VI guidelines, policies, and procedures and a solid Title VI enforcement program that was narrowly applied to only its main job-training program, the Job Training Partnership Act, which has since been replaced. The Department of Transportation and its operating administrations had good enforcement elements—staff training, a state monitoring program, a technical assistance program, and a data collection and analysis program—in isolated operating administrations or in the Office of the Secretary. This review examines whether these agencies could build upon these efforts to implement more comprehensive enforcement programs.

## SCOPE

The review covers the Department of Justice, including the Civil Rights Division and two of its sections, the Coordination and Review Section and the Disability Rights Section, the Office of Justice Programs, and the Federal Bureau of Investigation's enforcement of the Hate Crimes Statistics Act; the Department of Labor's Civil Rights Center and the Office of Federal Contract Compliance Programs; and the Department of Transportation and its Office of Civil Rights and seven operating administrations.

The study assesses the extent to which the departments implemented the Commission's recommendations contained in four earlier reports:

- *Civil Rights Issues Facing Asian Americans in the 1990s* (1992);
- *Enforcement of Equal Employment and Economic Opportunity Laws and Programs Relating to Federally Assisted Transportation Projects* (1993);
- *Federal Title VI Enforcement to Ensure Nondiscrimination in Federally Assisted Programs* (1996); and
- *Helping State and Local Governments Comply with the ADA: An Assessment of How the U.S. Department of Justice is Enforcing Title II, Subpart A, of the Americans with Disabilities Act* (1998).

The Commission's previous reports and analyses support that there are essential elements for effective civil rights enforcement. They include:

- the priority of civil rights at the federal agency;
- the resources (funding and staffing) that are provided to carry out the work;
- effective planning;
- the policy guidance prepared and issued;
- technical assistance;
- education and outreach;
- effective complaint processing;
- quality compliance reviews;
- staff training; and
- initiatives that maximize effectiveness in accomplishing civil rights enforcement. Such initiatives include oversight and quality assurance of the civil rights program, effective coordination, and community involvement throughout the program.

All the programs evaluated in this report are done so in the context of the foregoing elements.

**METHODOLOGY**

In assessing whether the three departments or their components under review have responded to the Commission's recommendations, and whether enforcement has improved, the Commission reviewed relevant policy, planning and budget documents, annual reports, and civil rights implementation plans; prepared interrogatories that solicited the most current information on civil rights initiatives and directions within the three departments and reviewed responses; interviewed civil rights staff; and reviewed other relevant reports and sources.

## OVERVIEW

### Department of Justice

During the past decade, the Commission directed more than 100 recommendations to the Department of Justice and five of its components. Overall, the Commission's studies found the Department weak in the following elements: coordination, guidance, and technical assistance and outreach to its stakeholders; planning and evaluation of civil rights activities; and adequate funding and resources for its civil rights components. The weaknesses found within the Department were mirrored in the Commission's review of the Civil Rights Division, particularly the Coordination and Review Section, as well as in the Office of Justice Programs' Office for Civil Rights. Two of the components, the Disability Rights Section and the Federal Bureau of Investigation's specific authority over the data collection and reporting of hate crimes, were just beginning to undertake their responsibilities at the time of the Commission's review in the 1990s. Both showed strength in some areas. For example, the Disability Rights Section already had a strong technical assistance program and had incorporated mediation successfully in its enforcement program. In its fulfillment of the Hate Crimes Statistics Act, the FBI prepared and issued guidelines and a training manual for law enforcement agencies, and offered technical assistance to police departments almost immediately.

In this report, the Commission finds that the Department, the Civil Rights Division, and the two sections reviewed have shown improvement in the elements where they were weak. In particular, the Commission finds a significant improvement in the Title VI work performed by the Division's Coordination and Review Section. The Section attributes its guidance and technical assistance initiatives to the recommendations made in the Commission's 1996 report. The Office of Justice Programs' Office for Civil Rights (OCR) shows improvement in planning and technical assistance initiatives, which it attributes to the 1996 recommendations made by the Commission. However, OCR still shows serious deficiencies in civil rights enforcement, particularly in its compliance activities. With respect to the FBI's enforcement of the Hate Crimes Statistics Act, the Commission's 2002 review finds serious underreporting of such crimes. While several factors contribute to the problem, generally, there has been little change in the implementation of the law since 1992. The FBI acknowledges flaws in the program and indicates that there will be new initiatives to maximize the effectiveness of reporting hate crime data in the future. These future initiatives warrant attention from the Commission through monitoring.

### Department of Labor

In 1996, the Commission found that the Department of Labor's Civil Rights Center was not effectively fulfilling its civil rights responsibilities. For example, its civil rights implementation plans, which are a required civil rights planning and reporting document, did not meet the Department of Justice's requirements. In addition, the Center was not effectively addressing the other key elements in civil rights enforcement effectively. For example, it was performing very few pre- and post-award compliance reviews.

