

URL: http://www.nationalbcc.org/issues/default.asp?id=1334

# Issues

## Review of Disadvantaged Business Enterprise (DBE) and Equal Employment Opportunity (EEO) Programs of the California Department of Transportation (Caltrans)

Performed By Western Resource Center, Portland Office, Office of Civil Rights, Federal Highway Administration September 2 - October 2, 1998

The review was conducted to determine the validity of allegations made by Mr. Alonzo D. Hall and Mr. Don Jefferies in 1994 and 1996, respectively, regarding the manner in which the Caltrans DBE and Internal EEO programs were being managed. Mr. Jefferies' allegations concerning Caltrans EEO program management were verified. Since there was no formal EEO program available for the review team to examine, the allegation regarding African Americans being adversely affected due to the relevant labor force record could not be verified. A finding on that issue must be held in abeyance until reliable statistical data is obtained and analyzed. A follow-up review will be scheduled to address issues of disparate impact once employment data is obtained. However, the failure to complete an analyses of under representation and, where appropriate, establish reasonable and attainable short and long-term goals (critical to an effective and acceptable plan) was verified.

While there was not evidence of intentional discrimination these shortcomings alone demonstrate noncompliance with the governing statutes and regulations. The allegations of Mr. Hall regarding the management of the DBE program were addressed in the review and largely verified. Program management deficiencies were uncovered which even the trained, qualified, and committed staff as exists in the BEP office, could not overcome without clear and unequivocal management support. The allegations of specific instances of discriminatory treatment of DBEs were not susceptible to a program review and remain open. The allegations are of sufficient weight to warrant investigation as soon as resources permit. In addition to the above major findings, the review resulted in the following findings and recommendations:

FINDINGS

General
1. The information gathered from the review indicates that Caltrans is not in compliance with 49 CFR 23, 23 USC 140 (a), or 23 CFR 230, Subparts C and D, or the onsite review requirements of ISTEA and TEA-2 1.
2. There was no official delegation of authority and responsibility from the Director to the Business Enterprise Programs (BEP) manager or the Chief, Equal Opportunity Program, so that they can carry-out their responsibilities.
3. The BEP is not implementing and developing civil rights programs and initiatives - either as required or as committed to in the last approved Permanent Program Plan. The manner in which the Office Engineers and other offices are involved in the DBE program impedes the BEP's ability to provide the required and necessary oversight, guidance, and technical assistance from a civil rights perspective.
4. Caltrans is not requiring that FHWA Form PR- 1273 be included in all Federal-aid contracts.

Business Enterprise Programs Office Operations
DBE Program
1. The BEP Office is primarily functioning as a DBE certification office and not functioning in the

manner described in approved program documents. While BEP certifies DBEs for all State agencies, certain functions associated with its receipt of Federal-aid highway funds have not been adequately met.
2. The last approved Permanent Program Plan clearly defines the responsibilities of the various offices involved in the management and monitoring of the DBE program. Actual implementation does not comport with the plan.
3. Caltrans is not performing DBE on-site reviews to verify DBE applicant information, as required by statute.
4. Caltrans is not certifying DBE joint ventures as required.
5. The review of Caltrans DBE Certification files revealed a significant number of firms certified who may not be eligible for DBE status.
6. Caltrans is using and allowing 20 percent, 60 percent, and 100 percent credit for truck brokers.
7. The manner in which Caltrans is applying Good-Faith efforts determinations is not consistent with the letter or intent of the regulations.
8. Personnel in Districts and offices other than BEP have not been trained in their DBE program administration responsibilities.
9. Due to real or perceived internal constraints, the BEP staff has not reviewed, monitored or provided effective oversight to programs of sub-recipient local governments.
10. The DBE data collected and reported to FHWA is incomplete and inaccurate. Caltrans is not in compliance with applicable regulations regarding DBE program management-and that part of the statute requiring on-site reviews.

Internal EEO
1. While the State Personnel Board has directed Caltrans to use Relevant Labor Force (RLF) data rather than Civilian Labor Force (CLF), reliance on that standard is not a problem unless the recruitment area determined to be "relevant" circumscribes an area which artificially and illegally excludes areas with significant minority populations. In instances where out-of-state recruitment is done, CLF information would be the appropriate standard.
2. Caltrans does not have an official FHWA approved program plan document by which it operates to implement, Part 11 of the EEO Assurances and 23 CFR 230 C.
3. The Caltrans internal complaints process does not comply with regulations and may work to the disadvantage of complainants who do not file with EEOC.
4. Caltrans failed to cooperate with FHWA in meeting the letter and intent of EEO provisions of 23 U.S.C. 140(a) and implementing regulations by not completing required analyses or preparing and submitting an acceptable plan of action subsequent to the issuance of the Governor's Executive order # W- 124-9 5.
5. Caltrans is not in compliance with the controlling regulations or its assurance to ensure EEO in all terms and conditions of its internal employment.

