COMPLAINT FORM
COORDINATION AND REVIEW SECTION
CIVIL RIGHTS DIVISION
DEPARTMENT OF JUSTICE

The purpose of this form is to assist you in filing a complaint
with the Coordination and Review Section.  You are not required
to use this form; a letter with the same information is
sufficient.  However, the information requested in the items
marked with a star (*) must be provided, whether or not the form
is used.

1.*  State your name and address.

Name: Duxbury Trucking, Inc.

Address: 83 Blodgett Avenue

Duxbury, MA  Zip 02332

Telephone No:
    Home:(781_) 934-8987 Work:(____)_____

2.*  Person(s) discriminated against, if different from above:

Name: Susan H. Martinsen

Address:  83 Blodgett Avenue

Duxbury, MA  Zip 02332

Telephone No:
    Home:(781)934-8987  Work:(____)_____

Please explain your relationship to this person(s).

President of Duxbury Trucking, Inc.

3.*  Agency and department or program that discriminated:

Name: U.S. Department of Transportation, Federal Highway Administration

Any individual if known: Edward W. Morris, Jr.

Address: 400 Seventh Street, SW

 Washington, D.C  Zip 20590

Telephone No:(202)366-0693

1

4A.* Non-employment:  Does your complaint concern discrimination in the delivery of services or in other discriminatory actions of the department or agency in its treatment of you or others?  If so, please indicate below the base(s) on which you believe these discriminatory actions were taken (e.g., "Race: African American" or "Sex: Female").    Yes. See attached.

_____  Race/Color: _____

_____  National origin: _____

_____  Sex: _____

_____  Religion: _____

_____  Age: _____

_____  Disability: _____

4B.* Employment:  Does your complaint concern discrimination in employment by the department or agency?  If so, please indicate below the base(s) on which you believe these discriminatory actions were taken (e.g., "Race: African American" or "Sex: Female").    No.

_____  Race/Color: _____

_____  National origin: _____

_____  Sex: _____

_____  Religion: _____

_____  Age: _____

_____  Disability: _____

5.  What is the most convenient time and place for us to contact you about this complaint?

 Please contact my counsel.  See No. 6 below.

6.  If we will not be able to reach you directly, you may wish to give us the name and phone number of a person who can tell us how to reach you and/or provide information about your complaint:

Name: Arpiar G. Saunders, Jr., Esq.

Telephone No: (603) 225-7262

7. If you have an attorney representing you concerning the matters raised in this complaint, please provide the following:

Name: Arpiar G. Saunders, Jr., Esq.

Address: Two Capital Plaza, 4ht Floor, P.O. Box 2703

Concord, NH Zip 03302-2703

Telephone No: (603)225-7262

8.* To your best recollection, on what date(s) did the alleged discrimination take place?

Earliest date of discrimination: September 27, 2000

Most recent date of discrimination: May 1, 2003

9. Complaints of discrimination must generally be filed within 180 days of the alleged discrimination. If the most recent date of discrimination, listed above, is more than 180 days ago, you may request a waiver of the filing requirement. If you wish to request a waiver, please explain why you waited until now to file your complaint.

Ms. Martinsen timely filed a civil rights Complaint.

Thirty (30) months later, Ms. Martinsen has yet to receive

a final determination from the Civil Rights Office of the Federal Highway

Administration even though, upon information and belief, the investigator

assigned to the matter, completed his report almost twenty-four (24)months

ago. The failure of the Office of the Civil Rights to timely review and

rule on Ms. Martinsen's Complaint denies her due process of law secured by

the United States Constitution and applicable Department of Transportation

statutes and regulations.

10.* Please explain as clearly as possible what happened, why you believe it happened, and how you were discriminated against. Indicate who was involved. Be sure to include how other persons were treated differently from you. (Please use additional sheets if necessary and attach a copy of written materials pertaining to your case.)

Please see answer to 4A. Please find attached at Tab A Complainant's

Original complaint dated September 27, 2000, U.S. Department of

Transportation's letter denying any findings of discrimination against

Ms. Martinsen dated February 27, 2003 attached at Tab B and Ms. Martinsen's

Request for reconsideration dated April 1, 2003 attached at Tab C.


11.  The laws we enforce prohibit recipients of Department of
Justice funds from intimidating or retaliating against anyone
because he or she has either taken action or participated in
action to secure rights protected by these laws.  If you believe
that you have been retaliated against (separate from the
discrimination alleged in #10), please explain the circumstances
below.  Be sure to explain what actions you took which you
believe were the basis for the alleged retaliation.

Not applicable.

