UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Duxbury Trucking, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Massachusetts Highway Department, et al., <br><br> Defendants. | Civil Action No. 04-12118-NG |

**PLAINTIFF DUXBURY TRUCKING'S OPPOSITION TO DEFENDANT MASSACHUSETTS HIGHWAY DEPARTMENT'S MOTION TO DISMISS**[1]

NOW COMES Duxbury Trucking, Inc. ("Plaintiff"), by and through counsel, Shaheen & Gordon, P.A., and opposes the Massachusetts Highway Department's Motion to Dismiss.[2] In support thereof, Plaintiff states the following:

I.  FACTS

The Massachusetts Highway Department ("MHD") as a recipient of federal highway funds is subject to federal anti-discrimination laws pursuant to Title VI of the Civil Rights Act of 1964, 23 U.S.C. § 324, and the statute's implementing regulations at 49 C.F.R. § 21 and 23 C.F.R. § 200. Pl's Cmplt. at ¶ 21. Those regulations require that the MHD and the Massachusetts Turnpike Authority ("MTA"), their sub-recipients, agents, and any contractors who receive federal highway money cannot discriminate on

---

[1] Plaintiff incorporates by reference her Opposition to defendant Massachusetts Turnpike Authority's Motion to Dismiss, filed with this Court on March 17, 2005.

[2] Plaintiff will file, contemporaneously with this opposition motion, a motion to amend her complaint to name various individuals within the MTA and MHD who either carried out or were directly responsible for these discriminatory acts. Some discovery will need to be completed by Plaintiff to name additional individuals responsible for these acts.

the basis of race, color or national origin, or sex, pursuant to 23 U.S.C. § 324 and 23 C.F.R. 200.9(a)(2). Id.  The same implementing regulations further require the MHD to oversee compliance with the anti-discrimination provisions on the basis of sex, stating at 23 C.F.R. 200.9(a)(4), "the State program area officials and Title VI Specialist shall conduct annual reviews of all pertinent program areas to determine the effectiveness of program area activities at all levels." Pl's Cmplt. at ¶ 23.  The MHD subjected itself to these federal regulations when it undertook the management of the Central Artery/Tunnel ("CA/T") Project, otherwise known as the Big Dig, in Boston, Massachusetts. Pl's Cmplt. at ¶ 21.

The MHD, as a recipient of federal highway funds, was also required to oversee compliance with the state prevailing wage laws. Pl's Cmplt. at ¶58.  Massachusetts' prevailing wage laws, M.G.L. ch. 149 §§ 26-27, state the required hourly wages for truckers hauling gravel for the CA/T Project. Pl's Cmplt. at ¶ 24.  The prevailing wage law also states that the office of the Massachusetts Attorney General will enforce these laws and that anyone aggrieved by violations of the law may institute a civil action against his employer. Id.  However, the Massachusetts House of Representatives' Post Audit and Oversight Bureau found in 1997 that these statutory provisions were not sufficient to ensure compliance with the prevailing wage laws. Id.  The House committee found specifically that, "[t]he current system of prevailing wage enforcement is burdensome and in large part unenforceable….[and under] the current scheme, enforcement is especially difficult where large construction contractors and multiple contracting entities are involved."[3]  Id.  The MHD also requires all contractors working

---

[3] Plaintiff respectfully requests that this Court take judicial notice of a newspaper article published Sunday, April 10, 2005 in the Worcester Telegram & Gazette titled "Workers say state AG is slack on labor cases."

2

on the CA/T Project to be bound by the Project Labor Agreement ("PLA"), a contract with Bechtel/Parsons-Brinkeroff, that requires contractors to pay base hourly wage rates and make contributions to established employee benefit funds. Pl's Cmplt. at ¶ 25. All contractors at the CA/T Project were bound by the PLA and, therefore, required to pay wages in compliance with the prevailing wage laws. Id.

Plaintiff was able to secure hauling contracts with various contractors at the CA/T Project. Pl's Cmplt. at ¶¶ 29-32, 41. However, Plaintiff suffered the harmful effects of discrimination based on sex as a result of the MHD's failure to properly conduct reviews of the Title VI program and oversee prevailing wage laws as set out in the above federal regulations. Pl's Cmplt. at ¶¶ 33-37. Plaintiff was a certified woman-owned business (WBE) as of April 1, 1998, having applied for certification almost a year earlier. Pl's Cmplt. at ¶ 28. Plaintiff could not continue to operate her trucking business because she was unwilling to break the prevailing wage laws and subject herself to criminal penalties.[4] Pl's Cmplt. at ¶ 57.

