# EXHIBIT   A

MARTINSEN          7819948987          04/10/05   12:12pm   P.  2/002
Case 1:04-cv-12118-NG    Document 27-2    Filed 04/14/2005    Page 2 of 7
04-11-05   08:12   UA LOCAL 4

ID=15087520856                    P.02

# Workers say state AG is slack on labor cases

## "You lose out even more if you have to    pursue it yourself"

By Gerard F. Russell
TELEGRAM & GAZETTE STAFF

WORCESTER

APRIL 10, 2005

Pipe fitter Russell Brown of Worcester says he thinks the attorney general's office could have done more for him. He says he was cheated out of $13,000 by a former employer.

Clinton Christian of Whitinsville says he is owed $13,000 by the same employer, Suburban Fire Protection Inc. of Northboro.

At least 18 former employees of the defunct company say they were not paid the state's prevailing wage to work on public construction projects. Despite that, they were told by the office of Massachusetts Attorney General Thomas F. Reilly that they wanted to get their money, they would have to hire a lawyer on their own and go to court themselves.

Moreover, the attorney general refused to prosecute criminal charges against the owners of the company.

The case highlights a trend in how the attorney general's office deals with cases in which workers get shortchanged, either in nonpayment of wages, prevailing wages or child labor cases and then get "private right of action" letters from the attorney general's office. The letters tell workers to hire a lawyer. Hundreds of these letters are sent out each year by the attorney general's office. Few cases are ever prosecuted criminally.

No criminal charges were ever filed in this case, according to a spokesman for the attorney general.

Turn to State AG/Next Page



### Attorney General's Office

**Labor Law Enforcement**
(Separate line item appropriated by Legislature)
In millions

| FY 01 | FY 02 | FY 03 | FY 04 | FY 05 |
|-------|-------|-------|-------|-------|
| $3.29 | $3.22 | $3.04 | $3.04 | $3.01 |

**Administrative Budget**
In millions

| FY 01 | FY 02 | FY 03 | FY 04 | FY 05 |
|-------|-------|-------|-------|-------|
| $21.63 | $21.63 | $20.85 | $20.85 | $21.21 |

Source: Massachusetts attorney general's office

T&G  Staff

State AG/From Previous Page

"I just think criminal charges could have been pushed a long time ago," Mr. Brown said about his former employer.

Mr. Brown said he was told by the attorney general's office, "We will go as far as we can and then you have to get a lawyer."

A decision to pursue a former boss in court has its risks in time lost from work, lawyer fees and court costs, among others.

"You lose out even more if you have to pursue it yourself," Mr. Christian said.

Several of the pipe fitters who worked for the Northboro company, including Mr. Brown and Mr. Christian, hired a lawyer. They filed a lawsuit in Central District Court. The case is pending. To complicate matters, the company filed bankruptcy.

Although the attorney general's office issued press releases last summer announcing that the company was prohibited from bidding and working on public works projects, was ordered to pay tens of thousands of dollars in fines and more than $103,000 in back wages, the employees say they never got a nickel. The attorney general's office confirmed no money was paid.

A former inspector in the attorney general's office and a local union leader say the average worker in the state is getting little protection from the attorney general in recent years in protecting their rights. The attorney general's office is failing to use the criminal courts as another tool to help workers, they said.

Leaving to the workers the job of collecting their money can present a hardship for many hourly wage earners. Hiring a lawyer can be expensive. Court fees and delays can often serve as a deterrent for someone who is not familiar with the legal system.

Mr. Reilly's predecessor, Scott Harshbarger, and his predecessors pursued violators in the courts and sought restitution for workers using criminal complaints in district courts.

The practice of sending the private right of action letters began about 1998, according to John Gatti Jr., a former em-

## Inspectors

| | |
|---|---|
| Boston | **10** |
| Western Mass. | **4** |
| Southeastern Mass. | **3** |
| Central Mass. | **3** |
| Total | **20** |

| 2003 | |
|---|---|
| Prevailing wage inspections | **228** |
| Enforcement citations | **165** |

| 2004 | |
|---|---|
| Prevailing wage inspections | **174** |
| Enforcement citations | **227** |

| 2004 | |
|---|---|
| Nonpayment of wage cases in Central Mass. | **47** |

| 2004 | |
|---|---|
| Recovered wages $100 or less | **226** |
| Recovered wages $100 to $250 | **234** |

Source: Office of the Attorney General

             T&G Staf

ployee of the attorney general's office. He was an inspector in the Fair Labor and Business Practices Division and former director for the Department of Labor and Industries. Before 1998, the attorney general's office prosecuted cases in district courts.

"It was an efficient system because everything was done locally in the district courts," he said.

Many cases were settled at that level, he said.

