# EXHIBIT   B

# INVESTIGATIVE REPORT
## 8-27

**Complaint #**     :  DOT 2001-0003
ERC 02-2001

**Complainant**   :  Duxbury Trucking, Inc.
Ms. Susan Martinsen, President
83 Blodgett Avenue
Duxbury, Massachusetts 02332
Telephone # (781) 934-0668

**Respondent**     :  Massachusetts Highway Department
Mr. Mathew J. Amorello, Commissioner
Ten Park Plaza
Boston, Massachusetts 02116

**Applicable Law** :  Title VI of the Civil Rights Act of 1964

**Complaint Basis** : Allegation that the Massachusetts Highway Department's Massachusetts
Turnpike Authority, Central Artery/ Tunnel Project (CA/T Project) and
CA/T Project Prime Contractor had policies, practices and operating
procedures in 1996 that discriminated against and continues to discriminate
against Small (DBE/WBE) Trucking Contractors.

**Issue(s)**            :

1. Did the Massachusetts Highway Department (MHD) have a 1996 Federal Aid Recipient
   Responsibility to assure non-discrimination in the administration of their Projects?

2. Did the Massachusetts Highway Department take those actions necessary to ensure that
   CA/T Project Prime Contractors were complying in 1996 with their Equal Employment
   Opportunity Clause and CA/T Contract Provisions, as both relate to Trucking and Labor
   Requirements?

3. Did Duxbury Trucking ("Certified" WBE Contractor) and other CA/T Project Trucking
   WBE/DBE Contractors experience CA/T Prime Contractor discriminatory policies,
   practices and operating procedures?

4. Did Duxbury Trucking and other WBE/DBE Small Trucking Companies experience
   Massachusetts Highway Department discriminatory policies, practices and operating
   procedures?

5. Did Duxbury Trucking notify appropriate officials in a timely and continuing manner about alleged violations of the CA/T Labor Agreements, Teamsters Union Agreement and Massachusetts Prevailing Rate Law?

6. Were there losses experienced as a result of the alleged violations of CA/T Contract by CA/T Prime Contractors and the alleged lack of contract enforcement by the Massachusetts Highway Department?

7. What were the corrective actions taken Massachusetts Highway Department in 1997 to resolve the "CA/T Trucking Problems" and did those actions effectively address each Issue?

## II. TABLE OF CONTENTS:

| SECTION | PAGE | TAB |
|---|---|---|
| **EXECUTIVE SUMMARY** | | |
| **A. AMINISTRATIVE SUMMARY** | | **A** |
| I.   FHWA COVER SHEET | 1 - 2 | |
| II.  TABLE OF CONTENTS | 3 - 13 | |
| III. REPORT SUMMARY | 14 - 16 | |
| IV.  INTRODUCTION | 17 - 19 | |
| **B. INVESTIGATIVE PLAN** | | **B** |
| V.  COMPLAINT ALLEGATIONS AND SPECIFIC AREAS OF INQUIRY | 20 | |
| 1.) ASSURANCES OF NON-DISCRIMINATION | 21 - 22 | |
| 2.) ENSURANCES OF CONTRACTOR COMPLIANCE | 23 - 28 | |
| 3.) PRIME CONTRACTOR POLICIES AND PROCUDERS | 29 - 34 | |
| 4.) MHD POLICIES AND PROCUDERS | 35 - 38 | |
| 5.) TIMENESS OF DUXBURY NOTICES | 39 - 44 | |
| 6.) DAMAGES CONSIDERATIONS | 45 - 49 | |
| 7.) 1997 "UP LIFT FUND" AND RELATED POLICIES AND PROCEDURES | 50 - 52 | |
| 8.) QUESTIONS REGARDING POST-1997 CONTINUING TRUCKING/PREVAILING RATE ISSUES | 53 - 54 | |
| 9.) SUGGESTIONS AND RECOMMENDATIONS | 55 | |

# II. TABLE OF CONTENTS:

| SECTION | PAGE | TAB |
|---|---|---|
| **C. FINDINGS** | | **C** |
| VI.  INVESTIGATIVE FINDINGS AND RECOMMENDATIONS | 56 | |
| A.  OVERVIEW | | |
| B.  ALLEGATION AND FINDING | | |
| 1.) ASSURANCES OF NON-DISCRIMINATION | 57 | |
| 2.) ENSURANCES OF CONTRACTOR COMPLIANCE | 58 | |
| 3.) CLASS DISCRIMINATION (PRIME CONTRACTORS) | 59 | |
| 4.) CLASS DISCRIMINATION (MHD) | 60 | |
| 5.) TIMELY NOTICE | 61 | |
| 6.) DAMAGES | 62 | |
| a.)  Wage Class | 63 – 64 | |
| b.)  Health and Welfare Class | 65 – 66 | |
| c.)  Pension Class | 67 – 68 | |
| d.)  Small Trucking Company Class | 69 - 70 | |
| e.)  Duxbury Trucking | 71 | |
| f.)  Duxbury Trucking Employee | 72 | |

