UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Duxbury Trucking, Inc., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Massachusetts Highway Department, et al., )<br>)<br>Defendants. )<br>)<br>) | Civil Action No. 04-12118-NG |

**PLAINTIFF'S RESPONSE TO COURT ORDER OF JUNE 10, 2005
REQUESTING ADDITIONAL BRIEFING RESULTING FROM
MOTION TO DISMISS HEARING**

NOW COMES Plaintiff Duxbury Trucking by and through counsel, Shaheen & Gordon, P.A. and enters this response to the Court's Order dated June 10, 2005 requesting additional briefing on issues raised during the hearing on the Defendants' motions to dismiss.[1]  Plaintiff states the following:

I.   FACTS

Plaintiff applied for certification as a federally protected Woman-owned Business Enterprise ("WBE") on April 27, 1997, and received certification from the Massachusetts State Office of Minority and Women Business Assistance ("SOMWBA") on April 1, 1998.  See Pl's Cmplt. at 28 and certification letter attached as Exh. A.  After SOMWBA certification, Plaintiff entered into a contract with one of the Central Artery/Tunnel ("CA/T") Project's prime contractors, Modern Continental Corporation, on June 15,

---

[1] Plaintiff respectfully requests that this Honorable Court incorporate by reference Plaintiff's previously filed motions in opposition to Defendants' motions to dismiss.

1

1998.  See Pl's Cmplt. at 41.  A copy of the contract is attached as Exh. B.  The Complaint, therefore, alleges that Plaintiff entered into a contract after certification, contrary to the Court's understanding as reflected in ¶ 3 of the Court's Order.

As of June 15, 1998, Plaintiff hauled materials for Modern Continental on a regular basis until November 28, 1998.  See Pl's invoices to Modern Continental attached as Exh. C 1–25.  Plaintiff then resumed hauling for Modern Continental on April 10, 1999, and continued to haul materials for the prime contractor until May 28, 1999, when Plaintiff ceased operations.  Id.  There appears to be no written contract for this second round of hauling.  Plaintiff completed hauling projects for Modern Continental totaling at least $56,800.55 from June 15, 1998 to May 28, 1999.  See Exh. C 1–25.  Plaintiff could not, however, continue to operate her business as she could not continue to pay legally obligated prevailing wage rates and benefits including wrap-up insurance, while Modern Continental withheld $10 per hour in interest from her hourly rate to service debt for equipment leases.  See Pl's Cmplt. at 41.  See also Exh. B of Pl's Opp. To Def. MHD's Motion to Dismiss.[2]  As a result, Plaintiff lost her business in 1999.  See Pl's Cmplt. at 41.

---

[2]  The Federal Highway Administration's draft report finding discrimination against Plaintiff stated:

> MHD Management requested that Modern Continental establish a Financial Agreement with Duxbury Trucking that would allow them to return to Hauling on the CA/T Project. MHD had "Up Lift Funds" to cover those type of expenses but the record does not show that those resources were made available.  Further both MHD and Modern Continental had current information showing that A, B, C Hauling Companies needed between $65.00 to $114.00 Per Hour to cover their Operating Expenses.  Modern Continental's Agreement Required an Hourly Payback of $10.00 per Hour which translated into a 15.4% Actual reduction in Duxbury's Gross Income.  Further the Agreement placed Duxbury in position of having a Below Market Requirement Hourly Rate of $55.00 per hour.  MHD Management took no action [to] remedy this "known problem" and allowed Small Trucking Compan[ies] that surfaced [sic] these issues to go bankrupt.

Exh. B of Pl's Opp. To Def. MHD's Motion to Dismiss at 28.

II.     ARGUMENT

    a.  Standard of Review

With this brief, Plaintiff verifies her earlier pleadings. As explained in her earlier oppositions filed in response to Defendants' motions to dismiss, Plaintiff must state a claim upon which relief may be granted, but Plaintiff need not prove her case with this brief. To the extent that some discovery has already been accomplished as a result of government disclosures pursuant to Freedom of Information Act requests, Plaintiff does have some material to support her claims. However, Plaintiff still lacks documents crucial to support her discrimination claim, including attachments to the draft report finding discrimination (Exh. B of Pl's Opp. To Def. MHD's Motion to Dismiss) which were never included with Plaintiff's copy of the draft report. Therefore, with leave to undertake further discovery, Plaintiff will be able to pursue her claim of discrimination.

    b.  Plaintiff's Due Process Claim

The foundation of Plaintiff's due process claim is her status as a WBE. As explained in Plaintiff's previously filed oppositions to the Defendants' motions to dismiss, Plaintiff has a property interest in her status as a WBE. See Pl's Opp. To Def. MTA's motion to dismiss at 10. However, as a result of government action, i.e. the Defendants' unwillingness to comply with federal regulations to uphold prevailing wage and benefits laws and prevent discrimination while Plaintiff hauled materials for Modern Continental in 1998 and 1999, Plaintiff, as a certified WBE, lost a protected property interest as she was unable to pursue her livelihood.

