UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DUXBURY TRUCKING INC., <br><br> Plaintiff, <br><br> v. <br><br> MASSACHUSETTS HIGHWAY DEPARTMENT, MASSACHUSETTS TURNPIKE AUTHORITY, EDWARD W. MORRIS, JR. Federal Highway Administration, (Former Associate Administrator For Civil Rights), BRENDA ARMSTEAD, Federal Highway Administration, Equal Opportunity Specialist, ARTHUR ("GENE") ARMSTEAD, Federal Highway Administration, Civil Rights Team, STANLEY GEE, Federal Highway Administration, District Administrator, COMMONWEALTH OF MASSACHUSETTS, FEDERAL HIGHWAY ADMINISTRATION, <br><br> Defendants. | C.A. No. 04-12118(NG) |

## DECLARATION OF EDWARD W. MORRIS, JR.

I, EDWARD W. MORRIS, Jr., declare the following:

1. I am a defendant in the above titled action. I retired from the position of Associate Administrator for Civil Rights (formerly "Director") of the Federal Highway Administration (FHWA), an agency of the US Department of Transportation (DOT), on December 31, 2003. I served in that capacity for approximately 15 years from 1988 until December 31, 2003.

2. As Associate Administrator, I managed and promoted FHWA's civil rights programs to ensure fair and equitable treatment of all persons employed or affected by

FHWA and the programs and activities of recipients of Federal financial assistance from FHWA. In addition to managing the day-to-day responsibilities of the Office of Civil Rights, I reported regularly to FHWA and US DOT leadership on civil rights policy, programs, and operations; I participated on several task forces and work groups; and I served as agency spokesperson at national, regional, and state conferences that required my attendance.

      3. One of the many functions of the Office of Civil Rights is to investigate discrimination complaints filed against recipients of FHWA funds. When I headed that office, I issued final decisions of the agency that stem from the investigation of such complaints. Brenda Armstead, the Director of Investigations and Adjudications, was responsible for coordinating the actual investigation and resolution of all complaints filed with FHWA. Investigations were typically conducted by staff in the Office of Civil Rights or referred to staff in other parts of FHWA, who were properly trained and who worked under the supervision of the Office of Civil Rights when conducting an investigation.

      4. The initial investigation of the discrimination complaint filed by Mrs. Martinsen in September 2000 was conducted in 2001 by Peter Silva, an investigator in the FHWA Eastern Resource Center, which provides technical support to division offices located in the states that make up the northeastern region of the country. Mrs. Armstead conducted a further investigation of the complaint in February 2002 because of unanswered questions raised by the report and recommendation submitted by Mr. Silva to me in September 2001 for review and action.

5. I became directly involved in the actual investigation of the Martinsen complaint sometime in July of 2002, after I received a draft report and recommendation from Mrs. Armstead based on her investigation. I was not satisfied that a thorough, comprehensive investigation and coherent analysis of the relevant Title VI issues had been conducted at that point.

6. In August 2002 I traveled to Boston, Massachusetts to conduct a series of interviews that included state officials and local contractors who had not been interviewed as part of the previous investigations. I interviewed Mrs. Martinsen, the complainant and owner of Duxbury Trucking, Inc, and Mr. Martinsen separately, since Mr. Martinsen continued to supplement the initial complaint filed by Mrs. Martinsen with additional allegations. Mrs. Martinsen was represented by counsel during the interview. At no time in this process did I commit to completing the investigation by a date certain.

7. While in Boston, I met with the FHWA Massachusetts Division Administrator Stan Gee to secure workspace and access to other equipment that would be needed to complete our work. I did not discuss with Mr. Gee the substance of my investigation.

8. Throughout the investigation Mr. Martinsen made frequent and regular – almost daily -- contact with the Office of Civil Rights. I had many conversations with Mr. Martinsen in which he spent much of the time talking about his personal life, including his fishing exploits, his opinions about the Central Artery Tunnel Project (the "Big Dig"), and, occasionally, his son's health. On several occasions Mr. Martinsen demanded that I make a finding of discrimination so that "he" could collect money he

3

believed was owed him by the Massachusetts Highway Department. He had obtained a copy of the initial draft report prepared by Mr. Silva and felt justified in his demands.

9. Mr. Martinsen also indicated that he had retained counsel and was prepared to file a lawsuit. Since Mr. Martinsen represented himself as the agent of Mrs. Martinsen, I understood the threat of litigation to come from both Martinsens. At no time did I tell Mr. Martinsen or Mrs. Martinsen that a finding of discrimination would be made or that they should delay taking any legal action they were threatening to take pending receipt of a decision by FHWA. Mr. Martinsen (and through him Mrs. Martinesen) was told that when I was satisfied that enough evidence had been obtained on which to make an objective determination regarding the existence of discrimination – or not—Mrs. Martinsen would be informed of our findings.

10. On February 27, 2003, a letter of finding disposing of the complaint filed by Mrs. Martinsen was issued. The time elapsed in making a final finding on February 27 from when the complaint was filed was due to several factors. The initial investigation report prepared by Mr. Silva was deficient in several respects. The analysis was disjointed and wholly inadequate. The depth of the investigation was also sorely lacking. The recommendation I received from Mrs. Armstead did not reflect a clear appreciation for the context in which the allegations of discrimination were raised. As a result I was compelled to undertake an entirely new investigation. Due to severe workload constraints and a relatively small civil rights staff, completion of the report was delayed more than I would have preferred. However, as noted above I neither advised Mr. Martinsen or his wife that they would receive a favorable decision nor that they should forestall bringing

any type of legal action. In fact since he was represented by counsel I assumed he was receiving appropriate legal advice.

    11. Before I retired, I completed a final report on the Office of Civil Rights' review of the trucking situation in Boston, which included an assessment of the allegations of discrimination made by Mrs. Martinsen. I also prepared letters transmitting the report to the Martinsens' counsel and to other government agencies responsible for addressing the non-discrimination issues raised by the Martinsens. I am unaware of the disposition of the final report.

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

    Executed this 19th day of October, 2005.

EDWARD W. MORRIS, Jr.