UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DUXBURY TRUCKING INC.,

    Plaintiff,

v.

MASSACHUSETTS HIGHWAY DEPARTMENT,     C.A. No. 04-12118(NG)
MASSACHUSETTS TURNPIKE AUTHORITY,
EDWARD W. MORRIS, JR. Federal Highway
Administration, (Former Associate Administrator
For Civil Rights), BRENDA ARMSTEAD, Federal
Highway Administration, Equal Opportunity
Specialist, ARTHUR ("GENE") ARMSTEAD,
Federal Highway Administration, Civil Rights
Team, STANLEY GEE, Federal Highway
Administration, District Administrator,
COMMONWEALTH OF MASSACHUSETTS,
FEDERAL HIGHWAY ADMINISTRATION,

    Defendants.

## AFFIDAVIT OF ARTHUR ARMSTEAD

ARTHUR ARMSTEAD, being duly sworn deposes and says:

1   I am a defendant in the above titled action and was formerly Team Leader for the Civil Rights Team in the Eastern Resource Center of the Federal Highway Administration ("FHWA"). I served in that capacity for approximately 3 years from January 28, 2001 until January 2, 2004. I retired from federal service on January 2, 2004.

2.   The Eastern Resource Center is an organizational unit of the FHWA charged with providing technical assistance to states and FHWA Division Offices in various states with respect to program activities of the FHWA. The Civil Rights

1

Unit of the Eastern Resource Center provides assistance to FHWA Division Offices and the state in administering the various Civil Rights programs embodied in various laws. We also investigate complaints alleging violations of Title VI of the Civil Rights Act, of 1964 as amended.

3. As Team Leader, my role was to manage the unit's work-load, which included assigning Title VI complaints for investigation. Specifically, with respect to this matter, the Duxbury Title VI complaint was forwarded to my unit for investigation including preparation of an investigation report and a recommended finding based on the investigation. I assigned those duties to Peter Silva and based on Mr. Silva's grade level and his level of experience, it was expected that he would perform that investigation with minimum supervision. My role in the investigation was to insure that it was carried out in a timely manner and that adequate funds and resources were allocated to the tasks.

4. Duxbury Trucking, Inc. was a certified WBE meaning under our regulations then in effect, it must be primarily owned and operated by a female. Mrs. Martinsen would have purportedly been the owner and operator of Duxbury Trucking and thus the complainant in this matter. Inasmuch as Mr. Silva was the investigator I never contacted the complainant nor did she contact me.

5. Over the course of Mr. Silva's investigation, complainant's husband who was an employee of the complainant spoke with Mr. Silva and the affiant on almost a daily basis. Most often the conversations with the undersigned dwelled on personal matters or current events. When inquiries were made concerning the investigation I advised Mr. Martinsen that Mr. Silva was the investigator and any

information or questions should be directed to him. He complied with my requests and often complimented the Resource Center on the fine work they were performing. During the course of the investigation I never discussed with Mr. Martinsen the substance of the report or the status of it.

6. Once Mr. Silva advised me that he had completed the investigation, he began preparing a formal report of investigation with his findings for forwarding to the Director of Civil Rights in Washington, D.C. I never reviewed his report for the substance of his findings but rather just as to form.

7. The report was forwarded to the Director of Civil Rights for final action. Following forwarding of the Silva report, the Director met with both Mr. Silva and the undersigned to discuss concerns relating to the quality of the data and analysis contained in the report. Those concerns were discussed but no further action was requested of any employee of the Civil Rights Team with respect to taking additional action relating to the report. Mr. Silva had several additional conversations with the Director relating to the report but I was not privy to those discussions. Subsequently, I have come to learn that due to the concerns relating to the analysis and the data gathering, the Director assumed personal control completion of the report. It should be noted that at this time there were only 2 employees in the Eastern Resource Center Civil Rights Team, the undersigned and Mr. Silva.

8. I never discussed with Mr. Martinsen the substance of the contents of the Silva report nor did I discuss with him follow-up actions undertaken by the Civil

Rights Office in Washington. I had no personal knowledge of those actions. As noted above I never spoke with Mrs. Martinsen since she never called the office.

9. I never discussed with any employee of the FHWA opportunities to mislead Mr. or Mrs. Martinsen or to deprive them of their civil rights by delaying the investigation or reaching a pre-ordained result from the investigation. My discussions were primarily with Mr. Silva and were solely designed to insure that he had adequate resources to complete the assignment and that it was performed in a timely manner.

*(signature)*
Arthur Armstead

Sworn to this 19th day of October, 2005

Subscribed and sworn to before me, in my presence, this 19th day of October, 2005, a Notary Public in and for the State of Maryland.

Sonja M. Chavis
Notary Public
My Commission expires Dec. 1, 2008

SONJA M. CHAVIS
Notary Public, State of Maryland
County of Baltimore
My Commission Expires December 1, 2008