RECEIVED

U.S. Department
of Transportation
**Federal Highway
Administration**

FEB 27 2003

400 Seventh St. MAR 0 3 2003
Washington, D.C. 20590

Refer to: HCR-1

## CERTIFIED MAIL RETURN RECEIPT REQUESTED

Mr. Arpiar G. Saunders, Jr., Esq.
Shaheen & Gordon P.A.
Two Capital Plaza
P.O. Box 2703
Concord, NH 03302-2703

Re: Complaint # DOT 2001-0003

Dear Mr. Saunders:

This letter addresses the complaint filed by Mrs. Susan Martinsen (hereafter the complainant) with the United States Department of Transportation (USDOT) on September 27, 2000.[1] Complainant alleges that, as a certified disadvantaged business enterprise (DBE),[2] her firm, Duxbury Trucking, has been denied the opportunity to work on the Central Artery/Ted Williams Tunnel (CA/T) project because of the failure of the Massachusetts Highway Department (MHD) to ensure contractor compliance with the State's prevailing wage law and the CA/T Project Labor Agreement (PLA). According to the complainant, to obtain contracts to provide trucking services on the project, Duxbury would have to ignore its obligation under Massachusetts law to pay its sole employee, Roy Martinsen (the husband of the complainant), prevailing wages because the contract price (i.e., the hourly trucking rate) the firm would have to agree to would be insufficient to cover prevailing wages and other operating expenses. Consequently, in July 1996, Duxbury "parked its trucks" because it allegedly could not operate at a profit without violating State law and subjecting complainant to civil and criminal penalties. We understand complainant's claim is based on her belief that MHD's action or inaction is a form of discrimination against DBEs.

Section 324 of Title 23 of the United States Code prohibits discrimination based on sex in programs and activities funded by the Federal Highway Administration (FHWA). The FHWA enforces this anti-discrimination provision through agency rules established under Title VI of the Civil Rights Act of 1964. The MHD is a recipient of FHWA financial assistance and was responsible for administering the CA/T project when the alleged discrimination occurred. The CA/T project is a MHD Federal-aid project. As such, the MHD, its sub-recipients (e.g., the Massachusetts Turnpike Authority (MTA)), and its contractors (regardless of tier) are subject to the anti-discrimination provisions of 23 U.S.C. § 324 and the Title VI regulations at 49 C.F.R. § 21 and 23 C.F.R. § 200.

---

[1] Unless otherwise indicated, general references to the complainant include her spouse, who acted as her representative throughout our investigation of the complaint.

[2] A DBE under the USDOT program is a for-profit small business concern owned and controlled by individuals who are socially and economically disadvantaged. Individuals in certain racial and ethnic groups (e.g., African Americans, Hispanic Americans, and women) are rebuttably presumed to be socially disadvantaged. See 49 C.F.R. Part 26.

BUCKLE UP
AMERICA

The allegations in the complaint are largely based on events that occurred in 1996 and 1997-1998, two to four years before the discrimination complaint was filed with the US DOT. Thus, the complaint ordinarily would have been considered untimely since it was not filed within the prescribed 180 days of the alleged discrimination as provided by 49 C.F.R. § 21.11(b). However, because the complainant alleges continuing violations and the complaint was filed within 60 days of becoming aware of possible discrimination, FHWA accepted the complaint for investigation.

The allegations of the complaint were investigated as part of a wider review of issues that arose in the course of our fact-finding efforts. Many of the additional issues that surfaced, over which the FHWA Office of Civil Rights has no jurisdiction, are being referred to other agencies for review and disposition as outlined below.

In addition to obtaining copies of correspondence, reports, legislative material, and other records of payments and DBE participation on the CA/T project, we conducted interviews of the complainant, her husband, other DBEs and brokers, and representatives of prime contractors, Teamsters Local 379, the State Attorney General's office, the MHD, the MTA, the CA/T project, the State Office of Women and Minority Business Assistance (SOWMBA), the USDOT's Office of the Inspector General, and the FHWA Division Office. Numerous pieces of correspondence on a variety of subjects provided by various witnesses were reviewed in detail, including a statement by the Chief Counsel of the CA/T, which addressed the complainant's allegations concerning noncompliance with the State prevailing wage law and the PLA.[3]

After reviewing all of the submitted and obtained information, we have determined that there is insufficient evidence to support a finding of discrimination against the complainant on the basis of sex or by virtue of her firm's DBE status. In reaching this conclusion, we make the following findings:

- Between June 1996 and July 1998 Duxbury worked on several trucking jobs of relatively short duration with brokers and prime contractors responsible for hauling on the CA/T project. In 1996 the hourly trucking rate Duxbury received for services rendered under its contracts ranged from $40-$45 per hour. During that time the prevailing wage was $28.17 per hour, including $8 per hour for fringes and benefits. That left $11.83 per hour to cover other operating expenses, an amount the complainant claims was inadequate to meet the cost of doing business. Faced with the choice of not submitting or falsifying payroll records to appear to be in compliance with the State prevailing wage law and risk the imposition of criminal penalties, the complainant stopped working on the project in July 1996 because she claimed she could not do so "legally." Complainant makes no claim that she was denied contracts because of her gender or because she was a DBE.

