# Lessons Learned

## A case-study of the potentially awful impacts of misguided good intentions

Isler -039

#26

# Facts

- A complaint was received

- It was assigned for investigation

- It was "investigated"

- Critical witnesses were not interviewed

- A draft report was prepared and shared with other non-Civil Rights RC staff members

- The draft was shared with the staff of another agency, electronically

- The draft was shared by the other agency's staff with a confidential informant

Isler -040

# *Facts (cont'd)*

- The confidential informant provided a copy of the draft report to the complainant's spouse

- Throughout the processing of the complaint, the complainant's spouse, with draft report in hand, called FHWA personnel up and down the line, expressing personal perspectives, modifying allegations, and demanding the report be issued forthwith.

Isler -041

# Facts (cont'd)

- The draft report of findings included the field investigator's calculations of tens of millions of dollars in ostensible damages purportedly due the complainant and others. The material was included "to get someone's attention."

- The draft report was copied by the complainant's spouse and and provided to other agencies, news media, and members of Congress

- The complaint was filed in 2001 on matters which took place in 1996

Isler -042

# *Facts (Cont'd)*

- The initial issues were rather simple, but the ancillary issues were complex, convoluted and exacerbated by conflicting State and Federal statutes, regulations, and administrative and judicial interpretations.

- The Primary recipient was replaced on the project by a new State agency and the day-to-day management of the construction was done by a consultant.

- There was confusion regarding roles and responsibilities among the responsible players

Isler -043

# *Facts (cont'd)*

- The matters complained of were on the largest single highway construction project in the history of the Nation.

- The initial draft report was fatally flawed in a number of ways, including: the arrangement of exhibits; discussion of issues and conclusions drawn; and the absence of any affidavits or reports of interviews of witnesses.

- Because of the calculations contained in the draft report, the complainant expected to receive a check from the involved State DOT for tens of millions of dollars.

Isler -044

# *Actions Taken*

- Efforts were undertaken by HCR to fill gaps in the investigative file and obtain evidence sufficient to confirm or dispel the allegations

- The record was arrayed chronologically and reviewed prior to a fact-finding visit to obtain information to allow an objective determination to be made

Isler -045

# Actions Taken

- The non-Civil Rights staff of the RC applied pressure to adopt the findings of the report and issue a letter of findings

- Two attempts were made by the RC Civil Rights staff to make the report make sense; the first attempt was a repackaging of the initial report; the second attempt did not properly frame or analyze the issues

Isler -046

# Actions Taken

- Each attempt to wrap the matter up – cleanly – found new, more convoluted issues, some involving other agencies' responsibilities

- To address the broad array of issues uncovered, the effort was changed from an investigation to a review

- The initial complaint was focused upon with the other matters to be subjected to a more far-reaching review.

- A Letter of Findings was sent to the attorney for the complainant

Isler -047

# Actions Underway

- The review report is being completed and other responsible agencies have been contacted for them to consider acceptance of referrals of matters within their jurisdiction

- The matters for which FHWA and DOT's OIG are responsible have been arrayed for prioritization by the involved Division and action to address identified non-compliance, weaknesses, and suspected fraud and abuse.

Isler -048

# NEXT STEPS

- In addition to bringing a trained and experienced cadre of investigators in line with FHWA's complaint investigation procedures, action sufficient to prevent a recurrence of the swamp surrounding the complaint at issue will have to be put into place and monitored

Isler -049

# *Analysis of allegations filed with or referred to FHWA*

- Timeliness
- Authority/Jurisdiction
- Standing
- *Prima Facie* case
- Completeness
- New Issue (if filed by complainant(s) whose previous case(s) have been decided)
- Being pursued in other forums

Isler -050

# Communications

- Formal communications need to be clear and unequivocal, use of standard letters of notification is recommended

- Do not refer to the allegations as a "complaint" unless and until the complainant has been notified of the acceptance of matters as a complaint

- No informal communications with complainant or respondent on issues involved in the complaint

- Record each contact with the complainant, respondent and witnesses

Isler -051

# Communications

- Drafts of reports of findings are not to be shared with anyone outside of Civil Rights or with other agencies without the written approval of the Director

- Objectivity must be ensured and rules of evidence must be applied to ensure fairness in the process

- None of the parties involved in a complaint are to perceived as the investigator's "friends."

- Some people are very earnest and passionate in their beliefs. The investigator's role is to obtain reliable and relevant evidence and to objectively interpret it to allow a decision to be made on whether discrimination occurred.

Isler -052

# Caveats

- Some people are manipulators and understand the power of both persuasion and repetition.

- If you are going to allow one side of the argument to be expressed, fairness dictates that the other side of the issue get equal time in expressing its case.

- The investigator ought to control the pace and direction of the investigation and not be influenced by well-intended, but unsupported beliefs of any party involved in it.

Isler -053