Code of Federal Regulations]
[Title 49, Volume **1**, Parts **1** to 99]
[Revised as of October **1**, 1999]
From the U.S. Government Printing Office via GPO Access
[**CITE: 49CFR21.1**]

TITLE 49--TRANSPORTATION

Subtitle A--Office of the Secretary of Transportation

PART 21--NONDISCRIMINATION IN FEDERALLY-ASSISTED PROGRAMS
OF THE DEPARTMENT OF TRANSPORTATION--EFFECTUATION OF TITLE
VI OF THE CIVIL RIGHTS ACT OF 1964--Table of Contents

Sec. 21.**1**  Purpose.

    The purpose of this part is to effectuate the
provisions of title VI of the Civil Rights Act of 1964
(hereafter referred to as the Act) to the end that no
person in the United States shall, on the grounds of
race, color, or national origin, be excluded from
participation in, be denied the benefits of, or be
otherwise subjected to discrimination under any program or
activity receiving Federal financial assistance
from the Department of Transportation.


Sec. 21.**3**  Application of this part.

    (a) This part applies to any program for which Federal
financial assistance is authorized under a law administered
by the Department, including the federally assisted
programs and activities listed in appendix A to this part.
It also applies to money paid, property transferred, or
other Federal financial assistance extended under any
such program after the effective date of this part pursuant
to an application approved before that effective date. This
part does not
apply to:
    (1) Any Federal financial assistance by way of
insurance or guaranty contracts;
    (2) Money paid, property transferred, or other
assistance extended under any such program before the
effective date of this part, except where such assistance
was subject to the title VI regulations of any
agency whose responsibilities are now exercised by this
Department;

(3) Any assistance to any individual who is the ultimate beneficiary under any such program; or

(4) Any employment practice, under any such program, of any employer, employment agency, or labor organization, except to the extent described in Sec. 21.5(c).

The fact that a program or activity is not listed in appendix A to this part shall not mean, if title VI of the Act is otherwise applicable, that such program is not covered. Other programs under statutes now in force or hereinafter enacted may be added to appendix A to this part.

(b) In any program receiving Federal financial assistance in the form, or for the acquisition, of real property or an interest in real property, to the extent that rights to space on, over, or under any such property are included as part of the program receiving that assistance, the nondiscrimination requirement of this part shall extend to any facility located wholly or in part in that space.

Sec. 21.5  Discrimination prohibited.

(a) General. No person in the United States shall, on the grounds of race, color, or national origin be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under, any program to which this part applies.

(b) Specific discriminatory actions prohibited:

(1) A recipient under any program to which this part applies may not, directly or through contractual or other arrangements, on the grounds of race, color, or national origin.

(i) Deny a person any service, financial aid, or other benefit provided under the program;

(ii) Provide any service, financial aid, or other benefit to a person which is different, or is provided in a different manner, from that provided to others under the program;

(iii) Subject a person to segregation or separate treatment in any matter related to his receipt of any service, financial aid, or other benefit under the program;

(iv) Restrict a person in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid, or other benefit under the program;

(v) Treat a person differently from others in determining whether he satisfies any admission, enrollment,

quota, eligibility, membership, or other requirement or
condition which persons must meet in order to be
provided any service, financial aid, or other benefit
provided under the program;

(vi) Deny a person an opportunity to participate in the
program through the provision of services or otherwise or
afford him an opportunity to do so which is different from
that afforded others under the program; or

(vii) Deny a person the opportunity to participate as a
member of a planning, advisory, or similar body which is an
integral part of the program.

(2) A recipient, in determining the types of services,
financial aid, or other benefits, or facilities which will
be provided under any such program, or the class of person
to whom, or the situations in which, such services,
financial aid, other benefits, or facilities will
be provided under any such program, or the class of persons
to be afforded an opportunity to participate in any such
program; may not, directly or through contractual or other
arrangements, utilize criteria or methods of administration
which have the effect of subjecting persons to
discrimination because of their race, color, or national
origin, or have the effect of defeating or substantially
impairing accomplishment of the objectives of the program
with respect to individuals of a particular race, color, or
national origin.

(3) In determining the site or location of facilities,
a recipient or applicant may not make selections with the
purpose or effect of excluding persons from, denying them
the benefits of, or subjecting them to discrimination under
any program to which this regulation applies, on the
grounds of race, color, or national origin; or with the
purpose or effect of defeating or substantially impairing
the accomplishment of the objectives of the Act or this
part.

(4) As used in this section the services, financial
aid, or other benefits provided under a program receiving
Federal financial assistance include any service, financial
aid, or other benefit provided in or through a facility
provided with the aid of Federal financial assistance.

(5) The enumeration of specific forms of prohibited
discrimination in this paragraph does not limit the
generality of the prohibition in paragraph (a) of this
section.

(6) Examples demonstrating the application of the
provisions of this section to certain programs of the
Department of Transportation are

contained in appendix C of this part.

