UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Duxbury Trucking, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 04-12118-NG |
| v. ) | |
| ) | |
| Massachusetts Highway Department, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF DUXBURY TRUCKING INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THE EQUITABLE TOLLNG OF THE STATUTE OF LIMITATIONS ON ITS DUE PROCESS CLAIMS**

NOW COMES Duxbury Trucking, Inc. ("Plaintiff") by and through counsel, Shaheen & Gordon, P.A., and in accord with the Court's September 13, 2005 MEMORANDUM AND ORDER RE: MOTION TO DISMISS ("Order") submits this memorandum in support of its claim that the applicable statutes of limitations regarding Plaintiff's due process claims are subject to equitable tolling.[1]

**I.**

**INTRODUCTION**

The Court in its September 13, 2005 Order instructed the Plaintiff at pp. 34-35:

- to supplement the record for the purposes of making out a claim that the state defendants were somehow complicit in the FHA's allegedly misleading assurances to Duxbury, and that the law recognizes the state's actions as warranting equitable tolling of the statute of limitations on the due process claim. (Order, p. 34).

---

[1] See Order at pp. 34-35.

- In making its equitable estoppel showing, plaintiff must also attend to the following questions: 1) Assuming that the FHA's alleged assurances and delays should toll the statute of limitations during the pendency of Duxbury's discrimination complaint and FOIA request, why should the tolling apply to the entire period when even the most efficient reviews take some time?; 2) Why should the period during which Duxbury awaited resolution of its motion for reconsideration apply when it already had notice of an adverse determination?; and 3) Why should tolling apply here at all when the FHA complaint was grounded in claims of sex discrimination, while the only remaining issue now is the alleged due process violation? (Order, pp. 34-35).

## II.

### Massachusetts Turnpike Authority Defendant Lorenzo Parra's[2] ("MTA" and or "Parra") Actions Warrant Equitable Tolling of the Statute of Limitations.

By Orders dated October 18, 2005 and December 8, 2005, the Court granted Plaintiff an extension of time to supplement the record with regard to its contention that the statute of limitations regarding its due process claims was subject to equitable tolling.

1.  By letter dated February 2, 2006,[3] counsel for MTA responded to Plaintiff's counsel's discovery requests concerning if the MTA had ever been contacted by official representatives of the defendant Federal High Administration ("FHA") with regard to the FHA investigation and/or review of Plaintiff's September 2000 Complaint filed with the FHA.

MTA counsel Peter N. Kochansky's February 2, 2006 letter provides a timeline with a brief explanation of the communications between MTA and FHA with regard to

---

[2] Plaintiff's Motion to Amend its Complaint to add Lorenzo Parra, Director, MTA's Office of Civil Rights was granted in the Court's September 13, 2005 Order.  See Footnote 3.

[3] By agreement between counsel, the MTA letter and all of the documents included with the letter are filed under seal and should be considered as Exhibit 1 to this pleading.  MTA individual defendant Parra's involvement with the FHA Duxbury investigation is detailed in the February 2, 2006 correspondence.

2

Plaintiff's Complaint.  While the letter speaks for itself in terms of the time delays between the FHA requests for information and the MTA responses, the Court is asked to review Attorney Kochansky's letter with attachments (see Exhibit ("Ex.") 1, MTA 001-MTA 046) against the affidavits attached to the Federal Defendants' Supplemental Memorandum in Support of the Motion to Dismiss ("FDSM"), filed on or about October 21, 2005 as well as Plaintiff's Response to the Federal Defendants' Supplemental Memorandum in Support of Motion to Dismiss ("Response") filed on or about November 28, 2005.

Of note, as detailed in Plaintiff's Response, FHA Investigator Mr. Peter Silva's initial investigative report was rejected by federal defendant Morris[4], and federal defendant Brenda Armstead was instructed by Mr. Morris to redo the investigation.  In her affidavit attached to the Federal Defendants' Supplemental Memorandum, Ms. Armstead states that she visited Boston in February 2002 interviewing witnesses and reviewing documents, and then submitted in April 2002 a draft report to Mr. Morris.  (FDSM, Para. 7, Ex. 1).  Mr. Morris rejected the Armstead draft because he was "not satisfied that a thorough, comprehensive investigation and coherent analysis of the relevant Title IV issues has been conducted at this point." (FDSM, Para. 5, Ex. 4).

