# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DUXBURY TRUCKING, INC.,      ) | |
|      ) | |
|     Plaintiff,    ) | |
|      ) | Civil Action No. 04-12118 NG |
| v.      ) | |
|      ) | |
| MASSACHUSETTS HIGHWAY  ) | |
| DEPARTMENT; MASSACHUSETTS  ) | |
| TURNPIKE AUTHORITY;  ) | |
| EDWARD W. MORRIS, JR., Federal  ) | |
| Highway Administration, (Former) Associate  ) | |
| Administrator for Civil Rights;  ) | |
| BRENDA ARMSTEAD, Federal Highway  ) | |
| Administration, Equal Opportunity Specialist;  ) | |
| ARTHUR "GENE" ARMSTEAD,  ) | |
| Federal Highway Administration, Eastern  ) | |
| Resource Center, Civil Rights Team;  ) | |
| STANLEY GEE, Federal Highway  ) | |
| Administration, District Administrator,  ) | |
|      ) | |
|     Defendants.  ) | |

## FEDERAL DEFENDANTS' SUPPLEMENTAL BRIEF

MICHAEL J. SULLIVAN
United States Attorney

MARK T. QUINLIVAN
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3606

Dated: March 20, 2007

## PRELIMINARY STATEMENT

This case is *sui generis*. Plaintiff Duxbury Trucking, Inc. has brought suit against four current and former employees of the Federal Highway Administration in their individual capacities, seeking damages from these employees for carrying out their regulatory duties in investigating plaintiff's complaint of discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, and rendering a finding of no discrimination; and responding to plaintiff's request for documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552. Although plaintiff alleges that the individual federal defendants violated their due process rights by not promptly investigating its discrimination complaint (and ultimately rendering a finding of no discrimination) and not promptly responding to its FOIA request, there is not a single case in which a federal employee has been held liable for damages under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), for a like claim, and this Court should not be the first for at least three reasons.

First, the Administrative Procedure Act ("APA"), 5 U.S.C. §§551-706, provides an express remedy for agency action that is alleged to be unlawfully withheld or unreasonably delayed, and courts have generally held that the APA precludes a Bivens remedy against individual federal employees because the APA represents Congress's remedial response to unlawful or unreasonable agency action. Similarly, the FOIA represents a comprehensive scheme which provides requesters with the potential for injunctive relief only, and courts therefore have found that the FOIA, too, precludes the creation of a Bivens remedy.

Second, and relatedly, because the APA and the FOIA afford meaningful safeguards and remedies, plaintiff is confined to the remedies in those statutory schemes even if they do not provide complete relief, a conclusion which is compelled by Schweiker v. Chilicky, 487 U.S. 412 (1988).

Third, at an irreducible minimum, because no court has previously held that an individual federal employee may violate the Due Process Clause by not promptly resolving a discrimination complaint or a FOIA request, nor has any court previously recognized a Bivens cause of action in this context, the individual federal defendants are entitled to qualified immunity because the Due Process right in question cannot be said to have been clearly established.

The individual federal defendants therefore are grateful for the opportunity afforded by this Court in its Memorandum and Order of March 6, 2007, to more fully explore these and other issues identified by the Court in its Memorandum and Order.

**ARGUMENT**

## I.     THE COMPREHENSIVE SCHEMES OF THE APA AND THE FOIA PRECLUDE CREATION OF A BIVENS DAMAGES REMEDY

It has long been established that where Congress has enacted a comprehensive regulatory scheme, a court may not imply an additional Bivens remedy.  See Schweiker v. Chilicky, 487 U.S. at 412, 424-29 (1988).  In this case, plaintiff alleges that the individual federal defendants conspired against the company to deprive it of its property rights without due process in two ways: (1) by their unreasonable delay in rendering a decision on plaintiff's Title VI complaint, ultimately finding no discrimination after allegedly indicating that they would find in plaintiff's favor; and (2) by their unreasonable delay in responding to plaintiff's FOIA requests.  As we now show, because the APA and the FOIA are comprehensive statutory schemes, those statutes preclude the creation of a Bivens remedy against individual federal employees.  Moreover, because the APA and the FOIA provide meaningful safeguards and remedies against unreasonably delayed government action, plaintiff is

confined to the remedies provided in those statutes even if they might fall far short of addressing the wrong suffered by the plaintiff in this case.