In this review, the Commission finds that although the Civil Rights Center has not implemented many of

the Commission's 1996 recommendations, the Center did attempt to improve its civil rights enforcement by reorganizing into three new offices; placing high priority on technical assistance and training to DOL funding recipients; establishing a reminder system to follow-up on corrective action plans or conciliation agreements; and collaborating with the Department of Justice in revising its Title VI regulations to reflect the Civil Rights Restoration Act of 1987.[2]

In its 1993 study, the Commission found that overlapping jurisdiction caused inconsistency and duplication of efforts between the Department of Labor and the Department of Transportation; that the Office of Federal Contract Compliance Program's (OFCCP's) contacts with community groups during compliance reviews were inadequate; and that OFCCP needed to reassess its approach to determine compliance under localized affirmative action agreements.

In its 2002 review, the Commission finds that DOL's December 1979 memorandum of understanding with the Department of Transportation has not been updated to reflect the interim agreement to exchange information. In addition, OFCCP still does not solicit involvement from the community in selecting companies for compliance reviews. However, after reassessing its approach to determine compliance, OFCCP no longer uses localized affirmative action agreements.

**Department of Transportation**

Within the Department of Transportation (DOT), the Office of the Secretary (OST) has delegated the responsibility for enforcement of external civil rights to the operating administrations. The Commission's 1993 and 1996 studies examined several factors affecting the enforcement of civil rights in DOT's federally assisted programs. Among the most important are OST/Office of Civil Rights' (DOCR's) effectiveness in its oversight of the operating administrations (OA), adequacy of staffing and funding, location of the OAs' offices of civil rights in the organizational hierarchy, a comprehensive Title VI program, and detailed civil rights implementation plans. The Commission's 2002 study finds that DOT's progress is uneven. In 1993 and 1996 the Commission found that DOCR's oversight process was inadequate, but that by 2002 it had improved. Inadequate staffing and funding for civil rights enforcement, on the other hand, remains a major problem for several OAs. At the same time, directors of the offices of civil rights of two OAs now report to their respective administrators, a recommendation the Commission made in 1996. Even so, three of the OAs still do not have civil rights implementation plans.

**SUMMARY**

Overall, this report concludes that most Commission recommendations were implemented by federal agencies, either fully or in part. The report shows that despite shortages in funding and other resources, all three agencies have implemented civil rights enforcement effectively at least in certain programs but not comprehensively. Where recommendations were not implemented, agencies cited:

- deficient resources;
- turnover that resulted in lack of continuity between staff;
- redefined responsibilities and priorities brought about by changes in law;
- new advancements in technology that rendered some recommendations obsolete;
- the establishment of new offices;

- the absence of coordination with other agencies; or
- changes in priorities of administrations.

The Departments of Justice, Labor, and Transportation must expand civil rights efforts to involve all agency programs and to include all the necessary elements of an enforcement program. New findings and recommendations in this report offer guidance as to how these agencies can accomplish this expansion.

This study was necessitated by the fact that resource reductions over a period beginning in the 1980s forced the Commission to reduce its monitoring program. The monitoring program was then supported by a $1 million budget, with a staff dedicated solely to that function. In fiscal year 1984, the monitoring office had 13 employees, and a separate research and report-writing office had 26 employees. Today, both functions are carried out by one office, which has only 11 employees (see table 1).

**TABLE 1—U.S. Commission on Civil Rights Monitoring and Research Employees, 1984 and 2002**

| Fiscal Year | Office of Research | Office of Federal Civil Rights Evaluation* |
|---|---|---|
| 1984 | 26 | 13 |
| 2002 | 11 | |

*The Office of Federal Civil Rights Evaluation, now the Office of Civil Rights Evaluation, is the former monitoring office.
Source: Budget of the United States Government, Fiscal Year 1984, p. 109.

The Commission's monitoring activities previously consisted of constant follow-up on recommendations, frequent meetings with agency staffs to anticipate problems and assess progress, and the issuance of regular evaluations. Monitoring activities have been cut back and now consist of reviews of material disseminated by and about federal agencies, augmented by occasional first-person contact with agency staffs. Thus, in this study the Commission thoroughly evaluates agencies' responsiveness to recommendations of the past decade since it has not been able to do so on an ongoing basis.

Monitoring federal agencies is one of the Commission's most important responsibilities and makes possible for all Americans an external review of civil rights offices. Since civil rights enforcement is a multimillion dollar public investment, the government, as steward of that investment, must devote resources sufficient to support the original intent of Congress that the Commission ensure the public is receiving protections promised by civil rights laws.

---

[1] Citizens' Commission on Civil Rights, *Rights at Risk: Equality in an Age of Terrorism*, 2002, p. 8.

[2] Pub. L. No. 100-259, 102 Stat. 28 (1988).