Contract Compliance
1. The staff resources devoted to performing the external EEO function are inadequate. The number of reviews conducted is insufficient to demonstrate fulfillment of the State's responsibilities pursuant to its Assurances.
2. There is no budget dedicated to perform the EEO (external) function.
3. There is no oversight done on Design and Local Program Federally assisted pass-through funding, where contractors performing work for cities and counties are reviewed for compliance.
4. The Caltrans BEP Office currently operates from an internal manual which does not comport with 23 CFR 230, Subpart D.
5. The BEP staff currently uses the U.S.D.O.L., OFCCP's goals and timetables for determining compliance. Only the OFCCP has that authority. Caltrans management relies on "letters of commitment" from non-compliant contractors rather than BEP taking action required by 23 CFR 230 D. The BEP process for conducting EEO compliance reviews is not consistent with Title 23 requirements and the BEP staff has not taken action required by 23 CFR 230 D when contractors are found not to be in compliance.
8. The BEP staff does not investigate external complaints lodged against its Federal-aid contractors, but such investigations are done by the Office of Audits and Investigation. This is a BEP function.
9. Caltrans does not have an official FHWA approved contract compliance program plan document by

which it operates to implement 23 CFR 230 D.
10. Caltrans is not in compliance with the controlling regulations or its assurance to determine and obtain compliance with EEO provisions in contracts. Caltrans actions taken subsequent to the review The Chief, Equal Opportunity Program, was formally delegated authority and responsibility to manage the Internal EEO program on 10-1-98 by E.O. 98-3 1, and the Chief, Business Enterprise Program, was formally delegated authority and responsibility to manage the DBE program on 10-23-98 by EO 98-32.

INTRODUCTION
1. BACKGROUND, PURPOSES, OBJECTIVES, APPROACH, AND SCOPE
A. Background Sometime in 1994 and 1996 two complaints were filed with the Federal Highway Administration (FHWA) concerning the way Caltrans was implementing both the Disadvantaged Business Enterprise (DBE) Program (Alonzo D. Hall Complaint, 4/14/96) and the. Equal Employment Opportunity Program (EEO Program), which was filed by Mr. Don Jefferies sometime in 1994. Mr. Hall's complaint was investigated by the former FHWA San Francisco Regional Office, Office of Civil Rights, and a report prepared in October 1997. Unaddressed deficiencies in that report prior to the departure of its author required that the matters be fully addressed. It was found that unauthorized copies of that earlier review report had been provided to one of the complainants. The DBE issue dealing with the allegation that the Caltrans Business Enterprise Program (BEP) Office had been relegated to that of being -- solely -- a DBE Certification Office and not being allowed to carry out its full civil rights functions was examined in this review. All of issues raised by Mr. Jefferies were programmatic. These were: (1) Caltrans was failing to fulfill FHWA's EEO requirements relative to 23 CFR 230, Subpart C, Appendix A, Part 11; (2) the person responsible for implementation of the EEO program -- internally -- lacked authority and direction in implementing the program; (3) African Americans' representation in all 12 districts was being adversely affected due to the relevant labor force data used; (4) Caltrans allegedly was not making proper analysis of under representation of particular groups' participation, as required; and, (5) Caltrans' lack of establishing short and long-term goals to correct under utilization with timetables. The review concentrated on the above factors as well as procedures used by Caltrans to achieve the objectives of Title 49 CFR 23 and 23 CFR 230, Subparts C and D.
B. The Purposes of the Review 1. To confirm whether or not Caltrans was implementing the DBE and EEO programs as required by FHWA. 2. To identify shortcomings that might affect the Caltrans compliance status. To make recommendations to Headquarters. Office of Civil Rights to assist Caltrans in correcting defective or invalid procedures.
C. Review Objectives 1. Identify variances between Caltrans' operations and what is required by regulations or committed to by Caltrans in program documents. 2. Identify any processes and procedures that fail to achieve their intended purpose. 3. Address the aforementioned complaint issues that could be evaluated by this review.
D. Approach Guidelines used for the review were those developed by the writer which are supported by governing regulations and policies. Caltrans' responses to these guidelines were written statements of what they are actually doing now versus how they are complying with existing requirements. Review guidelines and questions were augmented by examination of records and files held in possession of Caltrans. Responses to interrogatories, documentation, and interviews of key staff, provided the review team the basis for the evaluation of Caltrans overall performance in the aforementioned programs.
E. Scope The review encompassed all aspects of the DBE and EEO programs required by FHWA and USDOT.
F. Authorities 49 CFR 23 (TEA-2 1, Sec. I 10 1 [b]) 23 USC 302 (a) and 315 23 USC 140 (a), 23 CFR 230, Subparts C and D State DOT's EEO and Title VI Assurances

II. DBE PROGRAM IMPLEMENTATION The processes relied upon by Caltrans are contained in a Permanent Program Plan (PPP) document dated October 1994. The current operating plan does not comport with 49 CFR 23 in many respects. Those parts which do meet regulatory requirements are not being implemented in accordance with the PPP. Observations, Discussion, and Recommendations (All below underlined citations are. regulatory.)