12.  Please list below any persons (witnesses, fellow employees,
supervisors, or others), if known, whom we may contact for
additional information to support or clarify your complaint.

Name            Address         Area Code/Telephone Numbers

Roy Martinsen, 83 Blodgett Avenue, Duxbury, MA 02332 (781) 934-8987

13.  Do you have any other information that you think is relevant
to our investigation of your allegations?

Complainant believes that contents of the Federal Highway Department

"file" regarding her Complaint contains relevant and material information

which establishes that because of the serious, systemic nature of the

allegations made in the complaint, that the Office of Civil Rights, Federal

Highway Department, has purposely delayed responding to the Complaint in a vain

hope that Ms. Martinsen would give up pursuing her claims. Hence, the Office of

the Civil Rights has intentionally delayed, hindered and avoided action upon

the Complaint.

14.  What remedy are you seeking for the alleged discrimination?

- Ms. Martinsen asks that the Department of Justice investigate and impose
  appropriate sanctions and penalties upon all Federal Highway Department
  officials that have delayed, hindered and avoided acting upon her
  complaint;

- Direct the Office of Civil Rights, Federal Highway Administration to
  immediately consider and rule on Ms. Martinsen's request for
  reconsideration dated April 1, 2003; and

- Award Ms. Martinsen her attorney's fees and costs in this matter.

4

15.  Have you (or the person discriminated against) filed the
same or any other complaints with other offices of the Department
of Justice (including the Office of Justice Programs, Federal
Bureau of Investigation, etc.)?

Yes _____   No  X

If so, do you remember the Complaint Number?

  Not applicable.

Against what agency and department or program was it filed?

  Not applicable.

Address: _____

 Not applicable.                    Zip _____

Telephone No: (____)_____

Date of Filing: _____ DOJ Agency:_____

Briefly, what was the complaint about?

  Not applicable.

What was the result?

16.  Have you filed or do you intend to file a charge or
complaint concerning the matters raised in this complaint with
any of the following? No.

_____  U.S. Equal Employment Opportunity Commission

_____  Federal or State Court

_____  Your State or local Human Relations/Rights Commission

_____  Grievance or complaint office

17.  If you have already filed a charge or complaint with an
agency indicated in #16, above, please provide the following
information (attach additional pages if necessary): Not applicable.

Agency: _____

Date filed: _____

Case or Docket Number: _____

Date of Trial/Hearing: _____

Location of Agency/Court: _____

Name of Investigator: _____

Status of Case: _____

_____

Comments: _____

_____

_____

_____

_____

18.  While it is not necessary for you to know about aid that the
agency or institution you are filing against receives from the
Federal government, if you know of any Department of Justice
funds or assistance received by the program or department in
which the alleged discrimination occurred, please provide that
information below.

Ms. Martinsen does not know if Department of Justice funds are provided

to the Office of Civil Rights, Federal Highway Administration.

_____

which the alleged discrimination occurred, please provide that
information below.

_____

_____

_____

19.* We cannot accept a complaint if it has not been signed.
Please sign and date this complaint form below.

*Susan H. Martinson*          *June 12, 2003*
(Signature)                   (Date)

Please feel free to add additional sheets to explain the present
situation to us.

We will need your consent to disclose your name, if necessary, in
the course of any investigation. Therefore, we will need a
signed Consent Form from you. (If you are filing this complaint
for a person whom you allege has been discriminated against, we
will in most instances need a signed Consent Form from that
person.) See the "Notice about Investigatory Uses of Personal
Information" for information about the Consent Form. Please mail
the completed, signed Discrimination Complaint Form and the
signed Consent Form (please make one copy of each for your
records) to:

    United States Department of Justice
    Civil Rights Division
    Coordination and Review Section
    Post Office Box 66560
    Washington, D.C.  20035-6560

    Toll-free Voice and TDD:  (888) 848-5306
    Voice:  (202) 307-2222
    TDD:  (202) 307-2678

20.  How did you learn that you could file this complaint?

    From my counsel.
_____

_____

_____

21.  If your complaint has already been assigned a DOJ complaint
number, please list it here:  Not applicable.

If a currently valid OMB control number is not displayed on the
first page, you are not required to fill out this complaint form
unless the Department of Justice has begun an administrative
investigation into this complaint.

4A. * Non-employment: Does your complaint concern discrimination in the delivery of services or in other discriminatory actions of the department or agency in its treatment of you or others? If so, please indicate below the base(s) on which you believe these discriminatory actions were taken (e.g., "Race: African American" or "Sex: Female").