Even after entering into the "Uplift Agreement" meant to reinvigorate the MHD's enforcement of prevailing wage laws, the MHD continued to violate 49 C.F.R. § 21, Appendix C(a)(2)(v) by discriminating against Plaintiff on the basis of her sex when the MHD failed to conduct mandated reviews of Title VI programs. Pl's Cmplt. at ¶58.

---

The article is attached as Exhibit A. The article chronicles the difficulties that workers on public contracts with prevailing wage claims have experienced as they attempt to resolve their claims through that statutorily-mandated channel. The article states, "[a]t least 18 former employees of the defunct company [Suburban Fire Protection, Inc. of Northboro] say they were not paid the state's prevailing wage to work on public construction projects. Despite that, they were told by the office of Massachusetts Attorney General Thomas F. Reilly that if they wanted to get their money, they would have to hire a lawyer on their own and go to court themselves." This reinforces Plaintiff's argument that there is no adequate state remedy at law for Plaintiff's claims. The state agency charged with enforcing prevailing wage claims has clearly not upheld its duty.

[4]   Defendant MHD suggests in its argument that Plaintiff was somehow responsible for upholding her contractual obligations in the face of this manifest illegality. See Def's Mot. to Dismiss at 10-11. This is absurd considering a party is under no obligation to perform a contract that has already been breached by the other party.

3

Those regulatory violations occurred between June 1996 and June 1998 and had a disproportionate effect on WBEs, including Plaintiff's business. Pl's Cmplt. at ¶60. Because the MHD did not adequately review the Title VI program and oversee the prevailing wage laws, certain classes of truckers, which included a higher percentage of women, suffered discrimination as a result of the MHD's actions because they did not receive statutorily mandated wages. Id. Plaintiff was in this class of haulers, and as a result of this discrimination, in 1999 Plaintiff lost her trucks and equipment lease options, business start-up costs, corporate income and interest and loan payment credit. Pl's Cmplt. at ¶¶ 41, 61.

To remedy this discrimination, Plaintiff filed a pro se complaint alleging discrimination based on sex with the Federal Highway Administration ("FHWA") on September 27, 2000. Pl's Cmplt. at ¶74. The FHWA considered the complaint timely filed because it alleged ongoing violations. Pl's Cmplt. at ¶ 42. The FHWA generated an initial report, finding that discrimination had occurred at the CA/T Project.[5] Pl's Cmplt. at ¶ 75.

The initial report, attached as Exhibit B, found that the CA/T Project prime contractors systematically discriminated[6] against DBE and WBE contractors. U.S.D.O.T. Report at 60-61. The report further found that Duxbury Trucking lost its hauling

---

[5]     Plaintiff respectfully requests that this Honorable Court refer to Plaintiff's Opposition to Defendant Massachusetts Turnpike Authority's Motion to Dismiss. Plaintiff incorporates by reference that opposition motion and its attached exhibits. Please see footnote 2 describing an email from David Pales, FHWA Civil Rights Specialist, to defendant Edward Morris concerning discrimination toward DBEs. Pl's Opp. MTA Mot. at 4.

[6]     Plaintiff respectfully requests that this Honorable Court refer to Plaintiff's Opposition to Defendant Massachusetts Turnpike Authority's Motion to Dismiss. Plaintiff incorporates by reference the opposition motion and its attached exhibits. Please see footnote 3 of the opposition motion regarding nationwide discrimination against women- and minority-owned businesses. Pl's Opp. MTA Mot. at 4.

contracts as a result of discrimination. U.S.D.O.T. Report at 45. The report also found that the MHD failed to take the necessary steps to insure that prime contractors at the CA/T Project complied with regulations prohibiting discrimination and conformed to prevailing wage rates. U.S.D.O.T. Report at 59. Additionally, the report found that the MHD failed to comply with its FWHA contract assurances prohibiting discrimination under Title VI of the Civil Rights Act of 1964. U.S.D.O.T. Report at 58. These failures continued even after the MHD took corrective action. U.S.D.O.T. Report at 16. The total damages owed Plaintiff as a result of discrimination amounted to over $1.1 million. Id. at 111. The report estimated the total damages in hourly wages owed to A, B and C material hauling truckers to be over $12 million. U.S.D.O.T. Report at 64.