Now, such cases hardly ever end up in the district courts.

Thomas J. Noonan, clerk magistrate in Central District Court in Worcester, says it has been quite a while since he has seen an assistant attorney general in his court to prosecute a prevailing wage, nonpayment of wages or child labor violation case.

"We used to see them quite often," he noted.

However, such cases are not being taken by the attorney general to the district courts.

"I have not seen one in a very long time. To my personal knowledge, I have not been approached by an assistant attorney general to handle any one of those cases," Mr. Noonan said.

He added, "I would stand corrected if somebody can tell me if somebody might have been here and I was not in the shop."

Likewise, Thomas X. Cotter, clerk magistrate of the Westboro District Court, said it has been a long time since he has seen the attorney general's office prosecute a labor case.

"It should be done. It is not being done," he said of criminal prosecutions for alleged violations of labor law. In fact, he said he was told by an employee of the attorney general's office that it is office policy not to seek criminal charges in such cases, Mr. Cotter said.

Although the attorney general's office does issue citations for labor law violations, it can also pursue criminal charges, Mr. Cotter said.

"One does not preclude the other," he said.

Mr. Gatti said the district courts were an effective forum for the cases and can still be effective if they are used.

"Most of the time at 'show cause' hearings, it would be settled, and the really bad actors we would go after criminally. The focus was on restitution, getting money into people's pockets through the courts. If they defaulted, the Probation Department would chase them down," Mr. Gatti said.

The task of handling prevail-

ing wage and nonpayment of wage cases, among other labor cases, fell to the attorney general's office in 1993 after the Secretary of Labor in the Department of Labor and Industries was abolished. Also, the Division of Administrative Law Appeals was instituted to levy civil penalties in the cases. DALA was intended to be an additional enforcement tool in the hands of the government, not the sole remedy.

"It has turned out to be a failure, for the most part," Mr. Gatti said.

Cases can go to DALA after citations are issued by the attorney general's office. Some cases are referred to DALA. Other complainants get the private right of action letters, or "kiss-off letter," as Mr. Gatti calls it.

The decision on how to handle a case sometimes hinges on publicity, Mr. Gatti charges.

"That's not the purpose of any labor department in this country to tell employees, hey, you go to court on your own because you are not a high-impact case," Mr. Gatti said.

However, Nicholas J. Messuri, chief of the Business and Labor Protection Bureau in the attorney general's office, defends the attorney general's record and stresses that limited resources require they be used efficiently.

The division's task is to ensure compliance with Massachusetts wage and hour, child labor, workplace safety, public construction and bidding laws.

Unlike Mr. Gatti, Mr. Messuri does not look back to district courts as a panacea. He argues that a lot of criminal cases in the past ended up being dismissed. That is an "embarrassment," he said.

"So what we're trying to do is bring criminal cases that mean something," he said.

Mr. Messuri acknowledges, however, that the number of criminal cases in recent years brought by the attorney general's office is only a handful each year. Last year, for example, only three criminal cases were prosecuted for such cases, according to a spokesman for the office.

The current system of issuing civil violations builds a case toward "debarment," which Mr. Messuri said, is a powerful tool to keep the bad companies from working on public works projects. While criminal charges are a strong tool, he said, the criminal system moves slowly.

"Suburban is one of those cases where the guy beat us and went out of business," he said.

Mr. Gatti said he warned co-workers and superiors of the trend before he retired. In a Jan. 13, 2003, e-mail to inspectors in the attorney general's office's Fair Labor and Business Practices Division, Mr. Gatti said the division was working with 40 percent fewer inspectors "despite the commitment to increase the level number by 50 percent."

"This lack of follow-through has resulted in the lowest number of inspectors ever," he said.

In another memo to fellow employees in the attorney general's office that month, Mr. Gatti also warned of a similar "lack of commitment of allocated resources" to enforcing child labor laws.

In an e-mail in October 2002 to a former supervisor in the attorney general's office, Mr. Gatti wrote that the new policy was to send a letter to the alleged violator and then a private right of action letter to the victim telling

them they can sue to collect the money owed them, unless the case is a so-called HIGH IMPACT CASE."

"Imagine telling someone who is owed 80 hours' wages at seven dollars an hour ... go to small claims court or hire your own lawyer.... It is difficult to tell complainants that ... Especially when someone is owed money to pay for food, rent or medicine and never sought government help before," he said in the e-mail.

At the time, Mr. Gatti was the oldest inspector and nearing the end of his career. He retired in October 2003 with kudos from the attorney general for his long record of public service. Mr. Gatti is the architect of the Massachusetts Public Employee Whistleblower Law. He spent more than a decade as a legislative advocate before the Massachusetts Legislature for the State Employee Organization of Engineers, Scientists and Technicians.