# II. TABLE OF CONTENTS:

| SECTION | PAGE | TAB |
|---|---|---|
| **D. CHARTS** | | **D** |
| VII. CHARTS: | 73 - 74 | |
| A. ALL TRUCKING CLASSIFICATIONS AND WBE/DBE REPRESENTATION | 75 | |
| B. TRUCKING CONTRACTS AND WBE/DBE REPRESENTATION | 76 | |
| C. ALL CONTRACTED TRUCKING HOURS AND "ACKNOWLEDGED" UNPAID BENEFITES | 77 - 78 | |
| D. LISTING OF ALL HAZARDOUS MATERIALS HAULING CONTRACTS | 79 | |
| E. LISTING OF ALL COMBINATION HAZARDOUS/A,B,C MATERIAL HAULING CONTRACTS | 80 | |
| F. ALL A, B, C MATERIAL HAULING CONTRACTS | 81 - 82 | |
| G. ALL TRUCKING CONTRACTS BY CONTRACTOR STATUS AND TRUCK DRIVER BENEFIT COVERAGE | 83 - 84 | |
| H. HAULING CLASSIFICATIONS BY CONTRACTOR STATUS AND TRUCK DRIVER GROUPINGS | 85 | |
| I. ALL CONTRACTED TRUCKING HOURS AND GROUPINGS OF UNPAID TRUCK DRIVER BENEFITS | 86 | |
| J. LISTING BY CONTRACTOR STATUS OF ALL KNOWN TRUCK DRIVER BENEFIT GROUPS | 87 | |
| K. TRUCK DRIVER ELIGIBLITY RANKING BY CONTRACTOR STATUS | 88 | |
| L. TRUCK DRIVER WITHIN GROUP REPRESENTATION BY CONTRACTOR STATUS | 89 | |
| M. MISSING CONTRACTOR INFORMATION | 90 – 92 | |

# II. TABLE OF CONTENTS:

| SECTION | PAGE | TAB |
|---|---|---|
| N. "OWNER/OPERATORS" AND BENEFITS | 93 | |
| O. "OWNER/OPERATOR" REPRESENTATION | 94 | |
| P. ALL TRUCKING CONTRACTS AND "OWNER/OPERATORS" | 95 - 96 | |
| Q. "OWNER/OPERATORS" AND BENEFIT COVERAGE BY CONTRACT | 97 - 98 | |
| R. "ACKNOWLEDGED" TRUCK DRIVERS WITH BENEFITS BY CONTRACTOR STATUS | 99 | |
| S. "ACKNOWLEDGED" TRUCK DRIVERS WITHOUT BENEFITS BY CONTRACTOR STATUS | 100 | |
| T. A, B, C HAULING CONTRACTOR ESTIMATED DAMAGES BY CONTRACT | 101 - 105 | |
| U. A, B, C PRIME CONTRACTOR GROUPED ESTIMATED DAMAGES | 106 - 107 | |
| V. CONTRACT PRICING ANALYSIS | 108 | |
| W. LISTING OF 1997 CA/T CONTRACTORS FOUND IN VIOLATION OF MASSACHUSETTS PREVAILING RATE LAW AFTER STRIKE | 109 | |
| X. SUMMARY OF ESTIMATED SETTLEMENT COSTS | 110 | |
| Y. ESTIMATED SETTLEMENT COSTS (DUXBURY TRUCKING) | 111 | |
| Z. ESTIMATED SETTLEMENT COSTS (DUXBURY EMPLOYEE) | 112 | |
| AA. ESTIMATED SETTLEMENT COST (LOST WAGES CLASS) | 113 | |
| BB. ESTIMATED SETTLEMENT COST(LOST HEALTH/WELFARE CLASS) (LOST HEALTH/WELFARE CLASS) | 114 | |
| CC. ESTIMATED SETTLEMENT COST (LOST PENSION CLASS) | 115 | |
| DD. ESTIMATED SETTLEMENT COST (LOST OF EQUAL ACCESS CLASS) | 116 | |
| EE. BELOW MARKET PRICING | 117 | |

# II. TABLE OF CONTENTS:

| SECTION | PAGE | TAB |
|---------|------|-----|

## E. ATTACHMENTS

**A. FHWA ADMINISTRATIVE DOCUMENTS AND REQUESTS**     118 – 125   **E**

  1.)  Complaint from Duxbury Trucking, Inc. dated September 27, 2000

  2.)  Headquarter Acknowledgement of Complaint dated November 15, 2000

  3.)  Complainant Consent/Release Form dated November 17, 2000

  4.)  Headquarter referral of Complaint to ERC dated February 21, 2001

  5.)  Notice of Complaint from ERC to MHD dated March 1, 2001

  6.)  Notice of Assignment from ERC to Duxbury Trucking - March 2, 2001

  7.)  ERC  Request for Information from FHWA Massachusetts' Division
      dated April 4, 2001

  8.)  Massachusetts Division's Response to ERC Data Request (4-10-01)

  9.)  ERC Request for Information for MHD CA/T Project (April 10, 2001)

  10.)  FHWA Senior Attorney to CA/T Project Chief Counsel
      (July 28, 2000)

  11.)  FHWA –CA/T Project DBE Progress Report (April 26, 1999)


**B. MHD DOCUMENTS AND REPORTS**                                                  **F**

  1.)  Central Artery/Tunnel Project Memorandum of Agreement on
      Trucking Issues dated August 1, 1997.