Because she was a certified WBE, federal regulations were in place to protect her from the illegal practices of the prime contractors at the CA/T Project. For example, the

prompt payment requirement is one way in which WBEs receive an extra measure of assistance from the government to protect them from prime contractors. Federal fund recipients with DBE programs, such as the Defendant Massachusetts Highway Department ("MHD") and Defendant Massachusetts Turnpike Authority ("MTA"), must "establish…a contract clause to require prime contractors to pay subcontractors for satisfactory performance of their contracts no later than 30 days from receipt of each payment that [the recipient makes] to the prime contractor." 49 C.F.R. § 26.29. In this manner, the Federal Highway Administration's ("FHWA") regulations intend that DBEs (including WBEs) receive timely payments for their work[3] since they, as Plaintiff herein, are less likely to have the capital reserves to continue to finance and maintain their equipment despite delays in paychecks.

This extra measure of federal protection is evidence of the public policy that FHWA, by law, was to enforce to support Plaintiff and other WBEs and DBEs in an acknowledged challenging business environment. That Defendants MHD and MTA failed to meet their lawful obligations to support these certified small businesses and allowed WBEs such as Plaintiff to go out of business despite federal and state mandated protective measures shows the true depth of the Defendants' failure to uphold and monitor these federal and state laws and regulations and oversee trucking, generally, at the CA/T Project.

In spite of the clarity of the federal regulations and state laws, Defendants MHD and MTA continue to argue that they have no responsibility for these matters. However, even their own co-Defendant Morris of the FHWA does not subscribe to that profoundly

---

[3] Such payments include prevailing hourly wages, and benefits to include wrap-up insurance, union pensions and health insurance payments as mandated by the Project Labor Agreement ("PLA").

4

misguided argument as he asserts that his State co-Defendants are responsible for upholding federal anti-discrimination laws. See letter to Plaintiff's counsel from Defendant Morris, dated Feb. 27, 2003, attached as Exhibit D.[4] Therefore, because Plaintiff's status as a WBE is a recognized property right, and Plaintiff entered into a CA/T Project contract as a certified WBE, Plaintiff was deprived of her legally recognized property due to the Defendant government agencies' and Defendant federal and state officials' unwillingness to uphold state laws, including the Massachusetts prevailing wage law, and federal laws and regulations, including anti-discrimination laws and regulations. Plaintiff's due process claim therefore is viable.

    c.   Plaintiff's Discrimination Claim

Plaintiff lost her business despite her legally protected status as a WBE as a result of the Defendants' collective failure to monitor and take all necessary actions to insure that participants receiving federal funds in the CA/T Project paid subcontractors, including Duxbury Trucking, prevailing wages and mandated benefits, among many other federally and state-mandated obligations. As a result of the Defendant agencies' failure to monitor prevailing wages and other obligations, businesses owned by minorities and women suffered financial hardships, often, as in the case of Plaintiff, fatal hardships because, as was known to the Defendants, such businesses, due to a lack of economic bargaining power, were least able to weather the financial pressures of running a business

---

[4]    Defendant Morris states:

> The MHD is a recipient of FHWA financial assistance and was responsible for administering the CA/T project when the alleged discrimination occurred. The CA/T project is a MHD Federal-aid project. As such, the MHD, its sub-recipients (e.g., the Massachusetts Turnpike Authority (MTA)), and its contractors (regardless of tier) are subject to the anti-discrimination provisions of 23 U.S.C. § 324 and the Title VI regulations at 49 C.F.R. § 21 and 23 C.F.R. § 200.

Exh. D. at 1.

5

when the protective laws and regulations engendered by public policy concerns were not, on a systemic basis, monitored or enforced.

These small businesses without large capital reserves, usually financing equipment as opposed to owning it outright, had a legal obligation to pay their employees prevailing wages and mandated benefits, all while still paying for the insurance, maintenance and upkeep of their trucks.  In Plaintiff's case, it was impossible to run her business at even a modest profit, as illustrated in footnote 2.  After Plaintiff paid Modern Continental $10.00 an hour for every hour worked to finance the lease on its truck, Plaintiff did not receive a legal nor sustainable hourly rate.  This identical scenario played out for other WBEs and DBEs as prime contractors knew they were not paying prevailing wages, but that over 80% of their direct subcontractors were WBEs, DBEs and MBEs who needed the protection of prevailing wage rates, thereby causing discrimination.  See Exh. B. of Pl's Opp. To Def. MHD's Motion to Dismiss at 30.  That Defendants were aware of this inequity, and allowed it to continue evidences that the discrimination inflicted upon Plaintiff as a WBE was a result of Defendants' failure to enforce existing laws and regulations, and was of such a magnitude that Plaintiff was forced to close her business, sustaining significant damages as detailed in the Complaint.  Id. at 37.