- According to the Massachusetts Office of Attorney General, contractors performing work on the CA/T project have a legal and contractual obligation to ensure the payment of the applicable prevailing wage rate. Thus, complainant was obligated to pay her employee(s) prevailing wages.

- Several State agencies are involved in implementing and enforcing the State's prevailing wage law. The Massachusetts Department of Labor and Workforce Development sets wage rates and issues interpretative guidance. The MHD receives, maintains, and reviews certified

---

[3] We have treated the statement from the Chief Counsel as a statement made on behalf of MHD and MTA.

payroll records that contractors are required to submit to document compliance with the prevailing wage law. In turn, MHD refers cases of noncompliance to the Massachusetts Attorney General for enforcement. Lastly, the Attorney General handles the prosecution of alleged violations of the law. Before parking her truck, complainant sought assistance from a number of State and Federal officials, including the Massachusetts Attorney General's Office, MHD, the MTA, the Federal Bureau of Investigation, the Labor and Racketeering Section of the U.S. Department of Labor's (DOL) Office of Inspector General (OIG), and the USDOT OIG.

- After a group of truckers organized by complainant's spouse threatened to stop working on the CA/T project, MHD took action in 1997 to fund an increase in the hourly trucking rate paid to small trucking businesses under contracts in existence before July 1, 1997. The resulting "Central Artery/Tunnel Project Memorandum of Agreement on Trucking Issues" (Uplift Agreement) executed to end the work stoppage increased the hourly rate to $65, which included fringe benefit payments. The increased trucking rate enabled complainant to resume work on the project. The Uplift Agreement expressly states that it is not an admission of wrongdoing by the parties (which included, among others, MHD and the Department of Labor and Workforce Development), that it was entered to settle disputed issues concerning work on then existing contracts awarded before July 1, 1997, that future trucking rates for contracts awarded after July 1, 1997, would be determined by the marketplace, and that the parties waive any past claims for unpaid wages, benefits, or benefit fund contributions to the extent permitted by law. The complainant's husband, who was one of the key organizers of that action, agreed to be bound by the terms of this agreement.

- Notwithstanding the Uplift Agreement, the Massachusetts House of Representative's Post Audit and Oversight Bureau's investigation of prevailing wage issues on the CA/T and other public construction projects in Massachusetts confirm the complainant's allegations regarding the lack of monitoring and oversight by MHD of the payment of prevailing wage rates to, and treatment of, truckers on the CA/T. That the CA/T project staff took aggressive action after the truckers' job action to better monitor wage rate compliance and refer instances of uncorrected noncompliance to the Massachusetts Attorney General for criminal prosecution further validated the complainant's allegations regarding the ineffectiveness of MHD monitoring.

- After the new trucking rates were set under the Uplift Agreement, Duxbury received loans for working capital from Modern Continental, a CA/T prime contractor. Duxbury worked on the project for Modern Continental from 1997-1998. Since the Uplift Agreement did not affect future trucking rates, the complainant once again stopped working on the project when hourly rates paid to truckers reverted to the pre-Uplift agreement level.

- It is the position of the MHD that trucking rates are set by market driven forces, that some truckers can provide services to contractors at a lower rate than others and still comply with prevailing wage requirements, and that MHD is not responsible under the prevailing wage law for market rate fluctuations in the trucking rates paid by contractors.

- The ineffective monitoring of prevailing wage rate payments and processes seems to have been pervasive. However, there is no evidence that complainant was subjected to intentional discrimination based on sex. There also is insufficient evidence that, as a DBE, the complainant was disproportionately adversely affected by the lack of compliance with the State prevailing wage law as compared to non-DBEs generally or non-DBE truckers

3

specifically. Within the trucking community, the impact of the State's failure to adequately monitor prevailing wage law compliance was similarly visited upon all trucking firms. Moreover, there is insufficient evidence of a causal connection between the State's failings and the complainant's plight.