(7) This part does not prohibit the consideration of race, color, or national origin if the purpose and effect are to remove or overcome the consequences of practices or impediments which have restricted the availability of, or participation in, the program or activity receiving Federal financial assistance, on the grounds of race, color, or national origin. Where prior discriminatory practice or usage tends, on the grounds of race, color, or national origin to exclude individuals from participation in, to deny them the benefits of, or to subject them to discrimination under any program or activity to which this part applies, the applicant or recipient must take affirmative action to remove or overcome the effects of the prior discriminatory practice or usage. Even in the absence of prior discriminatory practice or usage, a recipient in administering a program or activity to which this part applies, is expected to take affirmative action to assure that no person is excluded from participation in or denied the benefits of the program or activity on the grounds of race, color, or national origin.

(c) Employment practices:

(1) Where a primary objective of a program of Federal financial assistance to which this part applies is to provide employment, a recipient or other party subject to this part shall not, directly or through contractual or other arrangements, subject a person to discrimination on the ground of race, color, or national origin in its employment practices under such program (including recruitment or recruitment advertising, hiring, firing, upgrading, promotion, demotion, transfer, layoff, termination, rates of pay or other forms of compensation or benefits, selection for training or apprenticeship, use of facilities, and treatment of employees). Such recipient shall take affirmative action to insure that applicants are employed, and employees are treated during employment, without regard to their race, color, or national origin. The requirements applicable to construction employment under any such program shall be those specified in or pursuant to Part III of Executive Order 11246 or any Executive order which supersedes it.

(2) Federal financial assistance to programs under laws funded or administered by the Department which have as a

primary objective the providing of employment include those
set forth in appendix B to this part.

(3) Where a primary objective of the Federal financial
assistance is not to provide employment, but discrimination
on the grounds of race, color, or national origin in the
employment practices of the recipient or other persons
subject to the regulation tends, on the grounds of
race, color, or national origin, to exclude individuals
from participation in, to deny them the benefits of, or to
subject them to discrimination under any program to which
this regulation applies, the provisions of paragraph (c)(1)
of this section shall apply to the employment practices of
the recipient or other persons subject to the regulation,
to the extent necessary to assure equality of opportunity
to, and nondiscriminatory treatment of, beneficiaries.

(d) A recipient may not make a selection of a site or
location of a facility if the purpose of that selection, or
its effect when made, is to exclude individuals from
participation in, to deny them the benefits of, or to
subject them to discrimination under any program or
activity to which this rule applies, on the grounds of
race, color, or national origin; or if the purpose is to,
or its effect when made will, substantially impair the
accomplishment of the objectives of this part.


Sec. 21.7  Assurances required.

(a) General. (1) Every application for Federal
financial assistance to carry out a program to which this
part applies, except a program to which paragraph (b) of
this section applies, and every application for
Federal financial assistance to provide a facility shall,
as a condition to its approval and the extension of any
Federal financial assistance pursuant to the application,
contain or be accompanied by, an assurance that the program
will be conducted or the facility operated in
compliance with all requirements imposed by or pursuant to
this part. Every program of Federal financial assistance
shall require the submission of such an assurance. In the
case where the Federal financial assistance is to provide
or is in the form of personal property, or real
property or interest therein or structures thereon, the
assurance shall obligate the recipient, or, in the case of
a subsequent transfer, the transferee, for the period
during which the property is used for a

purpose for which the Federal financial assistance is
extended or for another purpose involving the provision of
similar services or benefits, or for as long as the
recipient retains ownership or possession of the
property, whichever is longer. In all other cases the
assurance shall obligate the recipient for the period
during which Federal financial assistance is extended to
the program. In the case where the assistance is sought for
the construction of a facility or part of a facility, the
assurance shall in any event extend to the entire facility
and to facilities operated in connection therewith. The
Secretary shall specify the form of the foregoing
assurances for each program, and the extent to
which like assurances will be required of subgrantees,
contractors and subcontractors, transferees, successors
in interest, and other participants in the program. Any
such assurance shall include provisions which give the
United States a right to seek its judicial enforcement.
    (2) In the case where Federal financial assistance is
provided in the form of a transfer of real property,
structures, or improvements thereon, or interest therein,
from the Federal Government, the instrument effecting or
recording the transfer shall contain a covenant
running with the land assuring nondiscrimination for the
period during which the real property is used for a purpose
for which the Federal financial assistance is extended or
for another purpose involving the provision of similar
services or benefits. Where no transfer of property
or interest therein from the Federal Government is
involved, but property is acquired or improved under a
program of Federal financial assistance, the recipient
shall agree to include such covenant in any subsequent
transfer of such property. When the property is obtained
from the Federal Government, such covenant may also include
a condition coupled with a right to be reserved by the
Department to revert title to the property in the event of
a breach of the covenant where, in the discretion of the
Secretary, such a condition and right of reverter is
appropriate to the program under which the real property is
obtained and to the nature of the grant and the grantee. In
such event if a transferee of real property proposes to
mortgage or otherwise encumber the real property as
security for financing construction of new, or
improvement of existing, facilities on such property for
the purposes for which the property was transferred, the
Secretary may agree, upon request of the transferee and if
necessary to accomplish such financing,

and upon such conditions as he deems appropriate, to
subordinate such right of reversion to the lien of such
mortgage or other encumbrance.