Attached as Exhibit 7 to the Federal Defendants' Memorandum is an undated document entitled "FHWA Office of Civil Rights Report on Its Review of the Trucking Situation in Boston."[5]  Note the document is a "review" and not an investigative report.

---

[4] Mr. Silva's detailed request to the MTA for information is at MTA 005-010, Ex. 1.  This request should be contrasted with that of Ms. Armstead to the MTA. See MTA 012, Ex. 1.

[5] This document details the systemic failure of the named federal and State individual defendants and their respective agencies to monitor, review and enforce on the "Big Dig" project mandatory DBE laws and regulations.

3

It is unclear whether Exhibit 7 is the "final report" Mr. Morris refers to in his affidavit. What is clear is that Mr. Morris did not complete his investigation of Plaintiff's Complaint until February 27, 2003, ten months after receiving Ms. Armstead's draft report.  See FDSM Ex. 8.  Mr. Morris' objectives for his Boston trip, including meeting with the MTA, are at MTA 045-046, Ex. 1.

Ms. Armstead submitted her report to Mr. Morris in April 2002.  In the documents attached to Attorney Kochansky's February 2, 2006 letter is an email dated March 23, 2002 from Ms. Armstead to MTA in-house attorney Kimberly B. Kialky stating "the following information is needed in the on-going investigation of the Duxbury Trucking Complaint."[6]  There follows a detailed four-point request for information from "Records which show all trucking firms similar to the Duxbury Trucking firm.  Please include the following information for each trucking firm."

Ten weeks later, and after Ms. Armstead had submitted her draft report, a report rejected by Mr. Morris for the reasons stated in his affidavit, Attorney Kialky responded. Attorney Kialky's June 11, 2002 letter, in addition to the ten weeks in the making, is non-responsive; it does not provide the requested DBE contractor information. (See MTA 013-016, Ex. 1.)[7]

It is unclear whether Ms. Armstead gave up waiting for Attorney Kialky's reply and submitted her subsequently rejected draft report without the requested comprehensive DBE information.  But what is clear from Mr. Morris' affidavit and the exhibits attached to the Federal Defendants' Supplemental Memorandum, Mr. Morris spent 10 months

---

[6]  The document is bates stamped MTA 012 within Ex. 1 filed under seal.

[7]  While the Kialky correspondence attached documents (MTA 017-044, Ex. 1), the documents do not provide the requested DBE information.

4

attempting to track down the Armstead requested DBE information, (see MTA 045-046, Ex. 1), and the above-noted FHA "Boston Trucking Situation Review" document focuses on the State defendants, MTA and MHD[8] and their responsible officials, for systemic failure to monitor, review, enforce, and correct the failure of the Big-Dig contractors at all tiers.[9]

The failure of MTA's in-house counsel to timely respond to Ms. Armstead's requests make the MTA and Lorenzo Parra, Director of the Office of Civil Rights, "complicit" in the FHA's misleading assurances, assurances detailed in Duxbury's Response to the Federal Defendants' Supplemental Memorandum, upon which Plaintiff relied, a reliance reasonably based after consideration of the Verified Complaint in this matter, the MTA response and documents, the Federal Defendants' Supplemental Memorandum with exhibits and Plaintiff's Response thereto with its exhibits.

### III.

**The Actions of the Individual Federal Defendants and Individual State Defendants Warrant Equitable Tolling of the Statute of Limitations on Plaintiff's Due Process Claims.**

The United States Supreme Court has made clear that "cases may arise where the equities in favor of tolling the limitations period are 'so great that deference to the agency's judgment is inappropriate.' Eldridge, 424 U.S. at 330." Bowen v. New York, 476 U.S. 467, 477 (1986)

The Bowen opinion finds, on facts as explained by the Court of Appeals, "the equities in favor of tolling are compelling."

---

[8] The Court granted MHD's Motion for Entry of Final Judgment Pursuant to FRCP 54(b) on September 20, 2005.