### A.     Background Principles

In <u>Bivens</u>, the Supreme Court held that federal officials acting under color of federal law could be sued for money damages for violating a plaintiff's Fourth Amendment rights.  As the en banc D.C. Circuit has recognized, however, <u>Bivens</u> "acknowledged that the power to make policy concerning constitutional remedies was not the exclusive province of the judiciary," and that "the judiciary should decline to exercise its discretion in favor of creating damages remedies against federal officials" where there are "'special factors counseling hesitation in the absence of affirmative action by Congress.'" <u>Spagnola</u> v. <u>Mathis</u>, 859 F.2d 223, 226 (D.C. Cir. 1988) (en banc) (quoting <u>Bivens</u>, 403 U.S. at 396).  The Supreme Court's "more recent decisions have responded cautiously to suggestions that <u>Bivens</u> remedies be extended into new contexts," <u>Chilicky</u>, 487 U.S. at 421, and have held that no Bivens remedy should be implied where Congress has enacted a comprehensive remedial scheme.

In <u>Bush</u> v. <u>Lucas</u>, 462 U.S. 367 (1983), the Supreme Court held that the comprehensive procedural and substantive provisions of the Civil Service Reform Act ("CSRA") precluded a First Amendment <u>Bivens</u> claim by a plaintiff who asserted that he had been fired for criticizing his employing agency, even though the Court recognized that the civil service remedies might not be as effective as a <u>Bivens</u> suit and would not fully compensate the employee for the alleged First Amendment violation. <u>See</u> <u>id</u>. at 372.  The Court held that the CSRA already provided "comprehensive procedural and substantive provisions" for disputes arising out of the federal employment relationship and gave "meaningful remedies against the United States." <u>Id</u>. at 368.  In

doing so, the Court emphasized that "Congress' institutional competence in crafting appropriate relief for aggrieved federal employees as a 'special factor counseling hesitation in the creation of a new remedy,'" noting that "Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees." Id. at 380, 389.

Likewise, in Schweiker v. Chilicky, the Supreme Court refused to imply a Bivens remedy for alleged procedural due process violations by Social Security officials, even though the Court recognized that the Social Security review scheme would provide the plaintiff at most with retroactive disability benefits, and would offer no possibility of receiving additional redress for the harms caused by the alleged due process violations. See id. at 424-25. The Court emphasized that "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration," it is inappropriate for a court to afford "additional Bivens remedies." Id. at 423. Thus, although "Congress ha[d] failed to provide for 'complete relief'" for the disability claimants, the Court refused to create a Bivens remedy because Congress had provide some "meaningful safeguards or remedies." Id. at 425.

Thus, "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability." Correctional Servs. Corp. v. Malesko, 534 U.S. 61 (2001) (citing Chilicky, 487 U.S. at 425-27). As the First Circuit long ago recognized, "the existence of a statutory remedy which is designed to implement the constitutional guarantee may itself render the Bivens analysis inappropriate." Kostka v. Hogg, 560 F.2d 37, 43 (1st Cir.1977), cert. denied, 434 U.S. 1063 (1978).

With these principles in mind, we turn now to the claims raised by plaintiff against the individual federal defendants, and whether they can form the basis for a <u>Bivens</u> action.

**B.    A <u>Bivens</u> Remedy is Precluded by the APA and the FOIA**

**1.    The APA and the Title VI Administrative Process**

Plaintiff's Title VI discrimination complaint alleged that the Massachusetts Highway Department and the Massachusetts Transit Administration discriminated against it as a Woman-Owned Business.  Section 601 of Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d.  Section 602 of Title VI authorizes federal agencies to effectuate the provisions in Section 601 by enacting regulations.  <u>See</u> 42 U.S.C. §2000d-1.  Pursuant to this statutory authorization, the Department of Transportation ("DOT") promulgated regulations which provide that any person who believes that he or she has been discriminated against may file a written complaint with the Secretary; that the Secretary is required to investigate whenever a complaint or any other information indicates a possible failure to comply with Title VI; and that the investigation indicates a failure to comply with Title VI, the Secretary shall so inform the recipient to attempt to resolve the matter; if, on the other hand, the investigation does not indicate a failure to comply with Title VI, the Secretary shall so inform the recipient and the complainant, if any, in writing.  <u>See</u> 49 C.F.R. §§21.11(b), (c), (d)(1), (2).