Observation #1 On page 5 of the Caltrans' DBE (PPP), it is stated clearly that the DBE Liaison Officer

is responsible for implementation of the DBE program on a day-to-day basis. This plan was written in 1994 and has not been revised since that time. Caltrans is currently in the process of revising the plan to conform with current requirements and policies. While the (PPP) makes clear the duties and responsibilities of the DBE Liaison Officer, all the duties listed are not being carried out by the incumbent. Many operational and development duties are implemented by other offices, including the, Office Engineer, Construction and Local Programs and Districts. There is no written delegated authority from the Director to the DBE Liaison Officer - BEP manager, providing management direction on authority to carry-out, implement, and develop program requirements, as this person must report directly to the CEO of the State DOT. Findings 49 CFR 23.45(b)(1) requires that t e DBE Liaison Officer report directly to the. CEO. with sufficient staff and resources to implement the program. 49 CFR 23.45(b)(2) requires the DBE Liaison Officer to be responsible for developing and implementing the BE program day-to-day The BEP manager organizationally reports to the Engineer Service Center Director, who reports to the Chief Deputy Project Development, who reports to the Director, Caltrans. With the splintering of the DBE function, no one is being held accountable for program accomplishment and implementation, as required. The ability of the DBE manager to hold others accountable on behalf of the Director is weakened.

Recommendations
1. That the Director provide the BEP manager the required delegated authority, duties, responsibilities, resources, and staff to properly administer the DBE program.
2. Caltrans must revisit its 1994 plan document and revise it in line with Federal requirements.
3. That the director in its delegation of authority, enable the BEP manager to report directly him on DBE program matters without other reporting layers.

Observation -#2 The DBE (PPP) of Caltrans provides the BEP manager with authority to establish the annual DBE goal and individual project goals. This is not the way the practice is carried out. While the BEP manager may recommend an overall DBE goal to management with supporting documentation, it is often not implemented. For example, from 1996 to present, BEP has recommended annual overall goals and management has not agreed to adopt any of them. Likewise, with regard to project goals, the Office within Caltrans that has primary responsibility for this activity is Office Engineers. Contract goals are set by this office and are called "tentative" goals. Office Engineers (O.E.) sets such goals based upon a B-E. factor (items primes are likely to sub out). O.E. then multiplies the B.E. factor percentage by the engineers estimate dollar amount for that item. O.E. determines all possible subcontractable dollar amounts, then divide by the total dollar amount of the project cost, which gives it the "tentative" DBE goal percentage. An O.E. technician then adjusts the goal based upon the location and size of the job and divides by two to get the project goal, rather than just using the raw B.E. factor goal. The final step with O.E. is the meeting of a committee, including the BEP Office personnel. BEP could not identify any instance in which its involvement at the end caused a project goal to be changed since 1996. The O.E. is also intricately involved in the DBE "good faith efforts" determination decision making when project goal attainment is in question. This, again, contradicts the duties of the BEP manager on page 5 of the DBE (PPP). The plan provides for the BEP manager to make such decisions/determinations. Findings The review confirmed the fact that what's contained in Caltrans 1994 DBE (PPP) is not how the program is being implemented. While management has the prerogative to accept or reject BEP's recommendations, the BEP office is the primary implementing office for the Director, relative to the DBE program. In addition, it seems that O.E. has more involvement and decision making in the DBE program regarding project goals and good faith efforts decisions than the BEP manager. This directly conflicts with the 1994 DBE (PPP) which describes how the program is to be implemented though the BEP manager, which in turn, makes this a program violation.

Recommendations
1. Caltrans must adhere to its DBE plan (PPP) document regarding the function and duties of its BEP manager, as reported to FHWA and tacitly approved, relative to "establishing individual project goals for DBEs."
2. Caltrans must adhere to its DBE plan (PPP) document relative to BEP manager "evaluating contractors' proposed DBE submittals and for "good faith efforts" determination and not rely upon O.E. to do so, although O.E. can assist in this area.