**Answer:  Yes.  On or about September 27, 2000, Complainant, Susan H. Martinsen, President of Duxbury Trucking, Inc., filed a complaint with the U.S. Department of Transportation, Federal Highway Administration, alleging discrimination on the basis of sex and/or by virtue of Duxbury Trucking, Inc.'s DBE[1] status, as well as denial of opportunity to seek and be awarded federally funded employment as a DBE material hauling contractor because of the failure of federal and Commonwealth of Massachusetts agencies to implement and enforce applicable wage and hour statutes and regulations.  Ms. Martinsen, simply stated, wanted to work in a lawful manner, and was unable to do so, and because of the failure of the Office of Civil Rights to follow due process requirements in reviewing her Complaint, Ms. Martinsen remains unable to work in accord with applicable law. By letter dated February 27, 2003, approximately 2 ½ years after the initial complaint was filed, the U.S. Department of Transportation found that there was insufficient evidence to support Mrs. Martinsen's allegations of discrimination.  On or about April 1, 2003, Mrs. Martinsen, through counsel, filed a "request for reconsideration" of the U.S. Department of Transportation's findings.  As of the date of this Complaint, neither the Complainant nor counsel has received a response from the U.S. Department of Transportation regarding the request for reconsideration dated April 1, 2003.  Accordingly, the delay and failure to timely respond to the complaint the Office of Civil Rights, Federal Highway Administration, denies Ms. Martinsen, the Complainant, her right to procedural and substantive due process of law in violation of Mrs. Martinsen's right to due process of the law secured by the Fifth Amendment of the United States Constitution.**

---

[1] A DBE under the U.S. Department of Transportation program is a for-profit small business concern owned and controlled by individuals who are socially and economically disadvantaged.

# TAB A

To: [illegible] of [illegible]
washington, D.C.
From: Susan H. Martinsen
83 Blodgett Ave.
Duxbury, Ma 02332

Sept 27, 2000

To: Whom It May Concern,

As a failure of the Mass. Highway Dept. (Big Dig) to make sure that their contractors were complying with Mass. Prevailing Wage laws and the Project Labor agreement, there was no opportunity to work in trucking on the Big Dig legally.

I have never gotten as much as a parking ticket in my life then was told in order to get paid I would have to falsify documents under "the pains and penalties of perjury."

I was discriminated against as a law abiding female certified WBE/DBE by being unable to work on the Big Dig legally.

As a result of Mass. Highway/Big Dig allowing this to go on, I lost my equipment because I had to park it and am on the verge of declaring bankruptcy.

I am able to prove that my company took the forefront in the battle in turning this around by contacting numerous state and federal elected officials, Federal Highway Administration. Inspector General, U S DOT, FBI, Department of Labor and Racketeering, Dept. of Labor, the news media, etc..

a DBE, the regulations during this period time read "maximum opportunity". I would certainly hope that it us a maximum portunity by obeying the law.

Sincerly,

Suson H. Martinsen

# TAB B

RECEIVED



**U.S. Department
of Transportation
Federal Highway
Administration**

FEB 27 2003

400 Seventh St., S.W.  MAR 03 2003
Washington, D.C. 20590

Refer to:HCR-1

<u>**CERTIFIED MAIL RETURN RECEIPT REQUESTED**</u>

Mr. Arpiar G. Saunders, Jr., Esq.
Shaheen & Gordon P.A.
Two Capital Plaza
P.O. Box 2703
Concord, NH 03302-2703

Re: Complaint # DOT 2001-0003

Dear Mr. Saunders:

This letter addresses the complaint filed by Mrs. Susan Martinsen (hereafter the complainant) with the United States Department of Transportation (USDOT) on September 27, 2000.[1] Complainant alleges that, as a certified disadvantaged business enterprise (DBE),[2] her firm, Duxbury Trucking, has been denied the opportunity to work on the Central Artery/Ted Williams Tunnel (CA/T) project because of the failure of the Massachusetts Highway Department (MHD) to ensure contractor compliance with the State's prevailing wage law and the CA/T Project Labor Agreement (PLA). According to the complainant, to obtain contracts to provide trucking services on the project, Duxbury would have to ignore its obligation under Massachusetts law to pay its sole employee, Roy Martinsen (the husband of the complainant), prevailing wages because the contract price (i.e., the hourly trucking rate) the firm would have to agree to would be insufficient to cover prevailing wages and other operating expenses. Consequently, in July 1996, Duxbury "parked its trucks" because it allegedly could not operate at a profit without violating State law and subjecting complainant to civil and criminal penalties. We understand complainant's claim is based on her belief that MHD's action or inaction is a form of discrimination against DBEs.