During this time, defendant Edward Morris urged Plaintiff to "bear with" the process, promising that he would make a finding of discrimination, and that an appropriate remedy would be forthcoming. Pl's Cmplt. at ¶ 75. However, the final report, issued in March 2003, almost two and a half years after the complaint, found that no discrimination had occurred. Pl's Cmplt. at ¶76. Plaintiff filed a request for reconsideration of the FHWA's decision, which was subsequently denied. Id. Determined to resolve her claims of discrimination, Plaintiff then filed a complaint with the Department of Justice on June 17, 2003, describing the defendants' discriminatory acts.[7] Plaintiff then attempted to gather information about her FHWA complaint by requesting FHWA documents pursuant 5 U.S.C. § 552 et seq. ("The Freedom of Information Act" or "FOIA"). Pl's Cmplt. at ¶ 50. The Department of Justice later

---

[7] Plaintiff respectfully requests that this Honorable Court refer to Plaintiff's Opposition to Defendant Massachusetts Turnpike Authority's Motion to Dismiss. Plaintiff incorporates by reference the opposition motion and its attached exhibits. Please see footnote 4 of the opposition motion regarding Plaintiff's attempt to notify the Department of Justice of the state agencies' failures. Pl's Opp. MTA Mot. at 5.

responded to Plaintiff's complaint in December 2003, stating that, despite its mandate to enforce federal laws and protect persons against violations of such laws, they would not review the FHWA's decision.

Plaintiff, after repeated efforts, finally received materials responsive to her FOIA request in April 2004. Pl's Cmplt. at ¶52. This information from the FOIA request was critical to the claims that Plaintiff pursues in this action. The materials, finally produced, had information to support Plaintiff's discrimination claims against the MHD, including detailed timelines showing that the defendants were placed on notice of irregularities in truckers' wages and payroll requirements, and that prime contractors were ignoring directives to pay prevailing wages and continued their discriminatory practices in the face of those directives. Pl's Cmplt. at ¶ 52.

## II.   STANDARD OF REVIEW

Defendants have moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). The issue when considering a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support his claims. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002). Dismissal is only appropriate when the plaintiff is not entitled to any relief on any set of facts that he could prove. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Therefore, in making such a determination, the court accepts the well-pleaded facts of the plaintiff's complaint as true and draws every reasonable inference in the plaintiff's favor. See Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000).

III.   ARGUMENT

A. <u>The Eleventh Amendment does not bar Plaintiff's claims against the MHD.</u>

The Eleventh Amendment does not bar Plaintiff's suit against the MHD because Title VI of the 1964 Civil Rights Act explicitly abrogates the states' immunity from such suits.  <u>See</u> <u>Comfort v. Lynn School Committee</u>, 131 F. Supp. 2d 253, 255 n. 4 (D. Mass. 2001) (Congress has clearly abrogated state sovereign immunity under Title VI and agencies and departments within the state are "program[s] or activit[ies]" within the parameters of the statute).  Therefore, Plaintiff's claims are properly brought pursuant to 23 U.S.C. § 324 because that statute is to be enforced through agency provisions and rules similar to those already in existence under Title VI.  <u>See</u> 23 U.S.C. § 324.

The MHD's argument that a claim pursuant to 23 U.S.C. § 324 cannot be enforced in the same manner as claims under Title VI leads only to an illogical result.  Congress would not have written an enforcement scheme for 23 U.S.C. § 324 similar to that of Title VI if it could not ultimately be enforced in the same manner as Title VI.  Furthermore, the absurdity of the MHD's position is underscored by the fact that its co-defendant, the Massachusetts Turnpike Authority, explicitly agrees in its motion to dismiss Plaintiff's claims that 23 U.S.C. § 324 <u>should</u> be interpreted according to Title VI.  <u>See</u> Def. MTA's Mot. to Dismiss at 8.  Clearly, defendant MHD has painted itself into a corner with this untenable and illogical argument.[8]

---

[8]   Defendant MHD relies on <u>Clallam County v. Dept. of Transportation of State of Washington</u>, 849 F.2d 424 (9th Cir. 1988) to support the proposition that Title 23 of the United States Code does not show any intent to abrogate states' sovereign immunity.  <u>See</u> Def's Mot. at 7-8.  However, the plaintiff in that case made no claims pursuant to Title VI in the enforcement of Title 23.  Therefore, it sheds no light on defendant MHD's above argument.