State Rep. Daniel E. Bosley, D-North Adams, who was chairman of the Commerce and Labor Committee in 1993 when enforcement responsibilities were shifted to the attorney general's office, says workers now should not be left to fend for themselves.

"They should not be told you are on your own," he said.

The genesis, Mr. Bosley said, is a lack of funding for the attorney general's office.

"The same thing is happening in a lot of areas in government over the past decade. We moved a lot of consumer protection and labor programs into the attor-

ney general's office in the early '90s because they were not being taken care of in other agencies. Unfortunately, everything happened in the '90s and we have not kept pace with funding with the things we need to do. That is something we have to rectify," Mr. Bosley said.

In his fiscal 2006 budget proposal, Mr. Reilly is asking for an additional $1.2 million for new positions, including some in the Fair Labor and Business Practice Division.

In a letter last month to Sen. Therese Murray, D-Plymouth, who heads the Senate Committee on Ways and Means, Mr. Reilly asked for more money for the labor division.

"On average, the division receives 5,000 written complaints, over 53,000 calls and annually generates over 1.8 million dollars back to workers. Additional funding would be used to hire two AAGs, three inspectors and one information officer. The total collective bargaining salaries for those employees would be approximately $241,000," he said.

A local union leader has been outspoken in his criticism of the number of inspectors working for the attorney general's office. Michael Coonan, business agent and president of the Worcester, Fitchburg Building and Construction and Trades Council. He represents about 7,000 members in the region.

"The civil penalties is a joke to me. It's not the right way to go. I thought we were better off going to court. Now they try to put liens on people. If they have no money, nothing is done. If

MARTINSEN 7819348987 04/10/05 11:19pm P. 004
Case 1:04-cv-12118-NG  Document 27-2  Filed 04/14/2005  Page 6 of 7
04-11-05 08:14 UA LOCAL 4   ID=15087520856   P.06

# State AG lax on workers' rights, ex-inspector says



*Most of the time at 'show cause' hearings, it would be settled, and the really bad actors we would go after criminally. The focus was on restitution, getting money into people's pockets through the courts.*

**JOHN GATTI JR.**

A FORMER EMPLOYEE OF THE ATTORNEY GENERAL'S OFFICE

they are out of state, they let them get a way with it. If they appeal it, they cut the penalty in half," Mr. Coonan complained.

Mr. Coonan remains adamant that dozens of public works projects in cities and towns around the state, such as new schools, libraries and public safety buildings, are not getting the oversight they deserve because of few or no inspections by the attorney general's office.

Only a handful of inspectors operate out of Central Massachusetts, a fact that rankles Mr. Coonan because he said he and other union leaders were influential in getting $500,000 from the Legislature in 2000-01 to hire more inspectors, but none was hired with the money, he said.

The attorney general's office argues Worcester gets its fair share of personnel and that every complaint is investigated.

"The amount of activity in Boston is through the roof," Mr. Messuri said. "You could make an argument to put all inspectors in Boston."

Mr. Messuri points to the successes his office has had in collecting money in recent years for workers. Mr. Gatti says the numbers are small, given the size of the state.

For Mr. Messuri it is a question of placing resources where they will do the most good. He said he is not in favor of having inspectors just out there riding around the state. But Mr. Coonan said the attorney general's office should be out inspecting every taxpayer-funded construction project to make sure the state's labor laws are being followed.

"Every city and town has jobs. There are no inspections being done. No one's out there watching the henhouse," Mr. Coonan said.

Former and current employees say these are not isolated instances of problems in the

attorney general's office — rather, they point to a disturbing trend.

In 2002, nine corporations that operate 28 Dunkin' Donuts stores in the Springfield area agreed to pay $150,000 in civil penalties to settle charges that they violated state child labor and wage and hours laws. At the time, a press release sent out by the attorney general's office quoted Mr. Reilly as saying, "These children signed up to gain some valuable work experience and make a little money."

The children were 14 to 17 years old. More than 2,500 violations were found.

"Instead, the experience they gained was being forced to work long hours, paying fines and having their tips stolen. Those who choose to exploit children in the workplace should take note, my office will continue to fight for the rights of the workers," Mr. Reilly said in the press release.

The two-year investigation by the attorney general's office found that the owner had seized the employees' tips and levied fines against employees for minor infractions, not wearing uniforms correctly or not rotating stock. Mr. Gatti says none of the 150 children involved in the case at the time got any money as a result of the attorney general's case.

Mr. Gatti, who was employed by the attorney general's office at the time, said that staffers who handled the case were upset there was no criminal prosecution and that the children did not get paid their lost wages.

"It makes the office look like a toothless tiger," Mr. Gatti said.