  2.)  Memorandum of Understanding as to Teamster Benefits (MOU)
      in accordance with The Central Artery/Tunnel (CA/T) Project
      Memorandum of Agreement on Trucking Issues (MOA)

# II. TABLE OF CONTENTS:

| SECTION | PAGE TAB |

**E. ATTACHMENTS**

    **B. MHD DOCUMENTS AND REPORTS (continues)**

        3.) Construction Management Directive No. 29, Revision 3 Certified
        Payroll Reports for Transporters of Gravel or Fill dated
        August 12, 1997

        4.) Listing of all known Truck Drivers who worked on CA/T and
        Benefit Payments

            a.) Back Payment Forms – H/W Benefits

            b.) Late Payments of H/W Benefits – November 19 1997

        5.) Tracking of below Agreement Trucking Hourly Rate July 1, 1997
        shows full knowledge of problem.

            a.) Study on Hourly Market Rate (5-16-97)

            b.) Modern Continental – MHD Rate Review (7-17-97)

            c.) Listing of Known Benefit Admin. Problems (8-20-97)

            d.) Cashman – Rating Statement (6-3-97)

        6.) MHD "RESOLUTION SUMMARY" dated June 10, 1997 which requested
        an amnesty policy from the State Attorney General's Office regarding the
        failure to cover Prevailing Rate Provisions.

        7.) CA/T Contract Information

            a.) Listing of Construction Contracts

            b.) Consultant/Contractor List By Contract

            c.) DBE Truckers in Central Artery Project

            d.) Truckers Who Submit Report as Subcontractor
               in Central Artery Project

            e.) Trucking MOA Status of Change Order

# II. TABLE OF CONTENTS:

|  | PAGE | TAB |
|---|---|---|
| **SECTION** | | |

**E. ATTACHMENTS**

    **B. MHD DOCUMENTS AND REPORTS - (continued)**

        e.) Consultant/Contractor List by Contract

        g.) Project Labor Agreement

    8.) MHD Prevailing Rate Audits

        a.) Interviews (5-15-97)

        b.) Audits and Findings (7-15-97)

    9.) MHD Status of Agreement Statement – August 21, 1997

    10.) MHD Comments on House Post Report of October 1997

    11.) MHD Response to House Post Report – October 20, 1997
        (See: Attachment C.2. House Post Report)

    12.) MHD Letter to Mr. Robert D. City – December 19, 1997

    13.) Attorney General's Letter (February 7, 1997)

    14.) Attorney General's Advisory (April 8, 1994)

    15.) MHD Notice to Prime – Intent to Retain Funds (May 2, 1997)

    16.) MHD Status Summary Update (March 27, 1998)

    17.) MHD Letter in Response to Complaint (October 19, 2000)

    18.) MHD Notice o Certified Payrolls for Truck Drivers (January 27, 1996)

    19.) MHD Internal Memo on Prevailing Wage for Truck Drivers (10-31-96)

    20.) MHD Internal Memo on Prevailing Wage for Truck Drivers (11-26-96)

    21.) MHD Internal Memo on "Owner/Operator" Reporting (10-17-93)

## II. TABLE OF CONTENTS:

| SECTION | PAGE | TAB |
|---|---|---|

**E. ATTACHMENTS**

    **C. MASSACHUSETTS STATE AUDIT REPORTS** — G

        1.) State Reports on Continuing Trucking Issue

        2.) Review of Prevailing Wage Issues – House Post Audit
           and Oversight Bureau October 1997
           (See: Attachment B. 13 MHD Response)

    **D. PRIME CONTRACTOR DOCUMENTS** — H

        1.) Modern Continental Payment Breakdown for Trucking (Tons)

        2.) Mass Gravel, Inc. Letter advising of contributions made for
           direct employees (December 1, 1997)

        3.) Perini – Hazardous Materials Hauling not a "Cover Group"
           (July 20, 1998)

        4.) Actual Tri-Axle Market Hourly Rates Paid by Kiewit (Prime Contractor)

        5.) J.F. White (Prime Contractor) Request for Additional funds to cover
           Prime Administration of New Process (July 2, 1997)

        6.) M. Dematteo Construction Notice of Refusal to Accept Agreement
           ( July 2, 1997)

        7.) M. Dematteo Construction –  Notice of Non-acceptance of  Trucking
           Rate Revision - Letter July 15, 1997

        8.) Modern Continental – Letter August 26, 1997

        9.) Modern Continental – 1996 Pricing Data Report – November 4, 1996

        10.) Modern Continental – Unit Pricing Document – March 20, 1996

        11.) M. Dematteo Construction – Trucking Invoice Requirement – June 20, 1997

        12.) Jay Cashman Inc. – Report to the President (November 1999)

# II. TABLE OF CONTENTS:

| SECTION | PAGE | TAB |
|---|---|---|

**E. ATTACHMENTS**

**G. UNITED STATES DISTRICT COURT**                                    K

    1.) U.S. District Court Ruling – (March 12, 1997)

    2.) Construction Industries of Massachusetts & Others vs
        Commissioner of Labor and Industries Hearing Decision
        November 22, 1989