That Plaintiff could not operate her business at even a modest profit is clear from Defendant Morris's letter attached as Exhibit D.  While Defendant Morris declined to find that discrimination occurred[5], contrary to the draft report submitted as Exh. B of Pl's Opp. To Def. MHD's Motion to Dismiss, Defendant Morris confirmed Plaintiff's allegations that Defendant MHD failed to enforce prevailing wage laws and contributed

---

[5]   It is clear that Defendant Morris at least initially saw merit to Plaintiff's discrimination claim as he wrote in a draft of his letter denying her claim that he would review her complaint "in the interest of justice."  The draft is attached as Exhibit E.

6

to the unlawful treatment of truckers on the project generally and Plaintiff Duxbury specially. Exh. D at 3. Defendant Morris stated:

> …[T]he Massachusetts House of Representative's Post Audit and Oversight Bureau's investigation of prevailing wage issues on the CA/T and other public construction projects in Massachusetts confirm the complainant's allegations regarding the lack of monitoring and oversight by MHD of the payment of prevailing wage rates to, and treatment of, truckers on the CA/T. That the CA/T project staff took aggressive action after the truckers' job action to better monitor wage rate compliance and refer instances of uncorrected noncompliance to the Massachusetts Attorney General of criminal prosecution further validated the complainant's allegations regarding the ineffectiveness of MHD monitoring.

Id. at 3.

Defendant Morris also characterized Defendant MHD's failure to monitor CA/T trucking as "pervasive." Id. Defendant Morris's observations are bolstered by others involved in CA/T trucking. In the interviews that Defendant Morris conducted to determine whether Plaintiff had suffered discrimination, he spoke with other trucking subcontractors. His summary of their comments is attached as Exhibit F. The other subcontractors stated that DBEs generally were squeezed out of trucking contracts for the CA/T Project because prime contractors saw no benefit to using them, despite regulations written to make them more appealing to prime contractors, because fraudulent firms masquerading as DBEs took opportunities away from legitimate DBEs, and because trucking brokers preferred to enlist trucks driven by owner/operators who would work at a reduced rate due to their reduced expenses. Exh. F at 1. The group agreed that "the [CA/T] project provided little benefit to legitimate DBEs. While the DBE regulations contain safeguards, they are completely ineffective if ignored….[T]he actions of the primes and brokers as related to DBEs and trucking subcontractors was described and agreed to as 'predatory.'" Id. at 2. Plaintiff is a victim of such predatory practices --

7

practices that flourished because Defendants failed to meet their legally mandated obligations to WBEs/DBEs including the Plaintiff herein.

### III. CONCLUSION

Plaintiff has stated claims upon which relief may be granted. Based on her status as a WBE, Plaintiff has adequately stated a due process claim. With the documents already compiled, Plaintiff has *prima facie* evidence of sex-based discrimination at the CA/T Project, discrimination resulting from Defendants' failure to responsibly monitor and enforce laws and regulations in place to protect Plaintiff. As a result, Plaintiff has not been in business since 1999 sustaining significant damages resulting from an inability to complete a contract awarded to Duxbury after the date of its certification as a WBE. If Defendants had fulfilled their legal responsibilities, Plaintiff would have been able to be a WBE contractor at the CA/T project, likely hauling materials continuously from 1999 to date. Defendants' failures, recognized by FHWA's internal investigation, violated Plaintiff's recognized and protected legal rights. Defendants' Motions to Dismiss must be denied, allowing Plaintiff to vindicate its claims under the protections of Court-enforced due process, a protection that Plaintiff was denied by the systematic, imbedded failures of the Defendants.

WHEREFORE Plaintiff Duxbury Trucking respectfully requests that this Honorable Court:

a) Deny the Defendants' Motions to Dismiss; and

b) Grant any other relief that this Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Duxbury Trucking, Inc.<br>By Its Attorneys:<br>SHAHEEN & GORDON, P.A. |
| DATED: June 17, 2005 | /s/ Arpiar G. Saunders, Jr.\_\_\_\_\_<br>Arpiar G. Saunders, Jr.<br>Bar No. 442860<br>107 Storrs Street<br>P.O. Box 2703<br>Concord, NH 03302-2703<br>(603) 225-7262<br>asaunders@shaheengordon.com |

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on June 17, 2005 by U.S. Mail, postage prepaid to Neil V. McKittrick, Esq., Peter N. Kochansky, Esq., Goulston & Storrs, PC, 400 Atlantic Avenue Boston, MA 02110; David B. Stanhill, Esq., Assistant Attorney General, One Ashburton Place, Room 1813, Boston, MA 02108; and Damian W. Wilmot, AUSA, U.S. Attorney's Office, John Joseph Moakley United States Courthouse, 1 Courthouse Way, Suite 9200, Boston, MA 02110

/s/ Arpiar G. Saunders, Jr.\_\_\_\_\_
Arpiar G. Saunders, Jr.

*F:\Data\clients\Duxbury Trucking Company, Inc\MTD hearing -- brief (final).doc*