- Complainant asserts that the terms of Duxbury's loan agreement with Modern Continental were harsh and unfair. We draw no specific conclusions about the loan agreement, except that there is no evidence to suggest that there was any discrimination or discriminatory effect based on the complainant's gender.

Based on the above findings, we are closing the complaint as of the date of this letter, subject to the following: the complainant may file a request for reconsideration within 30 days of receipt of this letter if the complainant has additional information or analysis relevant to her claim of discrimination or if the complainant believes evidence presented was not properly considered. Normally our decision is final upon issuance. However, because of the complexity of this case, the time taken to complete the investigation, and the unusual circumstances involving the investigative process, we think it is appropriate to allow reconsideration before a final agency decision is rendered.

Our finding of no violation does not preclude the complainant from pursuing any existing private rights of action. Please note that the closure of this case does not affect the complainant's right to file a complaint with this office in the future. The complaint must be filed within 180 days of the alleged discrimination.

As I indicated earlier, in the course of our investigation, several matters were brought to our attention that may warrant further action by other offices within FHWA or by other Federal or State agencies. Under separate cover, we are referring to the appropriate authorities the following issues of concern raised by the complainant or unearthed during the investigation:

1. Whether the manner in which prime contractors set the trucking rates for small trucking firms runs afoul of Federal anti-trust laws based on allegations made by the owners of such firms that the rates are not driven by market forces but instead are set and adhered to by brokers and/or primes.

2. Whether trucking subcontractors on the CA/T project have submitted, or are submitting, falsified payroll records, including whether prime contractors participated in the falsification of such payroll records.

3. Whether there is compliance with the terms of the PLA regarding the disposition of monies paid into fringe and benefit funds for drivers who did not meet the 600-hour minimum to qualify for hospitalization.

4. Whether the provisions of § 27E of the Massachusetts General law, which requires "at least seventy five per cent (sic) of the persons employed by the department of highways to work in connection with the construction, reconstruction, alteration, or repair of any public works, in positions other than those subject to the civil service laws and rules and regulations, . . . be residents in the highway district...in which the work is done," complies with 23 CFR § 635.117(b) and the PLA. (emphasis added).

4

5.  Whether MHD is complying with Federal regulations that require all subcontracts be in writing and that all contractors (primes and subs) be informed of their civil rights, wage rate compliance, and other obligations under the Federal-Aid Highway program.

Our review of the situation in Massachusetts will continue, as will our coordination with other appropriate Federal agencies with responsibilities in matters raised by the complaint. Specifically, we are reviewing the following concerns:

1.  Whether the DBE certification process is administered by SOWMBA in accord with Federal regulations. Questions have been raised about the possible conflict between the mission of SOWMBA and the goals and objectives of the Federal DBE program, about improperly certified firms, and about allegations of "fast-tracking" politically connected applicants for DBE certification.

2.  Whether MHD has a clear understanding of its responsibilities under Title VI of the Civil Rights Act of 1964. There may be some confusion regarding the roles, responsibilities, and relationships between MHD and MTA as a recipient and sub recipient respectively that stem from provisions of Massachusetts law that appear to insulate MTA from supervision or control by MHD. There also are questions raised about the extent to which MHD, MTA, and Bechtel Parsons Brinckerhoff have conducted sufficient compliance reviews of primes and subcontractors to ensure that they are not discriminating in the selection and retention of subcontractors, material suppliers, and vendors or to ensure equal employment opportunity is being provided in the workforces of employers on the CA/T and elsewhere in the State.

3.  Whether the practices of Modern Continental on Route 3, in which its broker advertised for owner-operators to the exclusion of small business owners, comply with Federal requirements.

Complainant should be aware that under the Freedom of Information Act it may be necessary to release this information and related materials upon request once our review is complete. In the event we receive such a request, we will seek to protect, to the extent provided by law, personal information which, if released, could constitute an unwarranted invasion of privacy.

The complainant should be made aware that it is illegal for anyone to intimidate, threaten, coerce, or engage in other discriminatory conduct against anyone who has taken action or participated as a witness to secure rights protected by 23 U.S.C. 324. Anyone alleging such harassment or intimidation may file a complaint with this office or the Department of Justice. If the situation warrants, such complaints will be investigated.

If you have any questions related to this letter, please contact Brenda Armstead at the Investigations and Adjudications office of the Office of Civil Rights. Room 4132 of the Nassif Building, Washington, DC 20590, and reference the complaint number cited at the beginning of this letter.

Sincerely yours,

Edward W. Morris, Jr.
Associate Administrator for Civil Rights