(b) Continuing State programs. Every application by a
State or a State agency to carry out a program involving
continuing Federal financial assistance to which this part
applies (including the programs listed in appendix A to
this part) shall as a condition to its approval
and the extension of any Federal financial assistance
pursuant to the application: (1) Contain or be accompanied
by a statement that the program is (or, in the case of a
new program, will be) conducted in compliance with all
requirements imposed by or pursuant to this part, and
(2) provide or be accompanied by provision for such methods
of administration for the program as are found by the
Secretary to give reasonable guarantee that the applicant
and all recipients of Federal financial assistance under
such program will comply with all requirements imposed by
or pursuant to this part.

Sec. 21.**9**  Compliance information.

(a) Cooperation and assistance. The Secretary shall to
the fullest extent practicable seek the cooperation of
recipients in obtaining compliance with this part and shall
provide assistance and guidance to recipients to help them
comply voluntarily with this part.

(b) Compliance reports. Each recipient shall keep such
records and submit to the Secretary timely, complete, and
accurate compliance reports at such times, and in such form
and containing such information, as the Secretary may
determine to be necessary to enable him to ascertain
whether the recipient has complied or is complying with
this part. In the case of any program under which a primary
recipient extends Federal financial assistance to any other
recipient, such other recipient shall also submit such
compliance reports to the primary recipient as may be
necessary to enable the primary recipient to carry
out its obligations under this part. In general recipients
should have available for the Secretary racial and ethnic
data showing the extent to which members of minority groups
are beneficiaries of programs receiving Federal financial
assistance.

(c) Access to sources of information. Each recipient
shall permit access by the Secretary during normal business

hours to such of its books, records, accounts, and other
sources of information, and its facilities as may be
pertinent to ascertain compliance with this part. Where any
information required of a recipient is in the exclusive
possession of any other agency, institution, or
person and this agency, institution, or person fails or
refuses to furnish this information, the recipient shall so
certify in its report and shall set forth what efforts it
has made to obtain the information.

(d) Information to beneficiaries and participants. Each
recipient shall make available to participants,
beneficiaries, and other interested persons such
information regarding the provisions of this part and its
applicability to the program under which the recipient
receives Federal financial assistance, and make such
information available to them in such manner, as the
Secretary finds necessary to apprise such persons of the
protections against discrimination assured them by the Act
and this part.

Sec. 21.**11**  Conduct of investigations.

(a) Periodic compliance reviews. The Secretary shall
from time to time review the practices of recipients to
determine whether they are complying with this part.

(b) Complaints. Any person who believes himself or any
specific class of persons to be subjected to discrimination
prohibited by this part may by himself or by a
representative file with the Secretary a written complaint.
A complaint must be filed not later than 180 days
after the date of the alleged discrimination, unless the
time for filing is extended by the Secretary.

(c) Investigations. The Secretary will make a prompt
investigation whenever a compliance review, report,
complaint, or any other information indicates a possible
failure to comply with this part. The investigation will
include, where appropriate, a review of the pertinent
practices and policies of the recipient, the circumstances
under which the possible noncompliance with this part
occurred, and other factors relevant to a determination as
to whether the recipient has failed to comply with this
part.

(d) Resolution of matters. (1) If an investigation
pursuant to paragraph (c) of this section indicates a
failure to comply with this part, the Secretary will so
inform the recipient and the matter will be

resolved by informal means whenever possible. If it has
been determined that the matter cannot be resolved by
informal means, action will be taken as provided for in
Sec. 21.13.

(2) If an investigation does not warrant action
pursuant to paragraph (d)(1) of this section the Secretary
will so inform the recipient and the complainant, if any,
in writing.

(e) Intimidatory or retaliatory acts prohibited. No
recipient or other person shall intimidate, threaten,
coerce, or discriminate against any individual for the
purpose of interfering with any right or privilege secured
by section 601 of the Act or this part, or because he
has made a complaint, testified, assisted, or participated
in any manner in an investigation, proceeding, or hearing
under this part. The identity of complainants shall be kept
confidential except to the extent necessary to carry out
the purposes of this part, including the conduct
of any investigation, hearing, or judicial proceeding
arising thereunder.

Sec. 21.**13**   Procedure for effecting compliance.