[9] Mandated DBE federal laws and regulations require all contractors regardless of tier to comply with the DBE provisions of federal laws and regulations.

> "All of the class members who permitted their administrative or judicial remedies to expire were entitled to believe that their Government's determination of ineligibility was the considered judgment of an agency faithfully executing the laws of the United States. Though they knew of the denial or loss of benefits, they did not and could not know that those adverse decisions had [*481] been made on the basis of a systematic procedural irregularity that rendered them subject to court challenge. Where the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights, <u>statutes of limitations have been tolled until such time as plaintiffs had a reasonable opportunity to learn the facts</u> concerning the cause of action. Since in this case <u>the full extent of the Government's clandestine policy was uncovered only in the course of this litigation</u>, all class members may pursue this action notwithstanding the 60-day requirement." *742 F.2d, at 738* (citations omitted).

<u>Id.</u> at 475 (emphasis added).

Brown makes clear that the "equities" in favor of tolling may, as in this matter, be "uncovered only in the course of this litigation."

As the Court's September 13, 2005 Order notes, and as the facts of record "uncovered" by the Federal Defendants' long overdue response to Plaintiff's Freedom of Information Act ("FOIA") request reveal, as detailed in the Plaintiff's Response to the Defendants' Supplemental Memorandum, and the MTA's counsel's February 2, 2006 letter and enclosures, also "uncovered" during the course of litigation, the State and federal defendants' failure to recognize and protect Plaintiff's federally protected property rights as a DBE contractor demand the application of equities to toll the statute of limitations.

The Court directed Plaintiff to attend to three questions (Order at pp. 34-35).

1) Assuming that the FHA's allege assurances and delays should toll the statute of limitations during the pendency of Duxbury's discrimination complaint

6

and FOIA request, why should the tolling apply to the entire period when even the most efficient reviews take some time?

Plaintiff incorporates by reference its Response to Federal Defendants' Supplemental Memorandum in Support of Motion to Dismiss ("Response") filed on November 18, 2005. As the Response makes clear, Plaintiff first learned on November 10, 2005 of the FHA's self-made and named "swamp" into which the investigation of Plaintiff's FHA complaint had fallen and subsequently drowned. While Plaintiff's Federal Court Complaint is verified with regard to Plaintiff's contentions concerning the FHA's assurances and delays with regard to its investigative report and findings, the FHA administrator Isler's November 10, 2005 FOIA response documents[10] verify Plaintiff's contentions that Plaintiff reasonably relied on FHA official assurances, and that while applicable federal regulations required the investigation process to be "prompt",[11] the facts of record reveal a systemic and deceptive failure of process at all levels of the FHA compounded by the MTA's failure to timely produce relevant and material documents requested by FHA. While Plaintiff believes that Mr. Silva's draft investigative report was complete and, perhaps, even prompt, it was rejected by Mr. Silva's superiors for reasons which appear to have no basis in fact or law. As a result, Plaintiff asserts that the "swamp" into which Plaintiff's Complaint was dumped does not, under the <u>Bowen</u> standards, merit any consideration for anything other than a tolling period that begins upon the September 2000 filing of the Complaint.

---

[10] <u>See</u> Ex. 1 to Response.
[11] <u>See</u> Ex. 7 to Response.

  2)  Why should the period during which Duxbury awaited resolution of its motion for reconsideration apply when it already had notice of an adverse determination?; and

The inquiry of the Court is a fair one. The Plaintiff's first FOIA request was made on June 23, 2003,[12] within a week of the receipt of the June 18, 2003 FHA denial of Plaintiff's request for reconsideration. The FHA's response to the FOIA requests was dated November 18, 2003, five months after the request was first made and well beyond the Act's twenty-day response period. Mr. Isler's response acknowledges that the FHA documents received by Plaintiff's counsel on November 10, 2005 "fall within the scope of your prior FOIA request (No. 2003-0100) dated June 23, 2003." It is fair to have the statute of limitations clock run with regard to Plaintiff's claims from February 28, 2003, the day following the issuance of Mr. Morris' letter denying Ms. Martinsen's claim until July 13, 2003, twenty days following the first FHA FOIA request by Plaintiff.