It is this very administrative investigative process that was initiated by plaintiff's discrimination complaint, and which forms the basis of plaintiff's claim against the individual federal defendants.  In particular, plaintiff alleges that the individual federal defendants unreasonably

delayed a decision on its Title VI complaint of discrimination, ultimately rendering an unfavorable decision. But the claim that a federal agency has unlawfully withheld or unreasonably delayed agency action is cognizable (and can be adequately remedied) under the APA, which authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. §702. The term "agency action" is defined in the APA to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551(13). The APA thus provides relief not only from actions that an agency takes, but also from an agency's *failure* to take action or an agency's unreasonable delay in taking an action. See 5 U.S.C. §706(1) ("The reviewing court shall * * * compel agency action unlawfully withheld or unreasonably delayed.").

Hence, *all* of the action (or inaction) of which plaintiff complains in relation to the resolution of its discrimination complaint falls under the purview of the APA. The gravamen of plaintiff's claim against the individual federal defendants is that they unreasonably delayed a decision on its discrimination complaint and then, after indicating that a finding of discrimination would be made, rendered a finding of no discrimination. See Complaint for Damages ¶¶74-76. Each of those alleged acts or omissions arose in the context of the investigation of plaintiff's discrimination complaint, and fall squarely within the meaning of "agency action" under the APA, which Congress broadly defined to include, among other things, the "whole or a part of * * * relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551(13). Consequently, because Congress has provided "meaningful safeguards or remedies" against unlawfully withheld or unreasonably delayed agency

action in the APA, that avenue of relief forecloses the creation of a <u>Bivens</u> remedy.[1] <u>See</u>, <u>e.g.</u>,

<u>Nebraska Beef, Ltd.</u> v. <u>Greening</u>, 398 F.3d 1080, 1084 (8th Cir. 2005) ("When Congress has created

a comprehensive regulatory regime, the existence of a right to judicial review under the APA is

sufficient to preclude a <u>Bivens</u> action. Parties may not avoid administrative review simply by

fashioning their attack on an agency decision as a constitutional tort claim against individual agency

officers.") (internal citation omitted), <u>cert. denied</u>, 126 S. Ct. 1908 (2006); <u>Sinclair</u> v. <u>Hawke</u>, 314

F.3d 934, 940 (8th Cir. 2003) ("When Congress has created a comprehensive regulatory regime, the

existence of a right to judicial review under the *32 Administrative Procedure Act is sufficient to

preclude a Bivens action."); <u>Sky Ad, Inc.</u> v. <u>McClure</u>, 951 F.2d 1146, 1148-49 (9th Cir. 1991) ("This

unprecedented nature of appellants' tort theory, in addition to the explicit remedies provided by the

APA and Congress' rejection of tort remedies under the [Federal Tort Claims Act] for procedural

flaws in rulemaking, makes us confident that Congress did not inadvertently fail to provide an action

for money damages against individual government officials for failure to comply with publication

and comment requirements."); <u>La Compania Ocho, Inc.</u> v. <u>U.S. Forest Service</u>, 874 F. Supp. 1242,

1250 (D.N.M. 1995) ("In conclusion, Plaintiffs' claims relating to the administration of the

Vallecitos Unit as described *supra* involve acts definable as 'agency action' within the meaning of

the APA.  Because the APA limits available remedies to injunctive relief, the APA preempts <u>Bivens</u>

claims predicated upon agency action.").

---

[1]  The APA remedy also offers a plaintiff something unavailable in a <u>Bivens</u> action: the potential for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. §2412(d).  Attorney's fees are unavailable in <u>Bivens</u> actions.  <u>See</u> <u>Kreines</u> v. <u>United States</u>, 33 F.3d 1105 (9th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1148 (1995); <u>cf.</u> <u>Premachandra</u> v. <u>Mitts</u>, 753 F.2d 635 (8th Cir. 1985) (en banc) (no fees in injunctive action against federal employees for constitutional violations).

To be sure, Congress has not provided for a damages remedy for unlawfully withheld or unreasonably delayed agency action. To the contrary, when it amended the APA in 1976, Congress waived the government's sovereign immunity only in cases in which a claimant is seeking injunctive or declaratory relief, but did not waive the government's immunity in cases involving money damages. See 5 U.S.C. §702. But that omission merely underscores the conclusion that a Bivens remedy should not be created. As one court has noted, "[t]hat Congress refused to waive immunity for monetary damages [in the APA] is strong evidence of its intent to foreclose Bivens relief." La Compania Ocho, 874 F. Supp. at 1248; cf. Sugrue v. Derwinski, 26 F.3d 8, 12 (2d Cir. 1994) (holding that statutory scheme of review for veterans' benefits provides meaningful remedies and precludes Bivens claims, and stating that "the fact that Congress has explicitly foreclosed a remedy in Article III courts against the VA, and the policies underlying that prohibition, suggest that Congress' failure to create a remedy against individual employees of the VA was not an oversight.") (internal citations omitted), cert. denied, 515 U.S. 1102 (1995).