Observation #3 The BEP manager's office does not investigate complaints as described in the DBE plan (PPP) document of 1994 (page 6). That function is done by the Audits and Investigation Section of Caltrans. Findings The review revealed that the State is not implementing the DBE program as last approved by FHWA or as written.

Recommendation
That the State provide FHWA an accurate account as to who is trained in civil rights investigations and has proven capability in investigating DBE complaints and what office will have the required expertise in its revised DBE plan.

Observation #4 On page 6 of Caltrans 1994 DBE plan (PPP), another major function of the BEP manager is that of reviewing prime contractors for compliance with DBE activities, i.e, CUF violations. This function is done by the Construction and Local Program offices, not BEP. Findings The review confirmed the that the BEP office does not have responsibility for this function. This function is performed elsewhere within the department and most of the time BEP is not advised about actions covering DBE compliance.

Recommendation
That BEP carry-out its duties and responsibilities as stated in the DBE plan (PPP) of Caltrans relative to DBE compliance activities.

Observation #5 On page 6 of the DBE plan (PPP), the BEP manager, as DBE Liaison Officer, has the duty and responsibility for assisting other offices in reviewing local governments who receive Federal-aid pass-through funds for compliance with the DBE program requirements. Findings The review confirmed that BEP does not have oversight of this function. The Local Programs have this responsibility. However. at the time of the review, Local Programs could not provide records on its review activities.

Recommendations
It is recommended that the BEP office carry out its oversight function in collaboration and coordination with other appropriate offices, as outlined in the DBE plan (PPP).
2. In its DBE plan, Caltrans needs to set forth a review schedule of local recipients it will review annually to ensure compliance with the DBE program.

Observation #6 The current operating plan provides for major splintering of the DBE Program function to many offices with little or no accountability to any office other than BER However, as stated earlier, the BEP is not implementing the program as written. There is nothing in writing that prohibits BEP from having full responsibility, but, it was shared with the review team that such communication has been provided verbally by top management throughout the department. Findings It appears that many changes that have occurred with respect as to how Caltrans DBE program will be administered were initiated some time in 1995 shortly after the Governor issued Executive Orders #W-124-95 and W-172-98, which curtailed "preference" programs in State government based upon race and gender. These E.O.s were a result of the passage of the State Initiative 209. While these two State actions did not directly affect the Federal programs, it's apparent that both have had chilling effects on State departments regarding how they implement programs that conflict with the above State actions.

Recommendation
It is recognized that Caltrans has State actions which it must follow; however, the State must follow Federal processes and procedures in terms of how it will implement Federally required civil rights programs. The DBE program is one such program that requires specific procedural implementation processes which can only be modified with FHWA written approval. Caltrans should not make any change to its DBE plan operations without prior approval from FHWA, which must be in writing,

Observation #7 Caltrans procedures to ensure equitable opportunities for DBEs to compete for contracts and subcontracts. This is discussed very briefly on pages 15 and the top of 17 in Caltrans' current DBE plan. Findings Caltrans actions listed are quite generic with respect to how it will try to

ensure DBE participation. There are very few specifics as to how or what focused action will be taken. There is no mention of analysis and evaluation to find out what may be acting as a deterrent to participation by DBEs.

Recommendation
That Caltrans revisit this section of their PPP and provide more detailed information on how it will ensure contract and subcontract opportunities for DBEs.

Observation #8 Under the current DBE program at Caltrans, 49 CER 23.45(f) and 23,53(c) (3) procedures need to be revisited. The BEP staff provided the review team a copy of the current DBE joint venture procedures. BEP did indicate Caltrans has only approved 2-3 DBE joint venture arrangements over a period of years. The example given for the team's examination was greatly flawed. Findings The review team examined a joint venture agreement between Kiewit-Marmolejo. It was found that the application process did not require a Schedule B from all parties. The most flawed part of the procedure involved a separate agreement where the minority or women owner must show how they will perform a "distinct element of work." The agreement used as an example permitted the DBE joint venture's "managing partner" to control all activities of the DBE joint venture, which is not permissible regarding the DBE partner's activities, hence, that is the rationale behind the separate agreement. The distinct element of work must be identified in the agreement, along with the total dollar amount of that activity to suffice the DBE goal in the contract.

Recommendation
Caltrans, through its BEP office, needs to revise this portion of its DBE program to come into compliance with 49 CFR 23.45(f) and 23.53(c) (e).