Section 324 of Title 23 of the United States Code prohibits discrimination based on sex in programs and activities funded by the Federal Highway Administration (FHWA). The FHWA enforces this anti-discrimination provision through agency rules established under Title VI of the Civil Rights Act of 1964. The MHD is a recipient of FHWA financial assistance and was responsible for administering the CA/T project when the alleged discrimination occurred. The CA/T project is a MHD Federal-aid project. As such, the MHD, its sub-recipients (e.g., the Massachusetts Turnpike Authority (MTA)), and its contractors (regardless of tier) are subject to the anti-discrimination provisions of 23 U.S.C. § 324 and the Title VI regulations at 49 C.F.R. § 21 and 23 C.F.R. § 200.

---

[1] Unless otherwise indicated, general references to the complainant include her spouse, who acted as her representative throughout our investigation of the complaint.
[2] A DBE under the USDOT program is a for-profit small business concern owned and controlled by individuals who are socially and economically disadvantaged. Individuals in certain racial and ethnic groups (e.g., African Americans, Hispanic Americans, and women) are rebuttably presumed to be socially disadvantaged. See 49 C.F.R. Part 26.

**BUCKLE UP AMERICA**

The allegations in the complaint are largely based on events that occurred in 1996 and 1997-1998, two to four years before the discrimination complaint was filed with the US DOT. Thus, the complaint ordinarily would have been considered untimely since it was not filed within the prescribed 180 days of the alleged discrimination as provided by 49 C.F.R. § 21.11(b). However, because the complainant alleges continuing violations and the complaint was filed within 60 days of becoming aware of possible discrimination, FHWA accepted the complaint for investigation.

The allegations of the complaint were investigated as part of a wider review of issues that arose in the course of our fact-finding efforts. Many of the additional issues that surfaced, over which the FHWA Office of Civil Rights has no jurisdiction, are being referred to other agencies for review and disposition as outlined below.

In addition to obtaining copies of correspondence, reports, legislative material, and other records of payments and DBE participation on the CA/T project, we conducted interviews of the complainant, her husband, other DBEs and brokers, and representatives of prime contractors, Teamsters Local 379, the State Attorney General's office, the MHD, the MTA, the CA/T project, the State Office of Women and Minority Business Assistance (SOWMBA), the USDOT's Office of the Inspector General, and the FHWA Division Office. Numerous pieces of correspondence on a variety of subjects provided by various witnesses were reviewed in detail, including a statement by the Chief Counsel of the CA/T, which addressed the complainant's allegations concerning noncompliance with the State prevailing wage law and the PLA.[3]

After reviewing all of the submitted and obtained information, we have determined that there is insufficient evidence to support a finding of discrimination against the complainant on the basis of sex or by virtue of her firm's DBE status. In reaching this conclusion, we make the following findings:

- Between June 1996 and July 1998 Duxbury worked on several trucking jobs of relatively short duration with brokers and prime contractors responsible for hauling on the CA/T project. In 1996 the hourly trucking rate Duxbury received for services rendered under its contracts ranged from $40-$45 per hour. During that time the prevailing wage was $28.17 per hour, including $8 per hour for fringes and benefits. That left $11.83 per hour to cover other operating expenses, an amount the complainant claims was inadequate to meet the cost of doing business. Faced with the choice of not submitting or falsifying payroll records to appear to be in compliance with the State prevailing wage law and risk the imposition of criminal penalties, the complainant stopped working on the project in July 1996 because she claimed she could not do so "legally." Complainant makes no claim that she was denied contracts because of her gender or because she was a DBE.

- According to the Massachusetts Office of Attorney General, contractors performing work on the CA/T project have a legal and contractual obligation to ensure the payment of the applicable prevailing wage rate. Thus, complainant was obligated to pay her employee(s) prevailing wages.

- Several State agencies are involved in implementing and enforcing the State's prevailing wage law. The Massachusetts Department of Labor and Workforce Development sets wage rates and issues interpretative guidance. The MHD receives, maintains, and reviews certified

---

[3] We have treated the statement from the Chief Counsel as a statement made on behalf of MHD and MTA.

payroll records that contractors are required to submit to document compliance with the prevailing wage law. In turn, MHD refers cases of noncompliance to the Massachusetts Attorney General for enforcement. Lastly, the Attorney General handles the prosecution of alleged violations of the law. Before parking her truck, complainant sought assistance from a number of State and Federal officials, including the Massachusetts Attorney General's Office, MHD, the MTA, the Federal Bureau of Investigation, the Labor and Racketeering Section of the U.S. Department of Labor's (DOL) Office of Inspector General (OIG), and the USDOT OIG.