B.  <u>Plaintiff has stated a valid claim for discrimination.</u>

The MHD would like the Court to focus on the need for intentional discrimination to state a claim under Title VI.[9]  <u>See</u> Def's Memo. at 9-10.  Plaintiff acknowledges that <u>Alexander v. Sandoval</u>, 532 U.S. 275 (2001) only allows for private enforcement of Title VI claims that allege intentional discrimination.  However, <u>Sandoval</u> is distinguishable from the case at bar because Plaintiff claims that the MHD's lack of adherence to the regulation caused a discriminatory result.  The Plaintiff does not seek to prove that the regulations as written caused a discriminatory effect, as the class of plaintiffs in <u>Sandoval</u> did.  <u>Id.</u> at 279.  Furthermore, even if Plaintiff's complaint were read as an impermissible private enforcement action of the regulations promulgated under Title VI, the agencies charged with enforcing these regulations have not enforced them.  <u>Id.</u> at 293.  Therefore, Plaintiff acts as a private attorney general to rectify the state and federal governments' inability to enforce their own rules and regulations.

Plaintiff may enforce her claim of sex-based discrimination as a private attorney general in the absence of any other enforcement authority.  Massachusetts recognizes the necessity of an enforcement action by a private party when public resources either cannot or will not enforce a law that supports an important public policy.  <u>See</u> <u>Pearson v. Board of Health of Chicopee</u>, 402 Mass. 797, 799-800 (1988) (Court held that private enforcement of open meeting law was appropriate because the law was meant to uphold an important public policy and the overworked district attorney's office did not have the resources to prosecute violations).  The First Circuit has also recognized that a private

---

[9]  Defendant MHD attempts to confuse the issue further by stating that Plaintiff did not allege any facts to support intentional discrimination prior to her certification as a WBE.  Defendant MHD offers no case law to explain why Plaintiff's certification status is significant to a discrimination claim.  Plaintiff will therefore address the issue of WBE certification in the context of the due process violation that she suffered.

8

party may vindicate the rights of the public when the public at large benefits from that enforcement. See Gay Officers Action League v. Commonwealth of Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001) (Court fount that private enforcement of discriminatory law benefited plaintiffs and public as a whole).

Plaintiff may enforce this action as a private attorney general both because vindicating the Title VI claim serves the important public policy of recognizing sex discrimination and preventing further instances of it, and because the authorities charged with enforcing the federal discrimination regulations did not do so.[10] That discrimination occurred is clear from the initial report; the U.S. Department of Transportation ("U.S.D.O.T.") found that Plaintiff had suffered the ill effects of discrimination at the hands of the MHD, the MTA, and their prime contractors for their failures to uphold the prevailing wage law and to review Title VI programs.

As a result of the discrimination, the Plaintiff tried several avenues within the enforcement framework and met with resistance at every turn. She learned as early as 1997 that the Massachusetts House of Representatives found the prevailing wage laws to be virtually unenforceable. Further, had she blindly followed the prevailing wage law's dictate that she enforce her claims for unpaid wages against her employer-contractor, she would have placed herself in the untenable position of suing her boss, a decision that would have made her a pariah among hauling contractors and assured her business of an even earlier death. Plaintiff then filed a complaint with the FHWA alleging

---

[10] Plaintiff respectfully requests that this Honorable Court refer to Plaintiff's Opposition to Defendant Massachusetts Turnpike Authority's Motion to Dismiss. Plaintiff incorporates by reference the opposition motion and its attached exhibits. Please see footnote 5 of the opposition motion regarding a Boston Globe article airing the government's dissatisfaction with mismanagement of the CA/T Project. Given the government's inability to solve its own problems, Plaintiff's suit as a private attorney general is the only remaining remedy.

discrimination in 2000, and there was an initial finding by FHWA of discrimination. The FHWA later reversed that decision, finding two and a half years later that no discrimination had occurred. Only when Plaintiff filed a FOIA request, and received documents responsive to her request in April 2004 did she have information that supported her claims of discrimination based on violations of the prevailing wage law.[11] During this time, Plaintiff also established contact with the Department of Justice, asking for reconsideration of her FHWA complaint. This too was ultimately unsuccessful as the Department of Justice refused to review FHWA's decision.