**H. NEWSPAPER ARTICALS**                                    L

    1.) Boston Globe Article "AG subpoenas Big Dig
        Truckers dated June 28, 1997

    2.) Boston Herald Article "Court's truck ruling could
        save millions for Big Dig" November 6, 1997

    3.) Boston Globe Article "4 firms to pay $120,000 in
        back wages" October 31, 1997

    4.) Boston Globe Article "AG said to bypass truckers'
        report of wage violations" April 2, 2001

    5.) Boston Globe Article "Truck drivers working Big Dig
        being shortchanged, Panel says" October 30, 1997


**I. DUXBURY TRUCKING DOCUMENTS**                                    M

    **1.)** Modern Continental Construction and Duxbury Trucking
        Acknowledgment July 11, 1997.

    **2.)** Modern Continental's Repayment Worksheet from June 1997
        to June 1998.

    **3.)** Modern Continental's Promissory Note – Outstanding Balance
        June 19, 2000.

    **4.)** Pay Sheets for 1996

# II. TABLE OF CONTENTS:

| SECTION | PAGE | TAB |
| --- | --- | --- |

### E.  ATTACHMENTS

### I. DUXBURY TRUCKING DOCUMENTS (continued)

**5.)**  Pay Sheets for 1997

**6.)**  Pay Sheets for 1998

**7.)**  Pay Sheets for 1999

**8.)**  1997 Statement of Wage Compliance

**9.)**  Letter of Complaint to Mass Turnpike -- May 3, 2000

# II. TABLE OF CONTENTS:

| SECTION | PAGE TAB |
| --- | --- |

## E. ATTACHMENTS

**E.  UNION AND SPECIAL GROUP DOCUMENTS**     **I**

  1.)  Massachusetts Heavy Contraction Agreement (1993-1996)

  2.)  Letter to J F White Construction – CA/T Prime Contractor
    (March 2, 1992)

  3.)  Letter to Bechtel/Parson Brinckerhoff – Grievance - (April 2, 1992)

  4.)  Letter to Bechtel/Parson Brinckerhoff – CA/T Contracts
    (February 11, 1993)

  5.)  Letter from Union's Counselor – December 31, 1997

  6.)  Construction Industries of Massachusetts (CIM)
    Meeting of September 2, 1997

  7.)  CIM Labor Relations Division – Letter (September 4, 1997)

  8.)  Union Tri-Axle Rates for 1996, 97 and 98

  9.) Notice of Grievance – (September 15, 1998)

  10.) Notice of Pension Eligibility  (September 29, 1997)

**F. BECHTEL/PARSONS BRINCKERHOFF**     **J**
** (CA/T PROJECT CONSULTANTS)**

  1.)  Internal Office Memorandum – History of Grievances (4-6-92)

  2.)  Letter to Union – Response to Union (2-11-93)

  3.)  Internal Office Memorandum – Trucker Job Action
    (July 12, 1996)

  4.)  Internal Office Memorandum – Prevailing Wages
    (December 12, 1996)

## III.   EXECUTIVE SUMMARY

**Duxbury Trucking, Inc.** formed their business and became a "Certified WBE Contractor" on the Massachusetts Highway Department (MHD), Massachusetts Turnpike Authority's Central Artery/Tunnel Project (CA/T Project) in the spring of 1996.   They were immediately successful in obtained four (4) CA/T Project Service Agreements to Haul Sand and Gravel but failed to complete any of these Federal Aid Sub-Contractor Service Agreements.   Duxbury Trucking stated that they "*Parked Their Trucks*" in 1996 after repeated attempts failed to get CA/T Prime Contractors to honor specific the Provisions of their Prime Contract.   They alleged that CA/T Prime Contractors refused to comply with those parts of their Prime Contract related particularly to Labor Provisions involving to Small Trucking Company Employees (Truck Drivers).   They alleged that the Prime Contractors disregarded Massachusetts General Law regarding  "covered" Small Trucking Company Employees (Truck Drivers).   Duxbury Trucking also alleged that the MHD and the Massachusetts Turnpike Authority's CA/T Project became a major part of the problem based on their election not to execute required policies, practices and operating procedures to insure Contractor Compliance with their CA/T Contract Provisions; CA/T Labor Agreement; Teamsters Union Agreement; and Massachusetts Prevailing Rate Law.

In a Formal United States Department of Transportation Complaint dated September 27, 2000 and in follow-up conversations, Duxbury Trucking alleged that MHD election not to insure CA/T Project Contractor Compliance was a key component in permitting CA/T Prime Contractors to implement and then institutionalize systemic discrimination in a focused manner against Small Trucking Company Sub-Contractors.   Duxbury Trucking further alleged that this discrimination was intentionally focused on a concentration of Certified DBE and WBE Contractors that included Duxbury Trucking, Inc.

These alleged adverse policies, practices and operating procedures forced CA/T Project Small Trucking Companies to discriminate against their own Employees by not paying and/or requiring false "Certifications" that their Truck Drivers Employees received their Prevailing Hourly Pay Rate; Health Insurance Hourly Account Payments; and Pension Hourly Account Payments. There is also reason to believe that other Small Trucking Companies will be joining the Complaint with additional allegations that MHD continues to systemically discrimination against Small Trucking Companies and their Employees (Truck Drivers).