(a) General. If there appears to be a failure or
threatened failure to comply with this part, and if the
noncompliance or threatened noncompliance cannot be
corrected by informal means, compliance with
this part may be effected by the suspension or termination
of or refusal to grant or to continue Federal financial
assistance or by any other means authorized by law. Such
other means may include, but are not
limited to: (1) A reference to the Department of Justice
with a recommendation that appropriate proceedings be
brought to enforce any rights of the United States under
any law of the United States (including other titles of the
Act), or any assurance or other contractual undertaking,
and (2) any applicable proceeding under State or local law.
(b) Noncompliance with Sec. 21.7. If an applicant fails or
refuses to furnish an assurance required under Sec. 21.7 or
otherwise fails or refuses to comply with a requirement
imposed by or pursuant to that section, Federal financial
assistance may be refused in accordance with the procedures
of paragraph (c) of this section. The Department shall
not be required to provide assistance in such a case during
the pendency of the administrative proceedings under such
paragraph. However, subject to Sec. 21.21, the Department

shall continue assistance during the pendency of such
proceedings where such assistance is due and payable
pursuant to an application approved prior to the effective
date of this part.

(c) Termination of or refusal to grant or to continue
Federal financial assistance. No order suspending,
terminating, or refusing to grant or continue Federal
financial assistance shall become effective
until:

(1) The Secretary has advised the applicant or
recipient of his failure to comply and has determined that
compliance cannot be secured by voluntary means;

(2) There has been an express finding on the record,
after opportunity for hearing, of a failure by the
applicant or recipient to comply with a requirement imposed
by or pursuant to this part;

(3) The action has been approved by the Secretary
pursuant to Sec. 21.17(e); and

(4) The expiration of 30 days after the Secretary has
filed with the committee of the House and the committee of
the Senate having legislative jurisdiction over the program
involved, a full written report of the circumstances and
the grounds for such action.

Any action to suspend or terminate or to refuse to grant or
to continue Federal financial assistance shall be limited
to the particular political entity, or part thereof, or
other applicant or recipient as to whom such a finding has
been made and shall be limited in its effect to
the particular program, or part thereof, in which such
noncompliance has been so found.

(d) Other means authorized by law. No action to effect
compliance with title VI of the Act by any other means
authorized by law shall be taken by this Department until:

(1) The Secretary has determined that compliance cannot
be secured by voluntary means;

(2) The recipient or other person has been notified of
its failure to comply and of the action to be taken to
effect compliance; and

(3) The expiration of at least 10 days from the mailing
of such notice to the recipient or other person. During
this period of at least 10 days, additional efforts shall
be made to persuade the recipient or other person to comply
with the regulation and to take such corrective
action as may be appropriate.

Sec. 21.**15**  Hearings.

(a) Opportunity for hearing. Whenever an opportunity for a hearing is required by Sec. 21.13(c), reasonable notice shall be given by registered or certified mail, return receipt requested, to the affected applicant or recipient. This notice shall advise the applicant or recipient of the action proposed to be taken, the specific provision under which the proposed action against it is to be taken, and the matters of fact or law asserted as the basis for this action, and either: (1) Fix a date not less than 20 days after the date of such notice within which the applicant or recipient may request of the Secretary that the matter be scheduled for hearing or (2) advise the applicant or recipient that the matter in question has been set down for hearing at a stated place and time. The time and place so fixed shall be reasonable and shall be subject to change for cause. The complainant, if any, shall be advised of the time and place of the hearing. An applicant or recipient may waive a hearing and submit written information and argument for the record. The failure of an applicant or recipient to request a hearing under this paragraph or to appear at a hearing for which a date has been set shall be deemed to be a waiver of the right to a hearing under section 602 of the Act and Sec. 21.13(c) and consent to the making of a decision on the basis of such information as is available.

(b) Time and place of hearing. Hearings shall be held at the offices of the Department in Washington, D.C., at a time fixed by the Secretary unless he determines that the convenience of the applicant or recipient or of the Department requires that another place be selected. Hearings shall be held before the Secretary, or at his discretion, before a hearing examiner appointed in accordance with section 3105 of title 5, United States Code, or detailed under section 3344 of title 5, United States Code.

(c) Right to counsel. In all proceedings under this section, the applicant or recipient and the Department shall have the right to be represented by counsel.

(d) Procedures, evidence, and record. (1) The hearing, decision, and any administrative review thereof shall be conducted in conformity with sections 554 through 557 of title 5, United States Code, and in accordance with such rules of procedure as are proper (and not inconsistent with this section) relating to the conduct of the hearing, giving of notices subsequent to those provided for in paragraph (a) of this section, taking of testimony,

exhibits, arguments and briefs, requests for findings, and
other related matters. Both the Department and the
applicant or recipient shall be entitled to introduce all
relevant evidence on the issues as stated in the notice for
hearing or as determined by the officer conducting the
hearing at the outset of or during the hearing.