  Thereafter, the statute of limitations should be tolled until November 10, 2005, when, in the course of this litigation, Mr. Isler finally responded with the FOIA documents requested on June 23, 2003, which confirmed that named FHA and State officials had spoken with the Plaintiff, that the State and local governmental agencies repeatedly failed on a systemic, grand scale to follow federal and state laws and regulations that applied to DBE certified contractors like Plaintiff, made misleading statements and assurances to Plaintiff with regard to the FHA investigation and its findings favorable to Plaintiff, and that the responsible officials understood that Plaintiff was relying on such assurances that Plaintiff's violated property rights, secured as a DBE certified contractor, would be recognized and vindicated.

---

[12] A second FOIA request was sent to FHA on June 26, 2003.

Equitable principles demand that the statute of limitations be tolled from the filing of the Complaint in September 2000 until February 27, 2003, the date of the decision denying the claims made in the Complaint, and further tolled from July 3, 2003, 10 days after Plaintiff's filing of its first FOIA request to the date of the filing of the Complaint with this Court on October 5, 2004.

    3)    Why should tolling apply here at all when the FHA complaint was grounded in claims of sex discrimination, while the only remaining issue now is the alleged due process violation?

Plaintiff's remaining claims are a denial by the state and federal defendants of due process with regard to certified DBE contractor recognized property rights. Plaintiff's due process claims are clearly articulated in Counts II, III and IV of its Complaint. While it is true that the Complaint in Count I made a sex discrimination claim, the "grounding" of Counts II, III, and IV is the failure of the individual state and federal defendants to recognize their legal responsibilities to secure and protect Plaintiff's DBE certification, a certification recognized and protected by defendants own regulations and the due process clause of the Fourteenth Amendment. <u>PFZ Properties, Inc. v. Rodriquez</u>, 928 F.2d 28 (1st Cir. 1991).

Plaintiff's FHA Complaint prompted a "review" by Federal Defendant Morris of regional and federal state officials and agencies to meet their mandated legal obligations to certified DBE contractors. The review found systemic violations and failures across the board. While Plaintiff is rightfully pleased that her Complaint was the catalyst for the "review" findings, the "swamp" into which Plaintiff's claims sank violated her recognized federal property rights as a certified DBE by the due process clause of the

Fourteenth Amendment.  Id.  The defendants' own documents, "uncovered" through the course of litigation make unavoidable such recognition by this Court.

The Bowen analysis requires equitable tolling principles be applied to Counts II, III, and IV of Plaintiff's Complaint; Plaintiff's federally secured property rights as a DBE certified contractor have been violated by the named defendants, and Plaintiff seeks vindication from the Court as the responsible governmental officials have engaged in "systemic procedural irreguarit[ies]" and prevent plaintiff "from knowing of a violation of rights. . .."  Bowen, 476 US at 481.

## V.

## Conclusion

Plaintiff respectfully requests that this Court maintain Lorenzo Parra, Director, Office of Civil Rights, MTA as a party defendant, and apply equitable tolling principals allowing the Plaintiff as a certified DBE contractor to maintain as timely filed Counts II, III and IV of its Complaint.

                Respectfully submitted,

                Duxbury Trucking, Inc.
                By Its Attorneys:
                SHAHEEN & GORDON, P.A.

DATED:  February 16, 2006      /s/ Arpiar G. Saunders, Jr._____
                Arpiar G. Saunders, Jr.
                Bar No. 442860
                107 Storrs Street
                P.O. Box 2703
                Concord, NH 03302-2703
                (603) 225-7262
                asaunders@shaheengordon.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Plaintiff Duxbury Trucking, Inc.'s Supplemental Memorandum in Support of the Equitable Tolling of the Statute of Limitations on its Due Process Claims filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 16, 2006.

<u>/s/ Arpiar G. Saunders, Jr.</u>
Arpiar G. Saunders, Jr.

*F:\Data\clients\Duxbury Trucking Company, Inc\Duxbury's Supplemental Memo re Equitable Tolling.doc*