This conclusion finds support in the en banc First Circuit's decision in Cousins v. Secretary of the U.S. Dept. of Transportation, 880 F.2d 603 (1st Cir. 1989) (en banc), which affirmed the dismissal of a lawsuit in which a plaintiff brought what he styled as an "implied private right of action" against DOT under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794. Of particular relevance here, then-Chief Judge Breyer, writing for the court, explained that:

> [I]n light of the existence of the APA, it rarely makes sense to find that a substantive statute creates an "implied private right of action" against the federal government for relief from unlawful regulatory action. The concept of an implied private right of action serves a useful legal purpose elsewhere in the law, when a plaintiff seeks to enforce a federal statute against a *non*-federal person. In such cases, the question arises whether "Congress meant to give an injured

person a right himself to enforce the federal statute directly against the non-federal person or whether the injured person can do no more than ask the federal government to enforce the statute. Without such an implied private right of action, the plaintiff would have no remedy against a non-federal person. *But when a plaintiff seeks to enforce a federal statute against a federal regulatory agency, there is normally no need for an "implied private right action." The general provisions for judicial review of agency action, as embodied by the APA, offer adequate relief.*

880 F.2d at 606 (internal citations omitted) (quoting N.A.A.C.P. v. Secretary of Housing & Urban Development, 817 F.2d 149, 152 (1st Cir. 1987)). Although the First Circuit was addressing the issue of an implied private right of action in Cousins not the availability of a Bivens remedy, the court's analysis regarding the preclusive effects of the judicial review provisions of the APA apply with equal force here. Just as the First Circuit did not imply a private right of action under the Rehabilitation Act because the APA afforded adequate relief, this Court should not imply a Bivens remedy for the very same reason.

Finally, to the extent plaintiff is complaining not only of the delay in resolving its discrimination complaint but of the decision that was rendered, Title VI itself provides meaningful relief. Section 603 of Title VI provides, in relevant part, that: "Any department or agency action taken pursuant to section 2000d-1 of this title shall be subject to such judicial review as may otherwise be provided by law for similar action taken by such department or agency on other grounds. * * *." 42 U.S.C. §2000d-2. Consequently, if plaintiff is dissatisfied with the agency's resolution of her discrimination complaint, the remedy is to challenge that decision under Title VI, not to bring a Bivens suit.

2.    **The FOIA**

Nor may plaintiff pursue a Bivens remedy for any alleged delay in responding to its FOIA request.  The FOIA represents a comprehensive scheme which provides requesters with the potential for injunctive relief only, either to enjoin the withholding of documents or to compel production of agency records.  See 5 U.S.C. §552(a)(4)(B).  The FOIA requires that each agency receiving a request for records determine "within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination," 5 U.S.C. §552(a)(6)(A)(i), unless unusual circumstances are present.  See 5 U.S.C. §552(a)(6)(B).  The FOIA further provides that any person submitting a request to any agency for records is deemed to have exhausted his or her administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions, see 5 U.S.C. §552(a)(6)(C)(i), thereby entitling the requestor to file suit in federal court.  See 5 U.S.C. §552(a)(4)(B).

The FOIA thus constitutes a comprehensive statutory scheme that precludes the creation of a Bivens remedy, and the courts have so held.  In Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771 (D.C. Cir. 2002), for example, the D.C. Circuit affirmed the dismissal of a Bivens claim that had been brought against an attorney in the Executive Office for U.S. Attorneys, who was alleged to have mishandled the plaintiff's FOIA request in violation of the Fifth Amendment's Due Process Clause, concluding that "the comprehensiveness of FOIA precludes the creation of a Bivens remedy * * *."  Id. at 777.  Other courts have reached the same conclusion.  See Johnson v. City of Shorewood, 360 F.3d 810, 816 (8th Cir.) ("FOIA, however,