Observation #9 The staff of the Caltrans Design and Local Programs Office was interviewed since, as stated earlier, that office has part of the DBE program. Like the other offices which have certain responsibilities for the DBE program, there was nothing in writing outlining their responsibilities. There was no delegated authority to perform the duties currently being performed. There was no information that could show how this office's function connected with the BEP operation to accomplish program requirements. Findings The Design and Local Programs Office is the section responsible for developing guidelines and ensuring local cities and counties, who receive FHWA funding, comply with the DBE program requirements. At the time of the review, the review team requested copies of locals' DBE plans that had been approved and reviewed by this section and none were available. This section did provide a copy of a process review it had conducted on a local's overall activities; however, the DBE evaluation necessary was not part of this review. There was no evidence provided that would lead one to believe that Caltrans is complying with 49 CFR 23.45(j), other than providing generic information about the program and guidelines. While there seems to be adequate staff involvement to oversee locals' compliance, there has been no formal training at the district level to ensure compliance. There are no duty statements at the district level for DBE program implementation responsibilities. The Design and Local Programs Office reported that its sub-recipients (cities and counties) receive an estimated $350-500 million in Federally-assisted funds annually and this amount is expected to increase under TEA-21 legislation. This section of Caltrans is responsible for obtaining DBE participation reports for inclusion in the Caltrans overall reports to FHWA. The completeness of this reporting is questionable. It was reported to the review team that this section no longer captures Federal fiscal year achievement information. Thus, it cannot be determined whether or not locals meet DBE overall goals it sets.

Recommendations
That Caltrans operate this part of its DBE program consistent with its DBE plan. That Caltrans comply with 49 CFR 23.45W and the Federal Register dated July 3. 1980. Caltrans must train its district level personnel in DBE program administration. Caltrans needs to include DBE program responsibilities in the duty statements appropriate district and headquarters level personnel. The BEP Manager must oversee DBE program functions of Design and Local Programs to ensure compliance.

Observation # 10 The review team interviewed staff of Caltrans' Construction Office, as they also have

nondelegated DBE program functions. The Construction Branch of Caltrans is responsible for project level monitoring in which it relies heavily upon Resident Engineers (R.E.s) and each district for DBE monitoring purposes. It was reported that R.E.s and Construction district employees have been trained in DBE program administration. Like the other offices, there have been no specific duty statements prepared addressing DBE program activities at each district. With respect to time involvement, it would appear that sufficient staff time is being afforded for program administration. Findings The R.E.s are responsible for ensuring DBEs perform work items assigned (Commercially Useful Function - CUF). All DBE substitutions are approved at each district level, along with determinations of "good faith efforts." The BEP Office is not involved in any of these actions. The districts take unilateral action regarding enforcement of the DBE program, without involvement by the BEP office. It was reported that enforcement actions have been taken against primes, including assessment of dollar charges for infractions, but specifics on contractors and dollar amounts were not available for 1997-1998. However, it was reported that this information is available within Caltrans.

Recommendations
1. That Caltrans ensure the BEP manager oversees DBE program administration in this area as stated in Caltrans' DBE plan.
2. Caltrans provide for duty statements on DBE program administration for Construction Headquarters and district personnel.
3. Appropriate coordination between the BEP manager and Construction Headquarters and districts needs to be put in place to assure BEP's involvement in DBE monitoring and enforcement actions.

Observation #11 The BEP office staff was interviewed by the review team to find out how it implements the overall DBE program, as reported in the 1994 plan. The BEP manager is the officially designated DBE Liaison Officer for Caltrans, responsible for development and implementation of 49 CFR 23.45(a-k); however, the Director had not officially made this delegation. The current manager has held that position since 1996. This person currently reports two levels from the Director of Caltrans. The duties and responsibilities of the DBE Liaison Officer are clear, as delineated in the DBE plan and is consistent with 49 CFR 23.45(b). The unfortunate reality is that what has been written and the actual practice of the DBE program function is not one and the same within Caltrans. Findings The BEP manager is functioning as prescribed on page 5 of the current plan. This person is not being allowed to: (1) develop and implement the programs; (2) develop an overall DBE goal for the department; (3) establish individual project goals; (4) evaluate contractors proposed DBE submittals and GFEs independently; (5) investigate DBE complaints; (6) monitor other offices involvement in the DBE program to determine adequacy; or (7) conduct compliance reviews on primes' DBE activities. The BEP function seems to be that of primarily performing DBE certification activities. As is noted throughout this report, BEPs involvement in the DBE functions of other offices is casual at best and often invitational at the end of the process. It was reported by the BEP manager that since the beginning of her tenure, there have been no FHWA reviews at the Division or former Regional Office levels to indicate whether or not Caltrans is operating the DBE program properly. Also, there has been no written correspondence indicating any inconsistencies with Federal requirements other than the reduction in the overall DBE goal in 1995-1996. The BEP staff currently numbers 34 positions. This may be adequate for its current function as it is being practiced; however, if BEP were to function as its plan dictates, Caltrans management would have to reassess staffing. BEP's budget seems adequate for its current operation, but as mentioned above, if full implementation of the program was undertaken, the budget would require reconsideration. BEP provided the following on program activities: (1) position descriptions on staff functions which was sufficient; (2) annual DBE reports for 1995-1996, 1996-1997. and the first three quarters of 1997-1998, where each year the overall goal was proposed but not necessarily adopted; (3) annual operating expenses $821,962; and (4) information on the DBE Certification process review. Please note the DBE information referenced above does not seem to be reflective of the Design and Local Programs activities (locals DBE information). Also, the DBE certification process review is discussed below. A review of BEP's Certification procedures was included in the program review. Caltrans seems to have adequate staff for its current activities, but, there are issues surrounding "on-site" review activities. If BEP were required to perform required on-site reviews, the staffing currently in place would be inadequate. In 1994 (10-4-94), Caltrans wrote FHWA and advised they would not be conducting on-site reviews on DBE applicants, due to budget restraints. In 1995 (12-15-95), FHWA Headquarters wrote Caltrans