- After a group of truckers organized by complainant's spouse threatened to stop working on the CA/T project, MHD took action in 1997 to fund an increase in the hourly trucking rate paid to small trucking businesses under contracts in existence before July 1, 1997. The resulting "Central Artery/Tunnel Project Memorandum of Agreement on Trucking Issues" (Uplift Agreement) executed to end the work stoppage increased the hourly rate to $65, which included fringe benefit payments. The increased trucking rate enabled complainant to resume work on the project. The Uplift Agreement expressly states that it is not an admission of wrongdoing by the parties (which included, among others, MHD and the Department of Labor and Workforce Development), that it was entered to settle disputed issues concerning work on then existing contracts awarded before July 1, 1997, that future trucking rates for contracts awarded after July 1, 1997, would be determined by the marketplace, and that the parties waive any past claims for unpaid wages, benefits, or benefit fund contributions to the extent permitted by law. The complainant's husband, who was one of the key organizers of that action, agreed to be bound by the terms of this agreement.

- Notwithstanding the Uplift Agreement, the Massachusetts House of Representative's Post Audit and Oversight Bureau's investigation of prevailing wage issues on the CA/T and other public construction projects in Massachusetts confirm the complainant's allegations regarding the lack of monitoring and oversight by MHD of the payment of prevailing wage rates to, and treatment of, truckers on the CA/T. That the CA/T project staff took aggressive action after the truckers' job action to better monitor wage rate compliance and refer instances of uncorrected noncompliance to the Massachusetts Attorney General for criminal prosecution further validated the complainant's allegations regarding the ineffectiveness of MHD monitoring.

- After the new trucking rates were set under the Uplift Agreement, Duxbury received loans for working capital from Modern Continental, a CA/T prime contractor. Duxbury worked on the project for Modern Continental from 1997-1998. Since the Uplift Agreement did not affect future trucking rates, the complainant once again stopped working on the project when hourly rates paid to truckers reverted to the pre-Uplift agreement level.

- It is the position of the MHD that trucking rates are set by market driven forces, that some truckers can provide services to contractors at a lower rate than others and still comply with prevailing wage requirements, and that MHD is not responsible under the prevailing wage law for market rate fluctuations in the trucking rates paid by contractors.

- The ineffective monitoring of prevailing wage rate payments and processes seems to have been pervasive. However, there is no evidence that complainant was subjected to intentional discrimination based on sex. There also is insufficient evidence that, as a DBE, the complainant was disproportionately adversely affected by the lack of compliance with the State prevailing wage law as compared to non-DBEs generally or non-DBE truckers

3

specifically. Within the trucking community, the impact of the State's failure to adequately monitor prevailing wage law compliance was similarly visited upon all trucking firms. Moreover, there is insufficient evidence of a causal connection between the State's failings and the complainant's plight.

- Complainant asserts that the terms of Duxbury's loan agreement with Modern Continental were harsh and unfair. We draw no specific conclusions about the loan agreement, except that there is no evidence to suggest that there was any discrimination or discriminatory effect based on the complainant's gender.

Based on the above findings, we are closing the complaint as of the date of this letter, subject to the following: the complainant may file a request for reconsideration within 30 days of receipt of this letter if the complainant has additional information or analysis relevant to her claim of discrimination or if the complainant believes evidence presented was not properly considered. Normally our decision is final upon issuance. However, because of the complexity of this case, the time taken to complete the investigation, and the unusual circumstances involving the investigative process, we think it is appropriate to allow reconsideration before a final agency decision is rendered.

Our finding of no violation does not preclude the complainant from pursuing any existing private rights of action. Please note that the closure of this case does not affect the complainant's right to file a complaint with this office in the future. The complaint must be filed within 180 days of the alleged discrimination.

As I indicated earlier, in the course of our investigation, several matters were brought to our attention that may warrant further action by other offices within FHWA or by other Federal or State agencies. Under separate cover, we are referring to the appropriate authorities the following issues of concern raised by the complainant or unearthed during the investigation:

1. Whether the manner in which prime contractors set the trucking rates for small trucking firms runs afoul of Federal anti-trust laws based on allegations made by the owners of such firms that the rates are not driven by market forces but instead are set and adhered to by brokers and/or primes.

2. Whether trucking subcontractors on the CA/T project have submitted, or are submitting, falsified payroll records, including whether prime contractors participated in the falsification of such payroll records.

3. Whether there is compliance with the terms of the PLA regarding the disposition of monies paid into fringe and benefit funds for drivers who did not meet the 600-hour minimum to qualify for hospitalization.