  C. Plaintiff has stated a cause of action for a Fourteenth Amendment due process violation.

Plaintiff has satisfactorily alleged that her right to due process as guaranteed by the Fourteenth Amendment was abridged by the MHD. For a claim under 42 U.S.C. § 1983 to be successful, the plaintiff must allege that the conduct complained of was committed by a person[12] acting under the color of state law, and that the conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981). In this case, Plaintiff has clearly pleaded that the MHD and its employees are state actors, and that she suffered injury as a result of the defendants' denial of her right to due process.

Plaintiff has suffered a denial of her due process rights. The First Circuit has recognized a deprivation of property without due process of law when a businessman loses his property as a result of an unlawful government act. See Roy v. City of Augusta,

---

[11] Plaintiff has been waiting over a year for the results of another request pursuant to FOIA. The results of a request for FHWA documents dated March 29, 2004 is still under review by the FHWA's Office of Administration. See letter from Frederick D. Isler, FHWA Office of Civil Rights, attached as Exhibit B. It is possible that when the results of this request arrive, they will yield more evidence of discrimination against Plaintiff by the defendants.
[12] See note 2, supra.

10

712 F.2d 1517 (1st Cir. 1983). The court found that when the Maine Supreme Judicial Court ordered the city council to issue the plaintiff a license to operate his pool hall, and they gave him a useless expired license, the plaintiff lost his property without due process of law. Id. at 1523. "Arguably, this amounted to the taking of his property (the license) without due process, since…the defendants simply flouted the mandate of the state court…." Id. Like the businessman in Roy, Plaintiff has suffered injury as a result of the failure of the MHD to follow federal anti-discrimination laws. Like the town council acting in contravention of the court order, the MHD failed to carry out the reviews and oversight that were mandated by law. Therefore, Plaintiff's due process rights were violated.[13]

A court will also find a violation of due process when the government fails to uphold its own standards of fairness regarding a government contract. Ervin and Associates, Inc. v. Dunlap, 33 F. Supp. 2d 1, 9 (D.D.C. 1997). "[The plaintiff] does not claim a constitutionally protected interest in winning certain contract awards, but a protected interest in participating in a procurement process that meets certain standards of fairness." Id. at 8-9. When a government official interfered with the procurement process of a government contract to which the contractor was entitled, the court found that the government contractor had been deprived of due process of law. Id. As in Ervin, the Plaintiff has a right to have her hauling contracts be subject to applicable laws such

---

[13] The MHD likens Plaintiff's claims to those made by the plaintiffs in PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28 (1st Cir. 1991). However, that case is distinguishable because those plaintiffs never even alleged discrimination in their complaint. Id. at 30. Furthermore, that court found that unlike the facts in the case at bar, where there was virtually no post-deprivation process, the plaintiffs' post-deprivation process was adequate. Id. at 31. Lastly, the plaintiffs only alleged that the officials violated state law, and as such, the failure to provide pre-deprivation process was not a violation of the due process clause. Id. In the case at bar, Plaintiff alleges that the MHD as a recipient of federal funding failed to uphold federal laws in place to prevent discrimination.

that her company's effort to participate in a federally financed project is not subverted by the acts of the government official and agency charged with federal enforcement.

     a) <u>Plaintiff has a property interest in her status as a WBE.</u>

It is beyond contention that a benefit from the government can form the basis of a protected property interest. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972). That protected interest is secured not by the Constitution itself, but by independent sources, such as state law. <u>Id.</u> Because the Commonwealth of Massachusetts certified Plaintiff as a WBE in April 1998, state law secured her status as a WBE.

Plaintiff states a successful claim for a violation of her right to due process because she had a protected property interest in her status as a certified WBE and she was deprived of that status by government action without due process of law. <u>Baja Contractors, Inc. v. The City of Chicago</u>, 830 F.2d 667 (7th Cir. 1987) (Holding that MBE could show that it had a protected property interest when a city had conferred a benefit upon it by initially certifying it as an MBE, and then denied it further certification). As in <u>Baja</u>, Plaintiff has a protected property interest in her status as a WBE because the government conferred a benefit to her when she began work on the various hauling contracts. She was denied that benefit when, by 1999, she could no longer operate her certified WBE hauling company.

The property interest in her status as a WBE was not contingent upon an expectation of future benefit, as the MHD argues. As in <u>Baja</u>, when Plaintiff secured contracts as a WBE and benefited from them, her status as a WBE was no longer a contingency – it was an entitlement that formed a property interest.

      b.   Plaintiff has alleged a causal connection between the MHD's discriminatory acts and her injury such that a deprivation occurred.