The inquiry found that MHD did take action in 1997 to address most of the above allegations. Further that those Corrective Actions were prompted by and therefore responded directly to issues raised during a CA/T Project Truck Driver's Demonstration that took place on May 28-29, 1997. This inquiry determined that the MHD 1997 Corrective Action Plan failed to fully consider retroactively each Truck Driver's **Lost Benefits (Health and Pension) and Actual lost Wages**. Further that a limited review of current Project Certified Payrolls  (Route 3 Project) determined that the State continues to refuse to effectively tackle the "Trucking Problem".   That limited inquiry determined that current Contractors continue to violation Prevailing Hourly Rate Law and in some cases specifically advised of their elect not to pay required Hourly Benefits.   In each clearly reported violations, MHD elected not to take corrective action and simply  accepted and filed each Certified Payroll Report.

14

The FHWA Eastern Resource Center conducted this inquiry and recommended that MHD takes those actions necessary to bring their Program into immediate Compliance with their Federal Highway Administration Assurances and Title VI of the 1964 Civil Rights Act.

The inquiry also took into consideration each of MHD past responses as well as what was determined after MHD completed their Contractor Compliance Reviews and Complaint Investigations. To insure that we understood each of the past examination, action was taken to include interviews and the review of key documents. That primary evidence was obtained in a timely manner with the full cooperation of the Massachusetts FHWA Division Office, the Massachusetts Highway Department, and the Massachusetts Turnpike Authority's Central Artery/Tunnel Project. Each of these Offices along the CA/T Project's Attorney and the Federal Highway Administration's Regional Counsel were very much aware of the allegations of Duxbury Trucking. Further that after due consideration, each of these Offices took the position that the Duxbury Complaint was either without basis; that legal questions such as "Owner/Operators" clouded the issues; or that corrective actions were put in place in 1997 that resolve all issue(s).

This inquiry after taking into consideration all of the above assessment, made following determinations:

1. The Massachusetts Highway Department failed to comply with their FHWA Contract Assurances, Disadvantage Business Enterprise Program, Participation by Disadvantaged Business Enterprises in Department of Transportation Programs and Title VI of the 1964 Civil Rights Act by not taking those actions necessary from 1991 to 1997 to back up their FHWA Contract Assurance with the investments required to guarantee CA/T Contractor Compliance.

2. The Massachusetts Highway Department failed to comply with their Federal Funds Recipient Responsibility from 1991 to 1997 by not taking those actions necessary to make every reasonable "good faith effort" to eliminate past and present discrimination in their Federal Assisted Programs, and to ensure future non-discriminatory practices by their failure to enforce their CA/T Contract; CA/T Project Labor Agreement; Massachusetts Heavy Construction Agreement; Massachusetts Department of Labor Requirements; and Massachusetts General (Prevailing Rates) Law.

3. CA/T Prime Contractors were found to have engaged "traditional" policies, practices and operating procedures that exploited the Trucking Industry in ways that violated their CA/T Non-discrimination Contract Provisions and CA/T Labor Agreement. These discriminatory policies, practices and operating procedures were found to be specifically focused against A, B, C Material Hauling Contractors and their Workers.

4. The CA/T Project was found to have systemically discriminated against WBE/MBE/DME Contractors who had entered into "good-faith" contractual partnership with CA/T Prime Contractors.

5. The Massachusetts Highway Department was found to have taken corrective action in 1997 to remedy the "Trucking Problem" but that those steps did not resolve the following issues:

   a.) Individual Truck Driver Employee Losses -

      1.) The difference between the Hourly Minimum Rate of Pay and their Actual Hourly Rate of Pay from 1991 to 1997.

      2.) The loss of Pension Account Hourly Payments from 1991 and 1997.

      3.) The loss of Health and Welfare Hourly Payments from 1991 to 1997.

      4.) The loss of Duxbury Truck Driver Wages and Benefits from 1996-2001.

   b.) The failure to address the damage done to Small Trucking Companies who had the interests, desire, resources and demonstrated circumstance to perform on the CA/T Project but because of "unchecked requirement to violated to contract agreements and the law", elected not to take advantage of this Federally Funded Opportunity.

   c.) The Massachusetts Highway Department continues to discriminate against the "covered and protected rights" of Small Business Truck Drivers by not taking those reasonable and required actions necessary to enforce contracted contractor commitments to pay required Minimum Hourly Wage Rates; Hourly Payment to Health/Welfare Accounts; and Hourly Payments to Pension Accounts.

6.) The Massachusetts Highway Department continues in non-compliance with their Federal Funds Recipient Responsibilities because of their failure to ensuring non-discrimination against A, B, C Material Hauling Companies and their employees. Further that Prime Contractors are not complying with their "responsibilities" as stated in their MHD Contract; CA/T Project Labor Agreements; Massachusetts Department of Labor Requirements; and Massachusetts General Law on "Prevailing Rates" as these provisions relate to A, B, C Material Hauling Companies and their employee.