(2) Technical rules of evidence do not apply to
hearings conducted pursuant to this part, but rules or
principles designed to assure production of the most
credible evidence available and to subject
testimony to test by cross-examination shall be applied
where reasonably necessary by the officer conducting the
hearing. The hearing officer may exclude irrelevant,
immaterial, or unduly repetitious evidence. All
documents and other evidence offered or taken for the
record shall be open to examination by the parties and
opportunity shall be given to refute facts and arguments
advanced on either side of the issues. A transcript shall
be made of the oral evidence except to the extent the
substance thereof is stipulated for the record. All
decisions shall be based upon the hearing record and
written findings shall be made.

(e) Consolidated or joint hearings. In cases in which
the same or related facts are asserted to constitute
noncompliance with this part with respect to two or more
programs to which this part applies, or noncompliance with
this part and the regulations of one or more other
Federal departments or agencies issued under title VI of
the Act, the Secretary may, by agreement with such other
departments or agencies, where applicable, provide for the
conduct of consolidated or joint hearings, and for the
application to such hearings of rules or procedures not
inconsistent with this part. Final decisions in such
cases, insofar as this regulation is concerned, shall be
made in accordance with Sec. 21.17.


Sec. 21.**17**  Decisions and notices.

(a) Procedure on decisions by hearing examiner. If the
hearing is held by a hearing examiner, the hearing examiner
shall either make an initial decision, if so authorized, or
certify the entire record including his recommended
findings and proposed decision to the Secretary for a final
decision, and a copy of such initial decision or
certification shall be mailed to the applicant or
recipient. Where the initial decision is made by the

hearing examiner the applicant or recipient may, within 30 days after the mailing of such notice of initial decision, file with the Secretary his exceptions to the initial decision, with his reasons therefor. In the absence of exceptions, the Secretary may, on his own motion, within 45 days after the initial decision, serve on the applicant or recipient a notice that he will review the decision. Upon the filing of such exceptions or of notice of review, the Secretary shall review the initial decision and issue his own decision thereon including the reasons therefor. In the absence of either exceptions or a notice of review the initial decision shall, subject to paragraph (e) of this section, constitute the final decision of the Secretary.

(b) Decisions on record or review by the Secretary. Whenever a record is certified to the Secretary for decision or he reviews the decision of a hearing examiner pursuant to paragraph (a) of this section, or whenever the Secretary conducts the hearing, the applicant or recipient shall be given reasonable opportunity to file with him briefs or other written statements of its contentions, and a written copy of the final decision of the Secretary shall be sent to the applicant or recipient and to the complainant, if any.

(c) Decisions on record where a hearing is waived. Whenever a hearing is waived pursuant to Sec. 21.15, a decision shall be made by the Secretary on the record and a written copy of such decision shall be sent to the applicant or recipient, and to the complainant, if any.

(d) Rulings required. Each decision of a hearing examiner or the Secretary shall set forth his ruling on each finding, conclusion, or exception presented, and shall identify the requirement or requirements imposed by or pursuant to this part with which it is found that the applicant or recipient has failed to comply.

(e) Approval by Secretary. Any final decision by an official of the Department, other than the Secretary personally, which provides for the suspension or termination of, or the refusal to grant or continue Federal financial assistance, or the imposition of any other sanction available under this part or the Act, shall promptly be transmitted to the Secretary personally, who may approve such decision, may vacate it, or remit or mitigate any sanction imposed.

(f) Content of orders. The final decision may provide for suspension or termination of, or refusal to grant or continue Federal financial

assistance, in whole or in part, under the program
involved, and may contain such terms, conditions, and other
provisions as are consistent with and will effectuate the
purposes of the Act and this part, including provisions
designed to assure that no Federal financial
assistance will thereafter be extended under such programs
to the applicant or recipient determined by such decision
to be in default in its performance of an assurance given
by it pursuant to this part, or to have otherwise failed to
comply with this part, unless and until it corrects its
noncompliance and satisfies the Secretary that it will
fully comply with this part.

(g) Post termination proceedings. (1) An applicant or
recipient adversely affected by an order issued under
paragraph (f) of this section shall be restored to full
eligibility to receive Federal financial assistance if it
satisfies the terms and conditions of that order for such
eligibility or if it brings itself into compliance with
this part and provides reasonable assurance that it will
fully comply with this part.

(2) Any applicant or recipient adversely affected by an
order entered pursuant to paragraph (f) of this section may
at any time request the Secretary to restore fully its
eligibility to receive Federal financial assistance. Any
such request shall be supported by information showing that
the applicant or recipient has met the requirements of
paragraph (g)(1) of this section. If the Secretary
determines that those requirements have been satisfied, he
shall restore such eligibility.

(3) If the Secretary denies any such request, the
applicant or recipient may submit a request for a hearing
in writing, specifying who it believes such official to
have been in error. It shall thereupon be given an
expeditious hearing, with a decision on the record in
accordance with rules or procedures issued by the
Secretary. The applicant or recipient will be restored to
such eligibility if it proves at such a hearing that it
satisfied the requirements of paragraph (g)(1)
of this section.

While proceedings under this paragraph are pending, the
sanctions imposed by the order issued under paragraph (f)
of this section shall remain in effect.