-10-

is a comprehensive scheme that provides for injunctive relief only, not tort liability or damages, see 5 U.S.C. §552(a)(4)(B) (delineating the powers of the district court on proof of a FOIA violation), and thus the Johnsons could not recover tort damages based on a FOIA violation."), cert. denied, 543 U.S. 810 (2004); Spaan v. Frydman, 238 F.3d 431 (9th Cir. 2000) (Mem.) ("Spaan also fails to state a cause of action under Bivens for alleged violations of the Freedom of Information Act, 5 U.S.C. §552, because the act provides a comprehensive remedial scheme."); Thomas v. FAA, 2007 WL 219988, at * 3 (D.D.C. Jan. 25, 2007) ("There is no Bivens remedy available where a statute provides a "comprehensive system to administer public rights." FOIA presents such a statutory scheme.  Therefore, Plaintiff cannot obtain a Bivens remedy for an alleged violation of FOIA by the defendants.") (quoting Spagnola, 859 F.2d at 228, and citing Johnson, 310 F.3d at 777).

Accordingly, a Bivens remedy also may not lie against the individual federal defendants for alleged  violations of the FOIA.

**C.    Plaintiff Is Confined to the Remedies Provided in the APA and the FOIA Even if Those Statutes Might Fall Far Short of Addressing the Wrong Suffered by the Plaintiff in this Case.**

During the hearing in this case and in its Memorandum and Order of March 6, 2007, this Court inquired whether, under Schweiker v. Chilicky and its progeny, plaintiff is confined to the remedies in the comprehensive statutory schemes even if they do not afford complete relief.  The answer is yes.  In Bush v. Lucas, the Supreme Court made clear that:

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed.  It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the

> constitutional violation at issue.  That question obviously cannot be
> answered simply by noting that existing remedies do not provide
> complete relief for the plaintiff.

462 U.S. at 388.  Likewise, as the en banc D.C. Circuit explained in Spagnola, "the Chilicky Court

made clear that it is the comprehensiveness of the statutory scheme involved, not the 'adequacy'

of specific remedies extended thereunder, that counsels judicial abstention," noting the Court's

observation that "'[t]he absence of statutory relief * * * for a constitutional violation * * * does

not by any means necessarily imply that courts should award money damages against the officers

for the violation.'"  859 F.2d at 227 (quoting Chilicky, 487 U.S. at 421-22).

The en banc D.C. Circuit therefore explained in analyzing this issue that:

> As we read Chilicky and Bush together, then, courts must withhold
> their power to fashion damages remedies when Congress has put in
> place a comprehensive system to administer public rights, has "not
> inadvertently" omitted damages remedies for certain claimants, and
> has not plainly expressed an intention that the courts preserve
> Bivens remedies.  In these circumstances, it is not for the judiciary
> to question whether Congress' "response [was] the best response,
> [for] Congress is the body charged with making the inevitable
> compromises required in the design of a massive and complex...
> program."

Id. at 228 (quoting Chilicky, 487 U.S. at 429).  Applying those precepts, the court in Spagnola

concluded that the comprehensive remedial scheme established by the CSRA precluded

implication of a Bivens remedy even though the plaintiffs in that case, unlike the plaintiff in Bush

v. Lucas, were not challenging a "major personnel action" and thus could not invoke the "CSRA's

elaborate remedial processes which, by statute, culminate in judicial review." Id. at 226; see also

id. at 225 (noting that the judicial relief available to plaintiffs would be limited to determining

whether the Office of Special Counsel of the Merit Systems Protection Board had "conducted the requisite 'adequate inquiry' into the allegations").