allowing Caltrans to use Federal-aid funds to accomplish this task and to prioritize on-sites to ensure full coverage but not overloading the responsible staff. Caltrans used Right-of-Way staff for a while in conducting on-sites, then wrote to FHWA again (7/95) indicating it would no longer conduct on-sites except under certain conditions and requesting a waiver of the on-site review requirement. Caltrans was advised on September 21, 1996, of the statutory basis for the requirement, the fact that the Administrator did not have the authority to unilaterally waive statutory provisions, and that Caltrans was expected to carry out its responsibility or be held in non-compliance. The BEP manager was not aware of the correspondence which had been sent directly to the Caltrans Director. However, in a June 26, 1997, letter from the Caltrans Director to the FHWA Director of Civil Rights a commitment was given to amend its procedures regarding on-site inspections. Reports of Caltrans' progress have been routinely sent to the FHWA California Division Office. Caltrans does not routinely conduct on-site reviews on DBE applicants before making a certification decision, a violation of the statute. Regarding the DBE certification process review mentioned previously, as part of that process, a file review was done on 20 firms randomly selected. The results of that file review revealed: (1) incomplete files (i.e, no original application in several files); (2) no letters from Caltrans to applicant firms or firms seeking re-certification providing firms with their status; (3) on-site reviews not being performed; (4) many application files lacked sufficient information to make certification decisions; (5) equipment identification missing; (6) recertifications inconsistently done, no consecutive year after year records; (7) Certification of "truck brokers;" (8) crediting truck brokers in amounts inconsistent with regulations; (9) insufficient ownership and control information verification; and, (10) co-location of non-DBE firms and DBE applicants not thoroughly explained. While the monitoring of contracting activities is not with BEP, it was noted that inconsistent counting and usage of "truck brokers" were being allowed. Caltrans is allowing 20%, 60%. and 100% for truck brokering. The DBE regulations do not recognize truck brokers but does allow credit for the fee in the transport of the product to a Federal-aid project by an "ad hoc supplier." Another DBE program issue uncovered was the fact that six factors were being used in determining good faith efforts by primes before execution of the contract, 49 CFR 23.45(h). While the regulations allow a recipient to adopt alternate criteria, there is no evidence that FHWA approved the process Caltrans is using. Recommendations 1. That the BEP manager, as the DBE Liaison Offices report directly to the CEO of Caltrans. 2. Caltrans must allow the DBE Liaison Officer the delegated authority to develop and implement the DBE program, as required by the DBE regulation. 3. The FHWA Division needs to monitor and review the program routinely to ensure compliance. Where program irregularities are evident, the FWHA Division needs to advise Caltrans formally and follow up in a manner sufficient to obtain compliance. 4. Based upon the FHWA review report, Caltrans needs to reconsider its staff assigned to BEP for the DBE function, as well as its budget allocation. 5. Caltrans needs to assure it is reporting all of its contracting activities to FHWA, i.e., local cities and counties along with its advertised and awarded Federal-aid contracts. 6. Caltrans must comply with the statutory requirement on conducting on-site reviews, as part of the certification review process, before a certification decision is made. 7. Caltrans needs to purge its certification files, and at a minimum, randomly select files to assure only bona fide DBE-firms are participating in their DBE program. 8. Caltrans must only use the function of truck brokering only as allowed by the regulation (credit for the fee transaction only). Caltrans is not permitted to certify "brokers" in the DBE program. 9. Caltrans, along with FHWA Division Office, needs to revisit 49 CFR 23.45(h) to determine the adequacy of the six DBE good faith efforts factors currently used by the State. III. Caltrans EQUAL EMPLOYMENT OPPORTUNITY PROGRAM, PARTII, INTERNAL EEO-AAP Observation #1 It was found that Caltrans was not operating its internal EEO program as required under 23 CF 230. Subpart C. Appendix A.. Parts I-III. The review team was told that there was a plan; however, the plan could not be retrieved. The EEO program documents apparently being referred to were 1989 and 1994 EEO program update reports, which were subsequently presented to the review team. Thus, Caltrans is not operating from an FHWA approved EEO program document and apparently has not been for many years. Findings In recognition of the above, the team leader could not review program specifics, as it would have been fruitless, but, rather took the necessary time and discussed the regulatory requirements and what those requirements mean and how they will need to be incorporated in a "draft" affirmative action plan (AAP) Caltrans had developed for the review, covering July 1, 1997 - June 30, 1998. It is obvious that for many years Caltrans has been operating from updates it has been submitting to the Division and not a program document. There was no information provided that showed FHWA approval of any updates submitted throughout this time period. There is a Chief, Equal Opportunity Program, Sherry Orr, who has been involved in the program for some time. There was no delegation and authority for program responsibility under the current practice from the