4. Whether the provisions of § 27E of the Massachusetts General law, which requires "at least seventy five per cent (sic) of the persons employed by the department of highways to work in connection with the construction, reconstruction, alteration, or repair of any public works, in positions other than those subject to the civil service laws and rules and regulations, . . . be residents in the highway district...in which the work is done," complies with 23 CFR § 635.117(b) and the PLA. (emphasis added).

5. Whether MHD is complying with Federal regulations that require <u>all</u> subcontracts be in writing and that all contractors (primes and subs) be informed of their civil rights, wage rate compliance, and other obligations under the Federal-Aid Highway program.

Our review of the situation in Massachusetts will continue, as will our coordination with other appropriate Federal agencies with responsibilities in matters raised by the complaint. Specifically, we are reviewing the following concerns:

1. Whether the DBE certification process is administered by SOWMBA in accord with Federal regulations. Questions have been raised about the possible conflict between the mission of SOWMBA and the goals and objectives of the Federal DBE program, about improperly certified firms, and about allegations of "fast-tracking" politically connected applicants for DBE certification.

2. Whether MHD has a clear understanding of its responsibilities under Title VI of the Civil Rights Act of 1964. There may be some confusion regarding the roles, responsibilities, and relationships between MHD and MTA as a recipient and sub recipient respectively that stem from provisions of Massachusetts law that appear to insulate MTA from supervision or control by MHD. There also are questions raised about the extent to which MHD, MTA, and Bechtel Parsons Brinckerhoff have conducted sufficient compliance reviews of primes and subcontractors to ensure that they are not discriminating in the selection and retention of subcontractors, material suppliers, and vendors or to ensure equal employment opportunity is being provided in the workforces of employers on the CA/T and elsewhere in the State.

3. Whether the practices of Modern Continental on Route 3, in which its broker advertised for owner-operators to the exclusion of small business owners, comply with Federal requirements.

Complainant should be aware that under the Freedom of Information Act it may be necessary to release this information and related materials upon request once our review is complete. In the event we receive such a request, we will seek to protect, to the extent provided by law, personal information which, if released, could constitute an unwarranted invasion of privacy.

The complainant should be made aware that it is illegal for anyone to intimidate, threaten, coerce, or engage in other discriminatory conduct against anyone who has taken action or participated as a witness to secure rights protected by 23 U.S.C. 324. Anyone alleging such harassment or intimidation may file a complaint with this office or the Department of Justice. If the situation warrants, such complaints will be investigated.

If you have any questions related to this letter, please contact Brenda Armstead at the Investigations and Adjudications office of the Office of Civil Rights. Room 4132 of the Nassif Building, Washington, DC 20590, and reference the complaint number cited at the beginning of this letter.

Sincerely yours,

Edward W. Morris, Jr.
Associate Administrator for Civil Rights

# TAB C

# ..AHEEN & GORDON

### PROFESSIONAL ASSOCIATION

Arpiar G. Saunders, Jr.
*Attorney At Law*

*Offices*
Dover, NH
Concord, NH

April 1, 2003

*Via:*   *United Parcel Service*
         *Next Day Air*

Edward W. Morris, Jr., Associate Administrator for Civil Rights
HCR-1 Room 4132
400 Seventh Street, SW
Washington, DC 20590

  RE: Susan Martinsen/Duxbury Trucking, Inc.
     Complaint # DOT 2001-0003

Dear Mr. Morris:

  This office represents Susan Martinsen (Complainant") and Duxbury Trucking in the
Complaint # DOT 2001-0003.  On March 3, 2003, this office received your correspondence
dated February 27, 2003 ("letter") in which you find "that there is insufficient evidence to
support a finding of discrimination against the complainant [Susan Martinsen] on the basis of sex
or by virtue of her firm's DBE status."  Please allow this letter to serve as a "request for
reconsideration" of certain of the Department's findings pursuant to the terms of your
correspondence.

  The Office of Civil Rights is required to manage and promote civil rights programs to
ensure fair and equitable treatment of all persons employed or affected by the Federal Highway
Administration ("FHWA"), and the programs and activities of its recipients, sub-recipients and
contractors.  In carrying out this function, FHWA investigates external complaints including
allegations regarding external program impact, including "class-action" and "pattern and
practice" complaints.  Where appropriate, FHWA must outline and monitor remedial actions to
determine compliance with corrective actions plans.  See e.g., FHWA Order M 1100.1A, Chg.
27 Part II, CH. 11.