There is a direct causal connection between the MHD's actions and Plaintiff's injuries. The U.S.D.O.T. documented a causal connection between the MHD's failure to follow federal law and the injuries Plaintiff suffered in its initial report. Furthermore, Plaintiff has clearly stated in her Complaint that the MHD's failure to conduct reviews of the Title VI programs, as well as its failure to oversee the Commonwealth's prevailing wage laws as required by the PLA and the "Uplift Agreement" presented Plaintiff with a Hobson's choice: either break the prevailing wage laws and expose herself to criminal penalties, or lose her business because she was not being paid prevailing wage amounts and therefore could not afford to run her business.

The defendant MHD shrugs off these claims, stating that it is not responsible for any of these matters at the CA/T Project. However, this flies directly in the face of every legal authority on the topic. As stated earlier, the anti-discrimination statute, 23 U.S.C. § 324, and its implementing regulations at 49 C.F.R. § 21 and 23 C.F.R. § 200, require that the MHD, the MTA, their sub-recipients, agents, and any contractors who receive federal highway money cannot discriminate on the basis of race, color or national origin, or sex. The same implementing regulations at 23 C.F.R. 200.9(a)(4) further require the MHD to oversee compliance with the anti-discrimination provisions on the basis of sex. The MHD subjected itself to these federal regulations when it undertook the management of the CA/T Project. Therefore, for the MHD to claim that it really does not have any responsibility to oversee these matters is completely disingenuous.

Rather, the MHD tries to recast Plaintiff's claims as alleging mere negligence, not an abuse of power by a government agency or official, and argues that these claims fall

short of a constitutional deprivation. However, as MHD remarks, even government officials' reckless or callous indifference, a lower standard than abuse of government power, can result in a claim for deprivation of constitutional rights under the Fourteenth Amendment. "[S]uch reckless or callous indifference falls short of intentional or willful conduct, [but] it may still exemplify the 'arbitrary exercise of the powers of government.'" Germany v. Vance, 868 F.2d 9, 18 (1st Cir. 1989). The court reasoned that an official's reckless or callously indifferent conduct is not marked by a heightened degree of negligence, but rather, displays a lesser form of intent. Id. at n. 10. The court concludes, "[a] recklessly or callously indifferent violation occurs…if the official believes (or reasonably should believe) that his conduct is *very likely* (but not certain) to result in such a violation." Id. This is applicable in the case at bar because officials at the MHD knew, at the very least as a result of the U.S.D.O.T.'s finding of discrimination in its initial report, that their conduct had resulted in discrimination. Furthermore, Plaintiff's requests for information from the FHWA yielded information about the MHD's knowledge of irregularities in truckers' wages and payroll requirements, and that prime contractors were ignoring directives to pay prevailing wages and continued their discriminatory practices in the face of those directives. Therefore, MHD officials cannot claim that they had no knowledge of such violations and that they could not know that their acts and omissions would result in discrimination.

IV.    CONCLUSION

In conclusion, the Eleventh Amendment does not bar Plaintiff's claims against the state defendants because Title VI explicitly abrogates state sovereign immunity and 23 U.S.C. § 324 states that it must be enforced in a manner similar to Title VI. Furthermore,

Plaintiff opposes the MHD's motion to dismiss because Plaintiff is acting as a private attorney general, pursuing these claims of discrimination when there are no other avenues of enforcement. Finally, Plaintiff has sufficiently stated a claim under 42 U.S.C. § 1983 to allege a violation of her procedural due process rights, both because she has a protected property interest in her status as a WBE and because there was a direct causal connection between the MHD's actions and the effects of discrimination that Plaintiff experienced.

WHEREFORE the Plaintiff Duxbury Trucking respectfully requests that this honorable Court:

  a) Deny Defendant MHD's Motion to Dismiss; and

  b) Grant Plaintiff any other relief that it deems proper and just.

Respectfully submitted,

Duxbury Trucking, Inc.
By Its Attorneys:
SHAHEEN & GORDON, P.A.

DATED: April 14, 2005          /s/ Arpiar G. Saunders, Jr._____
Arpiar G. Saunders, Jr.
Bar No. 442860
107 Storrs Street
P.O. Box 2703
Concord, NH 03302-2703
(603) 225-7262
asaunders@shaheengordon.com

*G:\clients\Duxbury Trucking Company, Inc\Opposition to MHD's motion to dismiss.doc*