16

# IV. INTRODUCTION

A. CA/T Project General Background

The Boston Central Artery/Tunnel (CAT) Project is a $ 10 (+) Billion interstate highway
Project which involves the connections and improvements of the existing 1-93 (Central
Artery).  The Project will also complete the eastern leg of 1-90 (Ted Williams Tunnel).
Currently the Central Artery is an elevated freeway and winds through the center of
downtown Boston.  The CA/T Project will bring the current elevated freeway underground
and upgrade both highways.  The underground highway will have eight lanes and will
eliminate the current high congestion and above average accident rates in the downtown
area.  A by product of this process will be the enhanced access to Logan Airport and East
Boston.

MHD Turnpike Authority administers the CA/T Project.  The Turnpike Authority
has further entered into an agreement with a joint venture management consultant
(Bechtel/Parsons-Brinkerhoff).  Bechtel/Parsons-Brinkerhoff (B/P B) has the responsible
for overall project management that includes:

        a. Environmental Analysis and Documentation
        b. Permitting
        c. Right-of-Way Acquisition
        d. Preliminary Design Development
        e. Construction Agreements

The Project will shortly Award their last and largest Contract.  The entire Project should be
Completed around 2005.

B.  Complaint Background

In 1973 an amendment was added to Massachusetts General Law 149 Section 27 that
inserted language making Massachusetts Prevailing Wage Law applicable to "transportation
of gravel and fill.....or removal of surplus gravel and fill" from public works sites.  Since
then there have been further definitions of "gravel and fill", Work Site Definition, Benefit
Coverage Determinations specifically for Trucking Company "Owner/Operators" and again
affirmation that "covered" Truck Drivers have Rights under Massachusetts' Prevailing
Law.  Each of these challenges and/or requests for a clarification defined the types of
Work and Truck Driver cover and removed any questions as to which type of work was to
be protected by Prevailing Rate Law .  Then again Hearings in 1989 further clarified and
again affirmed coverage. (See: Attachment G.2.)

Then in 1989 with the start of the Pre-Award Process, the Massachusetts Turnpike
Authority's Central Artery/Tunnel Project Contract Provisions included "gravel and fill"
Truck Drivers in their Project Labor Agreement ( See: Attachment B.7.e.)  If there was any
question regarding inclusion, the Prime Contractors could have resolved those questions

17

during the Pre-Award Conference; reviewing their signed CA/T Project Contract Provisions; reviewing their agreed to CA/T Labor Agreement; reviewing the accepted Massachusetts Heavy Contraction Agreement with the International Brotherhood Of Teamsters, AFL-CIO (See: Attachment E.1.); reviewing the committed to Massachusetts General Law 149 "Massachusetts Prevailing Wage Law"; discussing it with the Massachusetts Department of Labor; discussing it with the CA/T Contract Engineer; or discussing it with the Project's Labor Relations Officer.

The review of internal documents confirms that MHD was well aware the issues that they might be called upon to enforce. ( See: Attachments B.14., B.18., B.19., B.20. and B. 21.)

Then in 1996, Duxbury Trucking, Inc. and shortly there after started to work hauling A, B, C Materials on the CA/T Project. They allegedly experienced Prime Contractor and Massachusetts Highway Department policies, practices and operating procedures that made it impossible to work this Federal Aid Project and comply with Massachusetts General Law 149 that required:

1. The Payment of the established Hourly Rate to each Truck Drivers.

2. The Payment of the established Hourly Health and Welfare to each Truck Driver's Union Account.

3. The Payment of the established Hourly Pension to each Truck Driver's Union Account.

4. Providing of required "Certified Payroll" information for each of their Truck Drivers.

After many attempts failed with their Prime Contractors, Massachusetts Highway Department and several Federal Agencies, Duxbury Trucking moved to and was successful in organizing individual CA/T Truck Drivers (See: Attachment H.1.). That organization lead to a Demonstrated at CA/T Project Work Sites on May 28 and 29,1997 (See: Attachment H.4.).

The Massachusetts Highway Department then took immediate action to resolve the "hot issues" and thereby avert further Truck Driver Demonstrations (See: Attachment B.1., B.2., B.3., B.4, B.5, B.6., B.8.a., B.8.b., and B.15.)  It was alleged that the corrective actions resolved most of the issues raised but that discrimination against Duxbury Trucking and other Small Trucking Companies.

C. Review Objectives

The purpose of this inquiry was to investigate complaint allegations that the Massachusetts Turnpike Authority's Central Artery/Tunnel Project (CA/T Project), CA/T Project Prime Contractors and the Massachusetts Highway Department (MHD) had and continues to have policies, procedures and operating practices that systemically discriminated against Duxbury Trucking, Incorporated.  The inquiry also consider the further alleges that the discrimination

18

was so widely spread that all CA/T Small Trucking Companies, which included a concentration of Disadvantage Business Enterprise and Women Business Enterprise Small Business, suffered from these discriminatory practices.


D. Review Approach

Information for this inquiry was obtained from reviewing reports, records and primary documents provided by Duxbury Trucking Incorporated; FHWA Massachusetts Division; Massachusetts Highway Department; and the Massachusetts Turnpike Authority's Central Artery/Tunnel Project. In addition to the review of these reports, records and primary documents, interviews were also at the Central Artery and Tunnel Project Office, Massachusetts Highway Department, Massachusetts FHWA Division Office, Delaware FHWA Division Office, New York FHWA (Regional Counselor) and FHWA Headquarters.