Sec. 21.**19**  Judicial review.

Action taken pursuant to section 602 of the Act is subject to judicial review as provided in section 603 of the Act.

Sec. **21.21**  Effect on other regulations, forms, and instructions.

(a) Effect on other regulations. All regulations, orders, or like directions issued before the effective date of this part by any officer of the Department which impose requirements designed to prohibit any discrimination against individuals on the grounds of race, color, or national origin under any program to which this part applies, and which authorize the suspension or termination of or refusal to grant or to continue Federal financial assistance to any applicant for a recipient of such assistance under such program for failure to comply with such requirements, are hereby superseded to the extent that such discrimination is prohibited by this part, except that nothing in this part may be considered to relieve any person of any obligation assumed or imposed under any such superseded regulation, order, instruction, or like direction before the effective date of this part. Nothing in this part, however, supersedes any of the following (including future amendments thereof): (1) Executive Order 11246 (3 CFR, 1965 Supp., p. 167) and regulations issued thereunder or (2) any other orders, regulations, or instructions, insofar as such orders, regulations, or instructions prohibit discrimination on the ground of race, color, or national origin in any program or situation to which this part is inapplicable, or prohibit discrimination on any other ground.

(b) Forms and instructions. The Secretary shall issue and promptly make available to all interested persons forms and detailed instructions and procedures for effectuating this part as applied to programs to which this part applies and for which he is responsible.

(c) Supervision and coordination. The Secretary may from time to time assign to officials of the Department, or to officials of other departments or agencies of the Government with the consent of such departments or agencies, responsibilities in connection with the effectuation of the purposes of title VI of the Act and this part (other than responsibility for final decision as provided in Sec. **21.17**),

including the achievement of effective coordination and
maximum uniformity within the Department and within the
Executive Branch of the Government in the application of
title VI and this part to similar programs and in similar
situations. Any action taken, determination made
or requirement imposed by an official of another department
or agency acting pursuant to an assignment of
responsibility under this paragraph shall have the same
effect as though such action had been taken by the
Secretary of this Department.

Sec. 21.**23**  Definitions.

    Unless the context requires otherwise, as used in this
part:
    (a) Applicant means a person who submits an
application, request, or plan required to be approved by
the Secretary, or by a primary recipient, as a condition to
eligibility for Federal financial assistance, and
``application'' means such an application, request, or
plan.
    (b) Facility includes all or any part of structures,
equipment, or other real or personal property or interests
therein, and the provision of facilities includes the
construction, expansion, renovation, remodeling, alteration
or acquisition of facilities.
    (c) Federal financial assistance includes:
    (1) Grants and loans of Federal funds;
    (2) The grant or donation of Federal property and
interests in property;
    (3) The detail of Federal personnel;
    (4) The sale and lease of, and the permission to use
(on other than a casual or transient basis), Federal
property or any interest in such property without
consideration or at a nominal consideration, or at a
consideration which is reduced for the purpose of assisting
the recipient, or in recognition of the public interest to
be served by such sale or lease to the recipient; and
    (5) Any Federal agreement, arrangement, or other
contract which has as one of its purposes the provision of
assistance.
    (d) Primary recipient means any recipient that is
authorized or required to extend Federal financial
assistance to another recipient for the purpose of carrying
out a program.
    (e) Program includes any program, project, or activity
for the provision of services, financial aid, or other

benefits to individuals (including education or training, health, welfare, rehabilitation, housing, or other services, whether provided through employees of the recipient of Federal financial assistance or provided by others through contracts or other arrangements with the recipient, and including work opportunities), or for the provision of facilities for furnishing services, financial aid or other benefits to individuals. The services, financial aid, or other benefits provided under a program receiving Federal financial assistance shall be deemed to include any services, financial aid, or other benefits provided with the aid of Federal financial assistance or with the aid of any non-Federal funds, property, or other resources required to be expended or made available for the program to meet matching requirements or other conditions which must be met in order to receive the Federal financial assistance, and to include any services, financial aid or other benefits provided in or through a facility provided with the aid of Federal financial assistance or such non-Federal resources.

(f) Recipient may mean any State, territory, possession, the District of Columbia, or Puerto Rico, or any political subdivision thereof, or instrumentality thereof, any public or private agency, institution, or organization, or other entity, or any individual, in any State, territory, possession, the District of Columbia, or Puerto Rico, to whom Federal financial assistance is extended, directly or through another recipient, for any program, including any successor, assignee, or transferee thereof, but such term does not include any ultimate beneficiary under any such program.

(g) Secretary means the Secretary of Transportation or, except in Sec. 21.17 (e), any person to whom he has delegated his authority in the matter concerned.