The Fourth Circuit reached a similar conclusion in <u>Judicial Watch</u> v. <u>Rossotti</u>, 317 F.3d 401 (4th Cir.), <u>cert. denied</u>, 540 U.S. 825 (2003). In that case, a non-profit organization brought suit to enjoin a proposed audit by the Internal Revenue Service ("IRS"), which included <u>Bivens</u> claims against individual IRS agents for conducting an allegedly retaliatory audit. After canvassing the statutory scheme of the Internal Revenue Code and its legislative history, the Fourth Circuit concluded that "Congress's considerable attention to the rights and remedies available to taxpayers and the Supreme Court's hesitancy in creating <u>Bivens</u> remedies in such circumstances provide strong support for the conclusion that no <u>Bivens</u> lies in this case." <u>Id.</u> at 412. The Fourth Circuit acknowledged, however, that none of the previous cases holding that the comprehensiveness of the Internal Revenue Code precluded a <u>Bivens</u> remedy had dealt with the claim that IRS agents were engaging in a retaliatory audit, which the plaintiff organization asserted to be a far stronger claim to <u>Bivens</u> relief. The Fourth Circuit nonetheless found that the comprehensiveness of the statutory scheme precluded a <u>Bivens</u> remedy, and that the Supreme Court itself "has never required that the remedies available in the context of a larger statutory scheme be perfect; just that they be 'meaningful.' Even if 'Congress has provided a less than complete remedy for the wrong,' any decision to create a new judicial remedy must be 'exercised in the light of the relevant policy determinations by Congress.'" <u>Id.</u> at 413 (quoting, in turn, <u>Chilicky</u>, 487 U.S. at 428, and <u>Bush</u> v. <u>Lucas</u>, 462 U.S. at 373); <u>see also</u> <u>Pipkin</u> v. <u>United States Postal Service</u>, 951 F.2d 272, 275 (10th Cir. 1991) (holding that where Congress has created a comprehensive remedial scheme, courts may

-13-

not create additional remedies "even where a particular litigant does not have a remedy available under the statutory scheme").

As these decisions confirm, because the APA and the FOIA provide meaningful remedies for the wrongs that are alleged, plaintiff is confined to the remedies in those comprehensive statutory schemes even if they do not afford complete relief.

**D.    At a Minimum, the Individual Federal Defendants Did Not Violate Any Clearly Established Rights**

Even if this Court were to infer a Bivens remedy for the first time for the conduct of which plaintiff complains, the individual federal defendants would nonetheless be entitled to qualified immunity because, at a minimum, they did not violate any clearly established rights.  A right is clearly established only if "in the light of preexisting law the unlawfulness [is] apparent."  Wilson v. Layne, 526 U.S. 603, 615 (1999) (citation omitted).  As the Supreme Court has emphasized, "[i]t is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001); see Anderson v. Creighton, 483 U.S. 635, 640 (1987) (holding that "the right *** must have been 'clearly established' in a more particularized, and hence more relevant, sense").  Thus, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.

Plaintiff cannot come close to that threshold.  No other court has held that federal employees may be held liable for not promptly investigating a discrimination complaint or for not promptly responding to a FOIA request, nor has any court previously recognized a Bivens cause

-14-

of action in this context.  Hence, even assuming that the individual federal defendants violated an existing right under the Fifth Amendment, plaintiff has not come close to establishing that such a right was clearly established in the "specific context of th[is] case." <u>Saucier</u>, 533 U.S. at 201. Indeed, the sheer novelty of plaintiff's claims against the individual federal defendants is itself conclusive evidence that they did not violate clearly established rights.

## II.     ASSUMING LIABILITY, PLAINTIFFS ARE NOT ENTITLED TO DAMAGES

In its Memorandum and Order, this Court also directed the parties to brief the question of damages.  Specifically, this Court inquired whether, if plaintiff was to prevail on its due process claim against the individual federal defendants, for what harm would it recover, and how would that amount of recovery be calculated?

In its Complaint for Damages, plaintiff alleges that, as a consequence of the due process violations it was alleging, it suffered monetary damages "including the loss of equipment and equipment lease options, the loss of cash related to business start up, losses related to administrative processes to bring the matter to closure, loss of corporate income, loss of income due to below market rate hourly pricing, the loss of interest, and the loss of loan payment credit." Complaint for Damages ¶¶ 79, 83.  The individual federal defendants submit that each of those assertions are far too speculative to support an award of damages, and that plaintiff will not be able to show a causal link between the delays in processing and resolving its discrimination complaint and FOIA request and the harms which it claims.  These are matters which are better addressed at the summary judgment stage, however, after the individual federal defendants have had the opportunity to test plaintiff's claims in discovery.

**CONCLUSION**

For the foregoing reasons, plaintiff's claims against the individual federal defendants should be dismissed because the comprehensive administrative schemes of the APA and the FOIA preclude the creation of a <u>Bivens</u> remedy for the conduct of which plaintiff complains.  In the alternative, the individual federal defendants are entitled to qualified immunity because the rights which they are alleged to have violated were not clearly established.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ Mark T. Quinlivan_____
      MARK T. QUINLIVAN
      Assistant U.S. Attorney
      John Joseph Moakley U.S. Courthouse
      1 Courthouse Way, Suite 9200
      Boston, MA 02210
      (617) 748-3606

Dated: March 20, 2007

-16-