Director. Caltrans to Ms. 0 . The draft did not address this matter. As stated above, there is no FHWA approved AAP, but, only a draft presented, and as a result of the review, will need to be revised to incorporate regulatory requirements and matters addressed in our discussion. There is a Director's EEO Policy statement dated September 15, 1998. There was also some discussion on the internal complaint system. It is evident that Caltrans needs to make its complaint process consistent with Federal requirements, particularly, regarding filings. The State did agree to review FHWA's requirements and revise its draft plan as appropriate. As earlier stated, there is a Chief, Equal Opportunity Program, within Caltrans who reports to the Deputy Director, Policy and Administration, who reports to the Chief Deputy Director of Caltrans. There were a reported four other Equal Opportunity Specialists employed in this section, as well as an administrative person. There were reported 13 other personnel involved in the program in all 12 districts. Complaint investigations are not handled by this office as required by FHWA's regulations, but, are done by the Audits and Investigations section of Caltrans. There are seven full-time investigators who do not investigate civil rights complaints, exclusively, but only part-time. These people have attended EEOC complaint investigation classes, but, their expertise level could not be discerned. The budget allocated for operations for 1997-1998 totaled $1,157,773 (Salary and benefits), of which, $336,472 is operating funding. Recommendations I As agreed upon by Caltrans and FHWA, the EEO program document (draft) needs to be revised to comply with Federal requirements and follow the format of 23--CFR 230, Subpart C. Appendix A, and I-III. 2. The Caltrans Internal EEO Complaint system needs to be tailored to comply with Federal guidelines. Caltrans is not complying with 23 CFR 230. Subpart C, Appendix A. Part II., II., A.2.A or f. (2). This function is being performed by other than civil rights staff. IV. Caltrans EXTERNAL EQUAL EMPLOYMENT OPPORTUNITY PROGRAM (EEO CONTRACTOR COMPLIANCE PROGRAM) Observation #1 Like the void in the Internal EEO function, the External EEO program Assurances plan does not exist formally from an FHWA standpoint. There is no record of an approved FHWA plan. There was a 1989 manual provided to demonstrate how Caltrans carries out the program function, which is not consistent with 23 CFR 230. Subpart D. As was done with the Internal EEO program, the team leader critiqued the manual presented and concluded that a major rewrite was necessary for it to comply with FHWA program requirements. Detailed discussion was centered on what needed to be done with the manual. There was a September 1998 draft manual presented which needs to be revised to reflect the discussion of the review. BEP is the Office that has this program function. Subsequent to the FHWA review, a copy of a delegated authority Executive Order 98-32, dated 10/23/98, was provided to FHWA. This function is under the responsibility of the BEP manager, with day-to-day duties provided by Mary Porterfield (EEO Contractor Compliance Officer), who reportedly spends approximately 70% of her time during this activity., The BEP manager and another supervisor (Dean Lan), in the DBE Certification area, spends approximately 5-10% of their time in oversight activities. An Analyst (Maria Rodriguez), who works out of district 07, was reported as spending 30-40% of her time on this function. Thus, there was a reported total of 1.3 FTE devoted to this function overall. It was reported-that Caltrans awards between 700-750 Federal-aid contracts annually. Out of number of contracts, 10- 15 EEO contractor compliance reviews are conducted. It was farther reported that only about five subcontractors have been reviewed over the past couple of years. The rate of review is grossly insufficient to allow Caltrans to meet its obligation to determine compliance or ensure compliance, or where non-compliance is determined, to obtain EEO in all terms and conditions of employment. Additionally, more recent mandates governing DBE, OJT, and Indian employment preference on and near reservations will need to be incorporated. it is the review team's conclusion that Caltrans has not devoted sufficient staff time to perform the EEO contract compliance review function. Also, Caltrans is not reviewing enough contractors -- primes and subs -- to assure equal employment opportunity is being practiced by its Federal-aid contractors, in accordance with its EEO Assurances Program under 23 USC 140(a), and implementing FHWA regulations at 23 CFR 230, Subpart D. There is no budget dedicated to perform this function within BEP. When asked about its Design and Local Programs section activities, BEP could not address how EEO contract compliance is being assured, even though BEP has overall responsibility. As noted above, BEP needs to revisit and revise its EEO contractor compliance program function and devote adequate staff, budget, training, and technical assistance department-wide on this issue, particularly at each district. The review team discussed the procedural aspects of the program and concluded that the following sections need to be rewritten to comply with FHWA requirements: (1) All of 23 CFR 230.409; (2) In addition, Caltrans needs to terminate use of the OFCCP employment goals in making compliance determinations; (3) Caltrans needs to eliminate the "letter of commitment" and use the Corrective Action Plan (CAP) and Show Cause Notice (SCN) processes; and (4) use the correct exit conference process. The State