  When facilitating agency mandates, the Office of Civil Rights is prescribed by regulation
to bring standardization to the implementation of and the ensuring the meeting of equal
opportunity requirements, as mandated by the equal opportunity contract provisions and
additionally by each State's required assurance of equal opportunity compliance. (23 CFR
230.401).

In that regard, the regulatory standardization process is very clear as it defines equal opportunity, at 23 CFR 230,407 (L), as meaning:

> "the absence of partiality or distinction in employment treatment, so that the right of all person to work and advance on the basis of merit, ability, and potential is maintained."

My client is not seeking special treatment or consideration. She simply seeks the protections from the Office of Civil Rights so that she and others can work lawfully on a federal-aid project which is in compliance with clearly defined and required contract standards in an environment which is equal and supportive of her and others, thereby, providing advancement based on her merit, ability, and potential.

On September 27, 2000 the Complainant filed a Complaint with the United States Department of Transportation ("USDOT"), alleging that the Massachusetts Highway Department ("MHD") implementation of the Central Artery/Tunnel ("CA/T") project failed to ensure that contractors were complying with the Massachusetts prevailing wage laws and the project labor agreement with the resulting impact that trucking companies who refused to falsify certified payroll records were denied the fair opportunity to compete for and complete contracts on the project. Mrs. Martinsen specifically alleged: "I was discriminated against as a law abiding female certified WBE/DBE by being unable to work on the Big Dig legally." Mrs. Martinsen also made the specific allegations that MHD and other state agencies had actual knowledge that contractors were failing to comply with the State's prevailing wage law, resulting in the misuse or misapplication of federal highway funds to the detriment of her company: "As a result of Mass. Highway/Big Dig allowing this to go on, I lost my equipment because I had to park it and I am on the verge of declaring bankruptcy." See Complaint attached as an Exhibit 1.

Mrs. Martinsen's allegations regarding lack of compliance with the prevailing wage law and the project labor agreement have been amply supported by the findings of the Massachusetts Attorney General's Office, and the 1997 House Post Audit and Oversight Bureau. These findings have been affirmed five (5) years later in your 2003 findings and notification. My client simply requests that the Office of Civil Rights require the implementation of well understood and defined contracts standards to correct this fundamental FHWA-Recipient contracting equal opportunity and equal protection matter.

Further problematical is the Department's failure to adequately address the core allegations of Mrs. Martinsen's Complaint, and provide sufficient evidentiary analysis to support its findings of no discrimination nor discriminatory impact.[1]

---

[1] In the same vein, the Department's 2 ½ year investigation into Mrs. Martinsen's complaints has failed to satisfy its statutory and regulatory mandate to investigate and ensure remediation of violation of federal civil rights laws and application of federal highway funds, a pattern that has continued unabated for some time. See e.g. 2001 Southern Transportation Civil Rights Conference attached as Exhibit 2.

The Department's finding that "Complainant makes no claims that she was denied a contract because of her gender or because she was a DBE" is clearly erroneous. See Letter at p. 2. In fact, it can be said the entire basis of Mrs. Martinsen's Complaint is that the operation of the CA/T was structured so that DBEs could not fairly compete for contracts because the MHD, its sub-recipients and its contractors knowingly permitted and/or directed truckers to falsify payroll records. As a result, the Massachusetts prevailing wage law was not complied with to the detriment of DBEs in general, and Mrs. Martinsen's company in particular, despite the Department's affirmative action provisions which require "continuous result-oriented measures to correct past and present discriminatory practices and their effects on the conditions and privileges of employment." 23 CFR 230.407 (c). Additionally, the affirmative action provisions mandate that a economically disadvantaged business enterprise be provided an "equal playing field" requirement as well as specific contracting standards that protect such companies from the specific complaints of discrimination made by the Complainant.

The Department's finding that "[t]he ineffective monitoring of prevailing wage rate payments and processes seems to have been pervasive . . . .There [] is insufficient evidence that, as a DBE, the Complainant was disproportionately adversely affected by the lack of compliance with the State prevailing wage law as compared to non-DBE's generally or non-DBE truckers specifically" is utterly without critical analysis. See Letter at pp. 3-4. Although the Department concedes that the State failed to adequately monitor the prevailing wage law, and concludes this inadequacy was "visited upon all trucking firms," the Department ignores that this very system discriminated against DBEs, such as Duxbury Trucking, who followed the law to its detriment, despite the State's and the program's actual notice that other firms were in violation of the law. Thus, the Department identifies no facts to support its findings in this regard, and appears to ignore the evidence that firms which knowingly violated the law with the knowledge of the State were able to function, if not thrive, under the system in place.