E. Scope

The scope of the review consisted of an analysis of the basis of the complaint and each allegation; historical responses to each allegation; identification of specific corrective actions; determination of the timing, adequacy and effectiveness of each corrective action; identification of continuing issues; proposal resolutions; and attempt to resolve all issues. Finally the return of the completed inquiry with findings back to the FHWA Director of Civil Rights.

## V.  COMPLAINT ALLEGATIONS AND SPECIFIC INQUIRIES:

The purpose of this inquiry was to investigate complaint allegations that the Massachusetts Turnpike Authority's Central Artery/Tunnel Project (CA/T Project), CA/T Project Contractors and the Massachusetts Highway Department (MHD) had and continues of policies, procedures and operating practices that discriminatory against either Duxbury Trucking, Inc.  The inquiry also consider the further alleges that the discrimination was so widely spread that all CA/T Small Trucking Companies, which included a concentration of Disadvantage Business Enterprise and Women Business Enterprise Small Business, suffered from these discriminatory practices. (See: Attachment A. 1., 2., 3., 4., 5., 6., 7., 8., 9., 10. and 11.)

Information for this inquiry was obtained from reviewing reports, records and primary documents provided by Duxbury Trucking Incorporated; FHWA Massachusetts Division; Massachusetts Highway Department; and the Massachusetts Turnpike Authority's Central Artery/Tunnel Project.   The Attachments Section of this Report lists these major documents by the issuing organizations.   In addition to the reviewing of these reports, records and primary documents, interviews were also at the Central Artery and Tunnel Project Office, Massachusetts Highway Department, Massachusetts FHWA Division Office, Delaware FHWA Division Office and FHWA Headquarters.  The Investigator had total cooperation from all parties during the cause of this inquiry that included Interview of the following individuals:

| NAME OF INTERVIEWED | REPRESENTING ORGANIZATION |
| --- | --- |
| Charles Klemstine | FHWA - National Office |
| Stanley Gee | FHWA - Massachusetts Division |
| John Formosa | FHWA – Massachusetts Division |
| Ann Kirby | FHWA -  Massachusetts Division |
| Bradley Keazer | FHWA – Massachusetts Division |
| Alexander Almeida | FHWA – Massachusetts Division |
| Michael Graf | FHWA – Delaware Division |
| Ken Dymond | FHWA - New York Eastern Resource Center |
| Patricia O'Brien | Massachusetts Highway Department |
| Marie Hayman | Massachusetts Highway Department |
| John Goreman | Massachusetts Highway Department |
| Lorenzo Parro | Massachusetts Highway Department |
| Joe Alegro | Massachusetts Highway Department |
| Ken Paradis | Massachusetts Highway Department |
| Miguel Fernandes | Massachusetts Highway Department |
| Daniel Casaletto | Massachusetts Highway Department |
| Michael Leniham | Massachusetts Highway Department |
| Susan Martinsen | Duxbury Trucking, Inc. |
| Roy Martinsen | Duxbury Trucking, Inc. |

Because of the complexity of the allegations, actions were taken to further define each allegation to assure an in-depth analysis of each aspect of the Complaint and insure that our findings would be responsive to prime and sub-elements of each allegation. Listed below are the Specific Issues:

Responsible Contractors; Union Local 379 Officials; CA/T Project Officials; Massachusetts Highway Department; and the Massachusetts Attorney General Office. Each attempt failed and the issues continued to slowly escalated over the next year. Then on May 28-29, 1997 there was an A, B, C Material Hauling Truck Driver Strike that stopped work at specific CA/T Project Worksites. The Strike resolution process caused the Massachusetts Highway Department to address the issues originally presented by Duxbury Trucking. Several Agreements were developed and implemented between the Union, CA/T Contractors and the MHD which appeared to fix what MHD had classified as the "Trucking Problem" (See: Attachments B. 1.; B. 2; B. 3.; B.5. and B.7.) Duxbury was able then to return to CA/T Project and with the help of MHD, started on again on July 14, 1997 working as a Direct Subcontractor to Modern Continental, a Prime CA/T Contractor. (See: Items 2.I.9. above)

**C.)** How many CA/T Projects Contracts did Duxbury Trucking work on in 1996?

Duxbury worked a total of four (4) CA/T Contracts in 1996. In 1996, the Market Hourly Rate was $ 55.00 Per Hour for Tri-Axle A, B, and C Material Short Hauling Trucking Companies. The record shows that Duxbury satisfied those conditions but their Agreed Hourly Rate was either $ 44.00 or $48.00 Per Hour. (See: Attachments I.6. and I.7.) Duxbury like other Small A, B, C Material Hauling Companies were receiving actual Hourly Rates far below the "Market Hourly Rate". (See: Attachment B.6.)

**D.)** How did Duxbury Trucking determine that there were alleged violations related to Certified Payrolls, the CA/T Labor Agreement, Teamster Union Agreement and the Massachusetts Prevailing Rate Law?