Appendix A to Part 21--Activities to which This Part Applies

1. Use of grants made in connection with Federal-aid highway systems (**23** U.S.C. 101 et seq.).
2. Use of grants made in connection with the Highway Safety Act of 1966 (**23** U.S.C. 401 et seq.).
3. Use of grants in connection with the National Traffic and Motor Vehicle Safety Act of 1966 (15 U.S.C. 1391-1409, 1421-1425).
4. Lease of real property and the grant of permits, licenses, easements and rights-of-way covering real

property under control of the Coast Guard (14 U.S.C. 93 (n) and (o)).

5. Utilization of Coast Guard personnel and facilities by any State, territory, possession, or political subdivision thereof (14 U.S.C. 141(a)).

6. Use of Coast Guard personnel for duty in connection with maritime instruction and training by the States, territories, and Puerto Rico (14 U.S.C. 148).

7. Use of obsolete and other Coast Guard material by sea scout service of Boy Scouts of America, any incorporated unit of the Coast Guard auxiliary, and public body or private organization not organized for profit (14 U.S.C. 641(a)).

8. U.S. Coast Guard Auxiliary Program (14 U.S.C. 821-832).

9. Use of grants for the support of basic scientific research by nonprofit institutions of higher education and nonprofit organizations whose primary purpose is conduct of scientific research (42 U.S.C. 1891).

10. Use of grants made in connection with the Federal-aid Airport Program (secs. 1-15 and 17-20 of the Federal Airport Act, 49 U.S.C. 1101-1114, 1116-1120).

11. Use of U.S. land acquired for public airports under:

   a. Section 16 of the Federal Airport Act, 49 U.S.C. 1115; and

   b. Surplus Property Act (sec. 13(g) of the Surplus Property Act of 1944, 50 U.S.C. App. 1622(g), and sec. 3 of the Act of Oct. 1, 1949, 50 U.S.C. App. 1622b).

12. Activities carried out in connection with the Aviation Education Program of the Federal Aviation Administration under sections 305, 311, and 313(a) of the Federal Aviation Act of 1958, as amended (49 U.S.C. 1346, 1352, and 1354(a)).

13. Use of grants and loans made in connection with Urban Mass Transportation Capital Facilities Grant and Loan Program--Urban Mass Transportation Act of 1964, as amended (49 U.S.C. 1602).

14. Use of grants made in connection with Urban Mass Transportation Research and Demonstration Grant Program--Urban Mass Transportation Act of 1964, as amended (49 U.S.C. 1605).

15. Use of grants made in connection with Urban Mass Transportation Technical Studies Grant Program--Urban Mass Transportation Act of 1964, as amended (49 U.S.C. 1607a).

16. Use of grants made in connection with Urban Mass Transportation Managerial Training Grant Program--Urban

Mass Transportation Act of 1964, as amended (49 U.S.C. 1607b).

17. Use of grants made in connection with Urban Mass Transportation Grants for Research and Training Programs in Institutions of Higher Learning--Urban Mass Transportation Act of 1964, as amended (49 U.S.C. 1607c).

18. Use of grants made in connection with the High Speed Ground Transportation Act, as amended (49 U.S.C. 631-642).

Appendix B to Part 21--Activities to Which This Part Applies When a   Primary Objective of the Federal Financial Assistance is to Provide

Employment

1. Appalachia Regional Development Act of 1965 (40 U.S.C. App. 1 et seq.).

Appendix C to Part 21--Application of Part 21 to Certain Federal Financial Assistance of the Department of Transportation

Nondiscrimination on Federally Assisted Projects

(a) Examples. The following examples, without being exhaustive, illustrate the application of the nondiscrimination provisions of this part on projects receiving Federal financial assistance under the programs of certain Department of Transportation operating administrations:

(1) Federal Aviation Administration. (i) The airport sponsor or any of his lessees, concessionaires, or contractors may not differentiate between members of the public because of race, color, or national origin in furnishing, or admitting to, waiting rooms, passenger holding areas, aircraft tiedown areas, restaurant facilities, restrooms, or facilities operated under the compatible land use concept.

(ii) The airport sponsor and any of his lessees, concessionaires, or contractors must offer to all members of the public the same degree and type of service without regard to race, color, or national origin. This rule applies to fixed base operators, restaurants, snack bars, gift shops, ticket counters, baggage handlers, car rental agencies,limousines and taxis franchised by the airport sponsor, insurance

underwriters, and other businesses catering to the public at the airport.

(iii) An aircraft operator may not be required to park his aircraft at a location that is less protected, or less accessible from the terminal facilities, than locations offered to others, because of his race, color, or national origin.

(iv) The pilot of an aircraft may not be required to help more extensively in fueling operations, and may not be offered less incidental service (such as windshield wiping), than other pilots, because of his race, color, or national origin.

(v) No pilot or crewmember eligible for access to a pilot's lounge or to unofficial communication facilities such as a UNICOM frequency may be restricted in that access because of his race, color, or national origin.

(vi) Access to facilities maintained at the airport by air carriers or commercial operators for holders of first-class transportation tickets or frequent users of the carrier's or operator's services may not be restricted on the basis of race, color, or national origin.