program needs to comport with 23 CFR 230.409, 411. and 413. Caltrans needs to develop an external complaint procedure that addresses complaints lodged by applicants and employees of its Federal-aid contractors, in a prompt fashion, due to the nature of construction work. A file review was conducted by the team on compliance reviews conducted. The file review revealed the following common deficiencies: (1) "letters of commitment" were used for major violations which were not enforceable; (2) OFCCP employment goals were used for determining compliance; (3) FHWA Form-1273 was not being required to be placed in contracts; (4) nonsupport on recruitment activities by contractors and no verification recorded by compliance specialists; and (5) review narrative not supportive of findings reported. Recommendations 1. Caltrans develop a viable EEO program that meets 23 CFR 230, Subpart D requirements. Caltrans needs to devote adequate personnel and budgetary resources to the program to demonstrate compliance with its EEO Assurances program. FHWA needs to work with Caltrans to assure an adequate number of contractors are reviewed annually to ensure of equal opportunity in employment. training and contracting. 4. BEP and the Design and Local Programs Office need to work together to assure that Federal-aid contractors holding contracts awarded by cities and counties are reviewed under 23 CFR 230, Subpart D. requirements. 5. Caltrans needs to develop an external complaint system to address applicants' and employees' complaints lodged against Federal-aid contractors in a timely fashion. 6. Based upon FHWA's file review, Caltrans needs to assure proper methods and operating procedures are put in place to eliminate and prevent deficiencies uncovered in the file review. V. COMPLIANCE RECOMMENDATION The staff of Caltrans was informed of major findings at a close-out conference and indicated their willingness to work to correct deficiencies. A clear indication of their willingness was the action to clarify roles and responsibilities of DBE and EEO program managers with Executive Orders 98-31 and 98-32. The situation in Caltrans will require a significant commitment of FHWA resources to provide the training and technical assistance required to complete action to address several critical findings. Evidence was found of non-cooperation in the DBE and EEO programs, as was non performance in the area of Contract compliance. A critical ingredient in the resistance, both active and passive, was determined to have been in response to the verbal direction of managers no longer in-place with the change of administrations. The public statements of the newly appointed head of Caltrans and work underway during the review on the part of the Caltrans staff provide a climate of cooperation to address their obligations and our mutual concerns. Based on the information collected and considered during the review, it is recommended that Caltrans be notified that it is in non-compliance and efforts be undertaken to effect compliance and complete investigations of Mr. Hall's allegations which were not addressed during the review. The findings of the review are serious and lend credence to the allegations of Mr. Hall, who needs to provide specifics or direct the assigned investigator to those he represents who encountered the types of situations he described. The evidence supporting a finding of non compliance with the DBE provisions of ISTEA and TEA-21, 49 CFR 23, and 23 CFR 230 D is substantial. It is recommended that such findings be concurred in and Caltrans be notified in accordance with applicable regulations, most notably 49 CFR 23.8 1, which requires that within 3 0 days of their receipt of this report they are required to provide us with: (1) evidence that the deficiency has been corrected; (2) a plan (conciliation agreement) outlining a course of action sufficient to correct the deficiency, containing specific actions and reasonable timetables consistent with Previously provided advice; or (3) show cause why enforcement actions ought not be pursued.

© Copyright 2003 The National Black Chamber of Commerce, Inc. All rights reserved.