The Department's finding that the loan agreement with Modern Continental encompassed no discrimination or discriminatory effect based on the Complainant's gender, but undertakes no analysis whether the loan agreement discriminated or had discriminatory effect based upon the company's DBE status. See Letter at p. 4.

Notwithstanding the aforementioned issues with the Department's findings, the Department fails to address many of the core allegations of the Complainant:

• The Department does not address Complainant's assertion that CA/T contractors refused to honor contractual provisions involving small trucking company employees.

• The Department does not address the Complainant's assertions that the CA/T project did not enforce required policies, practices and operating procedures to insure compliance with CA/T contracts to the detriment of complaint.

• The Department does not adequately consider the Complainant's assertion that violation of the prevailing wage law is ongoing, and that MHD has knowingly failed to take

action despite receiving falsified payroll reports to the detriment of DBEs who will not engage in such fraudulent practices.

- The Department does not address Complainant's contention that MHD failed to comply with its FHWA contracts by not taking those actions necessary from 1991 to 1997 to back up their FHWA contract assurance with the investments required to guarantee CA/T contract compliance.

- The Department does not address Complainant's contention that MHD failed to comply with its Federal Funds Recipient Responsibility from 1991 to 1997 by not taking action necessary to make every reasonable effort to eliminate past and present discrimination in their federal assisted programs, and to ensure future non-discriminatory practices by their failure to enforce the CA/T contract, labor agreement, Massachusetts Heavy Construction Agreement Massachusetts Department of Labor Requirements and the prevailing Massachusetts wage law.

- The Department does not address Complainant's contention that CA/T contractors engaged in policies, practices and operating procedures that exploited the trucking industry and violated the CA/T non-discriminatory contract provisions and labor agreements to the detriment of DBEs.

- The Department does not address Complainant's contention that CA/T discriminated against DBEs.

- The Department does not address Complainant's contention that MHD continues in its discriminatory non-compliance with federal law because of its failure to ensure non-discrimination against DBEs and their employees.

Complainant requests that the Department reconsider its findings in light of the issues outlined herein which focus on the failure of FHWA to recognize and support Equality Standards; FHWA's failure to recognize and support clearly defined contracting standards; FHWA's failure to recognize and support DBE "equal playing field" standards; FHWA's failure to recognize and support compliance with State and Federal legal and regulatory standards; FHWA's failure to recognize and support clearly defined civil rights contract standards; and, finally, the failure to provide a legally sufficient justification for FHWA's ultimate conclusion of no discrimination.

Very truly yours,

Arpiar G. Saunders, Jr.
asaunders@shaheengordon.com

AGS/ljp
Enclosures
cc:    Susan Martinsen, Duxbury Trucking, Inc.

*F:\DATA\CLIENTS\DUXBURY\MORRIS033103*

**U.S. Department of Justice**
**Civil Rights Division**
*Coordination and Review Section*



## COMPLAINANT CONSENT/RELEASE FORM

Your Name: Duxbury Trucking, Inc., c/o Susan H. Martinsen, President

Address: 83 Blodgett Avenue

Duxbury, MA 02332

Complaint number(s): (if known) _____

*Please read the information below, check the appropriate box, and sign this form.*

I have read the Notice of Investigatory Uses of Personal Information by the Department of Justice (DOJ). As a complainant, I understand that in the course of an investigation it may become necessary for DOJ to reveal my identity to persons at the organization or institution under investigation. I am also aware of the obligations of DOJ to honor requests under the Freedom of Information Act. I understand that it may be necessary for DOJ to disclose information, including personally identifying details, which it has gathered as a part of its investigation of my complaint. In addition, I understand that as a complainant I am protected by DOJ's regulations from intimidation or retaliation for having taken action or participated in action to secure rights protected by nondiscrimination statutes enforced by DOJ.

## CONSENT/RELEASE

[X] **CONSENT - I have read and understand the above information and authorize DOJ to reveal my identity to persons at the organization or institution under investigation. I hereby authorize the Department of Justice (DOJ) to receive material and information about me pertinent to the investigation of my complaint. This release includes, but is not limited to, personal records and medical records. I understand that the material and information will be used for authorized civil rights compliance and enforcement activities. I further understand that I am not required to authorize this release, and do so voluntarily.**

[ ] **CONSENT DENIED - I have read and understand the above information and do not want DOJ to reveal my identity to the organization or institution under investigation, or to review, receive copies of, or discuss material and information about me, pertinent to the investigation of my complaint. I understand this is likely to impede the investigation of my complaint and may result in the closure of the investigation.**

_Susan H Martinsen_                    _June 12, 2003_
SIGNATURE                                DATE