1.) Certified Payrolls:

Duxbury determined that there were problems based on the following advisements:

1.) Certified Payroll Information is not Required
2.) Only Report on the Market Hourly Trucking Rate
3.) Advisement that the Contract is not a Prevailing Rate Assignment
4.) The Union Agreement Requirements not honored
5.) Truck Driver must be in Good Standing with the Union
6.) Union Benefits will not be paid
7.) Do not attempt to pay Union Benefits directly
8.) Directions to Sign and forward blank Certified Payroll Forms

Note: Duxbury alleged that during the winter of 1996-1997 that their **direct** "Equipment

Rental Agreement" for Snow Removal with MHD should have been covered under Massachusetts Prevailing Rate Law. Duxbury advised that they did raised the issue with the Massachusetts Attorney General Office who confirm Prevailing Rate coverage. Duxbury then went on to advised of the following problems:

     9.) Failure to Post Prevailing Hourly Rate

    10.) Failure to require or accept required information related
         to Certified Payrolls

    11.) Slow WBE/DBE Payments

    12.) MHD continuing refusal to comply Prevailing Rate Law

       (See: Attachment I.6.and I.7.)

E.) When and to whom did Duxbury Trucking advise of their concerns?

After working each of the four Contract in 1996 from several weeks to several day, it was determined, regardless of explanation, that each Contracted Work Assignment was a Prevailing Rate Job? Duxbury immediately informed the Hiring Contactor (Willie F. Brown Construction and Hilee, Inc.; Mass Gravel; Mary O'Donnell Construction Company, Inc.; M. De Matteo and Great Northern) that these were Covered Prevailing Rate Jobs. Further they advised of their inability to knowingly Violate the Laws of Massachusetts. That unless the illegal activities are stopped, that Could not continue on their Agreed Assignment. No corrective action was taken by Each of the four CA/T Contractors and Duxbury discontinued work on each of the four Contract Assignments.

Duxbury then proceed to have educational meetings with State and Federal Officials to insure that they had a current understanding of the Labor Law requirements. These Meetings were also unsuccessful attempt to get State and Federal Agencies to address the issues.

Finally after all attempts failed Duxbury Trucking "Park their Trucks" and would not knowing violate the Law, at great personal loss.

G.) What responses and/or corrective actions steps were taken to address the issues
    raised by Duxbury Trucking?

The issues raised by Duxbury were addressed in 1997 with the "Up Lift Fund"
Program, which provided additional funds to correct:

43

**ISSUE # 1 - ASSURANCES OF NON-DISCRIMINATION**

1. **Did the Massachusetts Highway Department (MHD) have a 1996 Federal Aid Recipient Responsibility to assure non-discrimination in the administration of their Projects?**

**AREA (S) OF CONSIDERATION # 1 – CONFIRMATION OF ASSURANCES**

    A.  Determine MHD responsibility in 1996 under the following provisions:

        1.)  FHWA Federal Aid Recipient's Assurances

           MHD did in 1996 and continues to receive FHWA Federal Aid Funds. The supporting FHWA Contract requires signed "Assurances" from MHD that they will comply with their EEO responsibilities, that includes compliance with the Title VI of the Civil Right Act of 1964. The provisions of 49 CFR Part 23 Subchapter C. Civil Rights, Part 200 Title VI Program and Related Statues - Implementation and Review Procedures, 200.9 State highway agency responsibilities, requires:

           "(a) State assurances in accordance with Title VI of the Civil Rights Act of 1964.

                (1) Title 49, CFR part 21 (Department of Transportation Regulations for the implementation of Title VI of the Civil Rights Act of 1964) requires assurances from States that no person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subject to discrimination under any program or activity for which the recipient receives Federal assistance from the Department of Transportation, including the Federal Highway Administration.

                (2) Section 162a of the Federal-Aid Highway Act of 1973 (section 324, title 23 U.S.C.) requires that there be no discrimination on the ground of sex....

                (3) That State highway agency shall take affirmative action to correct any deficiencies found by the FHWA within a reasonable time period, not to exceed 90 days...."

2.) Title VI of the Civil Rights Act 1964

(See: Item # 1.A.1.) above

3.) Participation by Disadvantaged Business Enterprises (DBE) in Department of Transportation Program Requirements

The DBE Program Provisions also require non-discrimination in as stated at 49 CFR Part 23 Subchapter C. Civil Rights, Part 230 External Programs, Subpart B Supportive Services for Minority, Disadvantage, and Women Business Enterprises, 230.204 Implementation of Supportive Services requires:

"(g) As a minimum, State highway agency contracts to obtain supportive services shall include the following provisions:

1.  A statement that a primary purpose of the supportive services is to increase the total number of minority firms participating in the Federal-aid highway program and to contribute to the growth and eventual self-sufficiency of minority firms;"

(See: Attachments A. 12.; B. 19.; C. 3.)

B.  Did MHD have a responsibility to assure compliance with contract provisions?

The provisions of 49 CFR Part 23 Subchapter C. Civil Rights, Part 200 Title VI Program and Related Statues - Implementation and Review Procedures, 200.9 State highway agency responsibilities, requires:

"(4) The State program area officials and Title VI Specialist shall conduct annual reviews of all pertinent program areas to determine the effectiveness of program area activities at all levels."