(vii) Passengers and crewmembers seeking ground transportation from the airport may not be assigned to different vehicles, or delayed or embarrassed in assignment to vehicles, by the airport sponsor or his lessees, concessionaires, or contractors, because of race, color, or national origin.

(viii) Where there are two or more sites having equal potential to serve the aeronautical needs of the area, the airport sponsor shall select the site least likely to adversely affect existing communities. Such site selection shall not be made on the basis of race, color, or national origin.

(ix) Employment at obligated airports, including employment by tenants and concessionaires shall be available to all regardless of race, creed, color, sex, or national origin. The sponsor shall coordinate his airport plan with his local transit authority and the Urban Mass Transportation Administration to assure public transportation, convenient to the disadvantaged areas of nearby communities to enhance employment opportunities for the disadvantaged and minority population.

(x) The sponsor shall assure that the minority business community in his area is advised of the opportunities offered by airport concessions, and that bids are solicited from such qualified minority firms, and

awards made without regard to race, color, or national
origin.

(2) Federal Highway Administration. (i) The State,
acting through its highway department, may not discriminate
in its selection and retention of contractors, including
without limitation, those whose services are retained for,
or incidental to, construction, planning, research, highway
safety, engineering, property management, and fee
contracts and other commitments with person for services
and expenses incidental to the acquisition of right-of-way.

(ii) The State may not discriminate against eligible
persons in making relocation payments and in providing
relocation advisory assistance where relocation is
necessitated by highway right-of-way acquisitions.

(iii) Federal-aid contractors may not discriminate in
their selection and retention of first-tier subcontractors,
and first-tier subcontractors may not discriminate in their
selection and retention of second-tier subcontractors, who
participate in Federal-aid highway construction,
acquisition of right-of-way and related projects,
including those who supply materials and lease equipment.

(iv) The State may not discriminate against the
traveling public and business users of the federally
assisted highway in their access to and use of the
facilities and services provided for public accommodations
(such as eating, sleeping, rest, recreation, and vehicle
servicing) constructed on, over or under the right-of-way
of such highways.

(v) Neither the State, any other persons subject to
this part, nor its contractors and subcontractors may
discriminate in their employment practices in connection
with highway construction projects or other
projects assisted by the Federal Highway Administration.

(vi) The State shall not locate or design a highway in
such a manner as to require, on the basis of race, color,
or national origin, the relocation of any persons.

(vii) The State shall not locate, design, or construct
a highway in such a manner as to deny reasonable access to,
and use thereof, to any persons on the basis of race,
color, or national origin.

(3) Urban Mass Transportation Administration. (i) Any
person who is, or seeks to be, a patron of any public
vehicle which is operated as a part of, or in conjunction
with, a project shall be given the same access, seating,
and other treatment with regard to the use of such
vehicle as other persons without regard to their race,
color, or national origin.

(ii) No person who is, or seeks to be, an employee of the project sponsor or lessees, concessionaires, contractors, licensees, or any organization furnishing public transportation service as a part of, or in conjunction with, the project shall be treated less favorably than any other employee or applicant with regard to hiring, dismissal, advancement, wages, or any other conditions and benefits of employment,on the basis of race, color, or national origin.

(iii) No person or group of persons shall be discriminated against with regard to the routing, scheduling, or quality of service of transportation service furnished as a part of the project on the basis of race, color, or national origin. Frequency of service, age and quality of vehicles assigned to routes, quality of stations serving different routes, and location of routes may not be determined on the basis of race, color, or national origin.

(iv) The location of projects requiring land acquisition and the displacement of persons from their residences and businesses may not be determined on the basis of race, color, or national origin.

(b) Obligations of the airport operator-- (1) Tenants, contractors, and concessionaires. Each airport operator shall require each tenant, contractor, and concessionaire who provides any activity, service, or facility at the airport under lease, contract with, or franchise from the airport, to covenant in a form specified by the Administrator, Federal Aviation Administration, that he will comply with the nondiscrimination requirements of this part.

(2) Notification of beneficiaries. The airport operator shall: (i) Make a copy of this part available at his office for inspection during normal working hours by any person asking for it, and (ii) conspicuously display a sign, or signs, furnished by the FAA, in the main public area or areas of the airport, stating that discrimination based on race, color, or national origin is prohibited on the airport.

(3) Reports. Each airport owner subject to this part shall, within 15 days after he receives it, forward to the Area Manager of the FAA Area in which the airport is located a copy of each written complaint charging discrimination because of race, color, or national origin by any person subject to this part, together with a statement describing all actions taken to resolve the matter, and the results thereof. Each

airport operator shall submit to the area manager of the
FAA area in which the airport is located a report for the
preceding year on the date and in a form prescribed by the
Federal Aviation Administrator.

[35 FR 10080, June 18, 1970, as amended by Amdt. 21-1, 38
FR 5875, Mar. 5, 1973; Amdt. 21-3, 40 FR 14318, Mar. 31,
1975]